# EXHIBIT 7

| | |
|---|---|
| **From:** | O"Neill, William Walter |
| **To:** | Stark, Steven Edward; Williams, Donald |
| **Cc:** | Heldman, Alan; Cohen, Mauricio |
| **Subject:** | Re: CMS and TAVIs |
| **Date:** | Wednesday, July 04, 2012 11:54:29 AM |

Steve,

   You have captured the essence of the issue. The sheath and delivery device and the valve are exactly the ones that were approved. We are using it in inoperable AS patients. The main issue that CMS or FDA needs to worry about is whether this permanent implant works and nothing we are doing prevents it from working as has been proven in the trials. You are right that lots of data exists in Europe about the safety of the transaortic approach.
Thank you for your analysis.

----- Original Message -----
From: Stark, Steven Edward <sstark@miami.edu>
To: Williams, Donald
Cc: O'Neill, William; Heldman, Alan; Cohen, Mauricio
Sent: Wed Jul 04 11:01:03 2012
Subject: Re: CMS and TAVIs

Dr. O' Neill

Is the femoral sheath you use the same one you would use for the femoral insertion? It does appear from the literature that the trans aortic approach is accepted and safe. It also appears that there would be a large number of patients who are below the size threshold or who have blocked or tortuous anatomy. If that further disqualifies women disproportionately, then it is something we will definitely evaluate as part of our strategy. It is apparent from the determination that  CMS is concerned about the amount of data in approved trials supporting the device and are still not  convinced of safety and efficacy. The stroke risk is important  and what I understand are higher risks in the apial approach (which we have not seen out our facility) raises doubts about any alternative. The strict post market surveillance and the narrow interpretation of coverage shows a concern that they don't open the flood gates to arguably excessive, unnecessary or ineffective procedures performed by unqualified persons that could result in a reversal or limiting if the original approval -- i. e. stents. I know that is not the case here but we need to be prepared to

Sent from my iPhone

On Jul 4, 2012, at 10:18 AM, "Williams, Donald" <DWilliams3@med.miami.edu> wrote:

> Dear Steve,
> Thank you for your thorough review.
> As we discussed in the CMS document the issue of indications is addressed extensively, but there is nothing said about approach. Our interpretation of the CMS ruling is that if a patient needs a valve as desperately as many do and we can't deliver it safely via a femoral approach, then it is incumbent upon us to find a safe way to do it....which is what we did. We certainly don't want to rehash what we did, but we have to evolve a firm, defensible position that we all share to stand upon as we move forward in this fight.
> As I mentioned, we must launch an all-out offensive to convince CMS that we must be paid for what we did and what our patients are going to demand that we do moving forward. This means meeting with congressmen, senators, and using President Shalala's contacts in Washington. Alan is already preparing a research protocol. When the CMS ruling becomes official (if it ever does)  we should consider contacting John Dorschner at the Herald. He always aligns himself with the underdog, and I believe we can get some good press and raise the ire of the public when they learn that elderly people are being denied treatment for a life threatening disease because of politics.
> Don
>
> From: O'Neill, William
> Sent: Tuesday, July 03, 2012 9:09 PM

> To: Stark, Steven Edward
> Cc: Heldman, Alan; Cohen, Mauricio; Williams, Donald
> Subject: RE: CMS and TAVIs
>
> Steve,
> Thanks so much for your usual, thorough review. I ran into Donna yesterday and she gave me a suggestion. We have treated 100 patients in the commercial use. Of these more than
> half were non transfemoral. We used the femoral access sheath (the Ascendra is not for sale yet). We believe to date we complied with the coverage indication with the approved device.
> Regardless, if we perform only transfemoral cases, we discriminate against women. Only 30 % of men we treat fail to qualify wheras 66% of women fail to qualify. I believe will be the same at
> Emory. Donna suggests approaching this as a sex discrimination case. Women have smaller femoral vessels and are less likely to be able to be treated with the femoral approach. Apparenlty there is a specifc section of CMS dealing with disparity of care for women, It would be worth talking to them about our experience..
> William W O'Neill MD FACC
> Executive Dean for Research, Research Training
> and Innovative Medicine
> CEO for Research
>
> _____
> From: Stark, Steven Edward [sstark@miami.edu]
> Sent: Monday, July 02, 2012 7:12 PM
> To: O'Neill, William
> Cc: Stark, Steven Edward; Augustyn, Cynthia Lou
> Subject: RE: CMS and TAVIs
>
> We are undertaking a more detailed analysis to identify potential strategies to clarify/revise this determination. Based on my initial review, however, it appears that the coverage determination is tied directly to the FDA approved indications only. This does not include the transaortic insertion method. Thus, even though this appears to be an acceptable "off-label" use and it appears that there are a number of discussions in the literature regarding using that method for patients with inadequate vascular access, unless the FDA reconsiders its approval to include it (as I understand it, this method was not part of either PARTNER study); CMS reconsiders its determination; or we can establish an approved research study that assesses that method of insertion, coverage is not available.
>
>
>
> When we met to discuss this issue this morning, Dr. Williams agreed that they would not perform these procedures pending further evaluation and clarification. We were asked to work with him and administration to prepare a written notification to patients that either are scheduled or are in process of scheduling stating that, based upon the coverage determination, the procedures could not proceed unless the patient paid the cost directly and provided full informed consent to the procedure. ( Do we currently inform patients that this is not an approved insertion method?) However, we also have contacted our government relations office to determine if there is any political pressure that might assist us and asked them to consider drafting a letter that we can suggest our patients effected by the determination could send to their representatives.  We also are reviewing any appeal options to CMS or possible local coverage exceptions that are available. Approaching the FDA is another possibility, however improbable FDA action in the short term would be. In addition, we can reach out to other centers that are doing these procedures to determine how they are handling the issue and attempt to organize a group of providers to pursue the issue. Finally, we could reach out to Edwards Life Science to determine if they have any intention to seek clarification or otherwise assist, although from what I was told today, that is not likely. Any suggestions you may have would be welcome as well.
>
>
>
> The coverage determination states:
>
>
>

> TAVR is covered for the treatment of symptomatic aortic valve stenosis when furnished according to an FDA approved indication and when all of the following conditions are met.
>
>
>
> 1.    The procedure is furnished with a complete aortic valve and implantation system that has received FDA premarket approval (PMA) for that system's FDA approved indication.
>
>
>
> As I understand it, the CMS approval for the device includes only approval for the transfemoral implantation via the RetroFlex 3 Transfemoral System. I am unsure the specific process we use for the transaortic approach, but most of the literature on a transaortic insertion reference the Ascendra Balloon Catheter, which I believe is also used to insert the SAPIEN valve via an Transapical Approach. Regardless of the implantation system, the transaortic approach was not included in the CMs coverage determination.
>
>
>
> Many comments to the proposed rule suggested that CMS determine this issues with local coverage determinations rather than a national one to allow for case by case approval. Other commenters discussed the indications for use and off-label and alternative implantation methods being covered. The comments and CMS responses stated, in part:
>
>
>
> Indications
>
>
>
> ·    Three commenters support linking coverage of TAVR to FDA approved indications as this will allow coverage to evolve as TAVR technology and practice evolves without the need for repeated NCD reconsiderations. Another commenter supports linking coverage with the FDA approval process to support further study of a promising new technology.
>
>
>
> CMS response: We agree and appreciate the support for this final decision.
>
>
>
> ·    A commenter contends that the evidence is more than adequate for CMS to conclude that TAVR is reasonable and necessary for appropriately selected beneficiaries, when provided by heart teams in appropriate facilities, with outcomes reported through a qualified registry.
>
>
>
> CMS response: For reasons explained throughout this decision memorandum, we believe that TAVR is reasonable and necessary in the context of research under section 1862(a)(1)(E).
>
>
>
> ·    One commenter asserts that CMS should cover off-label uses in circumstances where the commenter claims there is patient benefit. Another commenter contends that coverage should not be restricted to FDA approved indications because he/she believes this will impair physicians' ability to deliver appropriate care.
>
>
>

> CMS response: CMS supports off-label uses of TAVR when certain protections are in place (see Section I). We believe it is important for CMS to support the evidence development when appropriate. The decision also supports broader coverage if newly developed evidence leads the FDA to expand the labeled the indications. We also believe that claims of "appropriate" care, if unsupported by adequate evidence, are speculative until evidence is actually developed. Moreover, patients may be at risk if the existing co-morbidities would preclude the expected benefit from correction of the aortic stenosis.

>

>

> ·      One commenter requests that CMS revise language in section A(1) "for this indication" as that phrase suggests that CMS will not support coverage for any TAVR device and any use outside the labeled indications under any circumstances.

>

>

> CMS response: CMS supports coverage of unlabeled indications in clinical studies.

>

>

> ·      One commenter requests coverage and prospective registry inclusion of high risk cohorts not specifically addressed in PARTNER, recommending that the PARTNER trial exclusion criteria not be used to identify coverage or non-coverage.

>

>

> CMS response: The final decision does not prohibit enrollment of high risk cohorts meeting the labeled indications in the registry. We believe the exclusion criteria in PARTNER prevent us from generalizing PARTNER reported results to

>

> populations that would be ineligible to participate in PARTNER at this time. Should such cohorts fall under the FDA approved label in the future, they would be included under section A1 of the final decision.

>

>

> ·      One commenter requests CMS clarify the distinction between "on-indication" and "on-label" uses of TAVR, and one commenter requests that CMS clarify the difference between coverage for "FDA approved indications" and conditional "coverage for all unlabeled uses."

>

>

> CMS response: We revised the decision to use the term indication rather than the term label.

>

>

> ·      Many commenters referenced specific patient circumstances without specific reference to either indication or label. Four commenters contend that CMS should cover other approaches or access routes than transfemoral and one commenter requests that patients not be excluded from coverage due to the presence of an aortic aneurysm or the inability to gain femoral access. . . . One commenter requests that CMS identify how long non-covered indications will extend.

>

>

> CMS response: For certain rapidly evolving technologies, we agree that there are important advantages to linking closely with the FDA approval process. Under subsection A, coverage with registry participation is for patients satisfying the FDA approved indications. For example, the revised policy would no longer categorically noncover valve-in-valve patients or patients with hypertrophic cardiomyopathy. We also cover certain off –indication uses, subject to specific restrictions in a CMS approved trial.

> 
> 
> 
> We do not believe the current FDA indication encompasses the patient that, according to a surgeon's evaluation, is otherwise an operable candidate but would rather select TAVR as the course of treatment, and is therefore outside the scope of this decision. As noted in its November 2011 press release "it is not approved for patients who can be treated with open-heart surgery." We find no evidence or other justification to support an age-based exemption from evidence-based coverage and FDA approval conditions. While we have made changes in the final decision to require the hospital have as part of its infrastructure certain imaging abilities, we do not believe it is appropriate to designate a specific type of pre-operative imaging modality without evidence.
> 
> 
> 
> As the foregoing reflects, CMS has considered many of the reasons we can give for coverage for insertion via a transaortic approach. Despite those comments, however, they limited the coverage determination to the FDA approved indications  and methodology or as part of an approved research study that meets specific criteria.  It does not appear that we meet any of those parameters.
> 
> 
> 
> Please contact me if you want to discuss this further.
> 
> 
> Sincerely,
> Steve
> 
> 
> 
> 
> 
> 
> 
> 
> 
> 
> 
> 
> 
> 
> 
> 
> 
> 
> 
> 
> 
> 
> -----Original Message-----
> From: O'Neill, William [mailto:WONeill@med.miami.edu]
> Sent: Monday, July 02, 2012 12:27 PM
> To: Stark, Steven Edward
> Subject: RE: CMS and TAVIs
> 
> 
> 
> Steve, can you fill me in on your findings?
>

> William W O'Neill MD FACC
>
> Executive Dean for Research, Research Training
>
> and Innovative Medicine
>
> CEO for Research
>
>
>
> _____
>
> From: Stark, Steven Edward [sstark@miami.edu]
>
> Sent: Sunday, July 01, 2012 12:11 PM
>
> To: Campo, Rafael
>
> Cc: Augustyn, Cynthia Lou; Stark, Steven; Snyder, Daniel; O'Neill, William; Moscucci, Mauro
>
> Subject: Re: CMS and TAVIs
>
>
>
> I will review and be prepared to discuss it
>
>
>
> Sent from my iPhone
>
>
>
> On Jun 30, 2012, at 10:26 AM, "Campo, Rafael" <RCampo@med.miami.edu> wrote:
>
>
>
>> Hi Cindy and Steve,
>
>>
>
>> I wanted you to be aware of this situation. Separately, I will send a link to the CMS guidance that currently exists regarding these valves  At some point in the past, our cardiovascular leaders felt the guidance was sufficiently vague that we could move ahead with inserting these valves through routes other than the FDA-approved transfemoral route. However, this is now in question based on the conversation Mauro recently had with CMS.
>
>>
>
>> We would love to hear your opinion after you've had a chance to review the document with respect to grounds for appealing a retroactive decision to deny coverage based on the guidance that has existed until now.
>
>>
>
>> Rafael
>
>>
>
>>

>
>>
>
>> Begin forwarded message:
>
>>
>
>> From: "Campo, Rafael" <RCampo@med.miami.edu<mailto:RCampo@med.miami.edu>>
>
>> Date: June 29, 2012 5:06:43 PM EDT
>
>> To: "Goldschmidt, Pascal (Dean - School of Medicine)"
<PGoldschmidt@med.miami.edu<mailto:PGoldschmidt@med.miami.edu>>, "Lord, Jonathan"
<JLord@med.miami.edu<mailto:JLord@med.miami.edu>>
>
>> Cc: "Snyder, Daniel" <DSnyder@med.miami.edu<mailto:DSnyder@med.miami.edu>>, "Caulton, Darryl"
<DCaulton@med.miami.edu<mailto:DCaulton@med.miami.edu>>, "Moscucci, Mauro"
<MMoscucci@med.miami.edu<mailto:MMoscucci@med.miami.edu>>, "Manni, Kymberlee"
<KManni@med.miami.edu<mailto:KManni@med.miami.edu>>, "Cohen, Mauricio"
<MGCohen@med.miami.edu<mailto:MGCohen@med.miami.edu>>, "Heldman, Alan"
<AHeldman@med.miami.edu<mailto:AHeldman@med.miami.edu>>, "Laljie, Aryendra"
<a.laljie@med.miami.edu<mailto:a.laljie@med.miami.edu>>, "Weichold, Nelson"
<NWeichold@med.miami.edu<mailto:NWeichold@med.miami.edu>>, "Lubarsky, David"
<DLubarsky@med.miami.edu<mailto:DLubarsky@med.miami.edu>>
>
>> Subject: CMS and TAVIs
>
>>
>
>> Dear Pascal and Jack,
>
>>
>
>> Mauro Moscucci and I spoke a few moments ago.  Mauro has been told by the pertinent official at CMS that
CMS will only reimburse TAVIs inserted through the FDA approved approach (transfemoral) and no other
approach unless part of a clinical trial.  This will be retroactive to May 1, 2012.
>
>>
>
>> Dan and I discussed this and have decided that only transfemoral TAVIs should be inserted as of now until we
have greater clarity.  The only exception would be non-transfemoral insertions that are part of a trial.
>
>>
>
>> We know from a recent analysis of 63 UMH cases that only one third of them were inserted through a
transfemoral approach.  As you might recall, the cost of each valve is approximately $32,500 and that, of course,
includes no other costs.
>
>>
>
>> Darryl is preparing an analysis of the what our financial liability will look like for May and June based on the
cases we have done.  We will meet at 9 AM on Monday in Dan's office to discuss this.
>
>>
>
>> Rafael
>

>>
>
>> Rafael E. Campo, MD
>
>> Chief Medical Officer
>
>> University of Miami Hospital
>
>> Professor of Clinical Medicine
>
>> Division of Infectious Diseases
>
>> University of Miami School of Medicine
>
>> 1400 NW 12th Avenue, Suite 2022
>
>> Miami, FL 33136
>
>> Office 305-689-5690
>
>> Fax 305-689-4545
>
>> Cell phone 305-987-7310
>
>> E-mail rcampo@med.miami.edu<mailto:rcampo@med.miami.edu>
>
>>
>
>> This transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above.  If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited.  If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.
>