UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-22500-CIV-ALTONAGA/McALILEY

JONATHAN LORD, M.D.,

     **Plaintiff,**

v.

UNIVERSITY OF MIAMI,

     **Defendant.**

_____/

## DEFENDANT'S MOTION FOR FINAL SUMMARY JUDGMENT

Defendant, University of Miami (the "University"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 56 and S.D. Fla. L. R. 56.1, hereby moves for final summary judgment on the sole remaining claim asserted against it by Plaintiff, Jonathan Lord, M.D.: retaliation in violation of the False Claims Act, 31 U.S.C. § 3730(h) (the "FCA"). In his operative Third Amended Complaint (D.E. 101), Plaintiff alleges that the University terminated his employment in retaliation for his complaints about alleged Medicare fraud. Plaintiff's claim fails as a matter of undisputed fact and law for multiple reasons.

As a threshold matter, the record evidence (most of which comes from Plaintiff himself) establishes that Plaintiff never engaged in statutorily-protected activity under the FCA (a necessary element of his claim), as Plaintiff simply was performing his required job responsibilities as Chief Operating Officer and Chief Compliance Officer. Further, the record evidence establishes that the University's decision to terminate Plaintiff's employment was based solely on Plaintiff's domineering, tyrannical management style (which culminated in a Petition signed by several hundred faculty members demanding his removal) and Plaintiff's refusal/inability to communicate

with key leadership officials. Because Plaintiff cannot rebut those legitimate reasons (nor can he carry his burden of showing that they are pretextual), summary judgment should be granted.

Independent of the merits, summary judgment also is proper based on the University's affirmative defense of judicial estoppel. In this lawsuit, Plaintiff has taken the position (in his operative Third Amended Complaint, sworn testimony and expert reports) that Plaintiff was terminated from all of his positions with the University and, over the last ten years, has sought to mitigate his damages and secure alternative employment. In prior divorce proceedings - - and in an obvious effort to cheat his former wife out of alimony and other property (which Plaintiff succeeded in accomplishing) - - Plaintiff took the complete opposite position, repeatedly arguing (in both sworn testimony and other filings) that he "retired"/"resigned" from the University and no longer was looking for employment. Plaintiff's former wife relied on Plaintiff's disclosures in settling her divorce, and the State Court adopted Plaintiff's representations in entering Final Judgment and reserving jurisdiction to enforce their settlement. Plaintiff should not be permitted to make a mockery of the judicial system by now taking a completely contrary position, particularly after successfully maintain another.

For all of these reasons, the University respectfully submits that summary judgment should be entered in favor of the University. Submitted herewith in support of this Motion is Defendant's Statement of Undisputed Material Facts (D.E. 140).

## MEMORANDUM OF LAW

### I.    Legal Standard on Summary Judgment

Summary judgment is appropriate when the pleadings, affidavits, depositions, admissions and the like "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Swindle v. Jefferson Cty. Com'n*, 593 Fed. Appx. 919, 922

(11th Cir. 2014) (citing Fed.R.Civ.P. 56(a) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The plain language of Fed. R. Civ. P. 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322.

After the movant has met its burden, the burden shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The nonmoving party must identify "specific facts showing that there is a genuine issue for trial." *Id*. at 587. "[T]o survive summary judgment, the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015 (citing *Brooks v. Cty. Comm'n of Jefferson Cty., Ala.,* 446 F.3d 1160, 1162 (11th Cir. 2006)). "[W]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Howard v. Memnon*, 572 Fed. Appx. 692, 695 (11th Cir. 2014) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

## II.    Overview of Plaintiff's Claim

Plaintiff has asserted a single claim of retaliation under the FCA. The anti-retaliation provision of the FCA provides as follows:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in

3

furtherance of an action under this section or other efforts to stop 1
or more violations of this subchapter.

31 U.S.C. § 3730(h)(1).

An FCA retaliation claim requires a plaintiff to prove three elements: "(1) she was acting

in furtherance of an FCA enforcement action or other efforts to stop violations of the FCA, *i.e.*,

engaging in protected conduct, (2) the employer knew that the employee was engaged in the

protected conduct, and (3) the employer was motivated to take an adverse employment action

against the employee because of the protected conduct." *Farnsworth v. HCA, Inc.*, No. 8:15-CV-

65-T-24-MAP, 2015 WL 5234640, at *3 (M.D. Fla. Sept. 8, 2015) (citing *United States v. KForce

Gov't Solutions, Inc.*, No. 8:13–cv–1517–T–36TBM, 2014 WL 5823460, at *10 (M.D. Fla. Nov.

10, 2014) and *Mack v. Augusta–Richmond Cty., Ga.*, 148 F. App'x 894, 896–97 (11th Cir. 2005)).

As to the third element, the Eleventh Circuit Court of Appeals recently held that, as with Title VII

retaliation claims, the but-for causation standard applies to FCA retaliation claims. *Nesbitt v.

Candler Cty.*, 945 F.3d 1355, 1359–60 (11th Cir. 2020).[1]

The familiar *McDonnell-Douglas* burden-shifting framework applies to FCA retaliation

claims. *United States ex rel. Aquino v. Univ. of Miami*, No. 14-20372-CIV, 2018 WL 3814517, at

*6 (S.D. Fla. Aug. 10, 2018) (granting summary judgment to university); *Kalch v. Raytheon Tech.

Servs. Co., LLC*, No. 616CV1529ORL40KRS, 2017 WL 3394240, at *3 (M.D. Fla. Aug. 8, 2017).

This framework involves three steps: (1) the plaintiff must first establish a *prima facie* case of

retaliation; (2) if the plaintiff establishes a *prima facie* case, the burden shifts to the employer to

articulate a legitimate, non-retaliatory reason for the employment action; and (3) if the employer

---

[1]      Relatedly, "the standard for analyzing FLSA, Title VII, FCA, and Section 1981 retaliation claims is the same in this Circuit." *Mooren v. Sys. Studies & Simulation, Inc.*, No. 5:12-CV-00230-AKK, 2017 WL 3581727, at *3 (N.D. Ala. Aug. 18, 2017) (citing *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342–43 (11th Cir. 2000)).

4

articulates such a reason, the burden then shifts back to the plaintiff to show that the employer's proffered reason was a pretext for retaliation. *Aquino*, 2018 WL 3814517, at *6.

Here, the undisputed record evidence establishes that Plaintiff cannot establish a *prima facie* case of retaliation. Even if he could, the record evidence establishes that the University had numerous legitimate, non-retaliatory and non-pretextual reasons to terminate his employment. For all of these reasons, summary judgment in favor of the University should be granted.

**III.    Plaintiff Cannot Establish a *Prima Facie* Case of Retaliation.**

A *prima facie* case of FCA retaliation requires the plaintiff to prove three elements: "(1) he engaged in protected conduct, (2) the defendant took adverse action against his employment, and (3) the defendant took the adverse action because of his protected conduct." *Kalch v. Raytheon Tech. Servs. Co., LLC*, No. 616CV1529ORL40KRS, 2017 WL 3394240, at *3 (M.D. Fla. Aug. 8, 2017) (citing *Reynolds v. Winn-Dixie Raleigh Inc.*, 620 Fed. Appx. 785, 791 (11th Cir. 2015) and *Mack v. Augusta-Richmond Cty.*, 148 Fed. Appx. 894, 896–97 (11th Cir. 2005)).

Here, Plaintiff cannot establish either the first or third elements of his *prima facie* case. Plaintiff never engaged in statutorily-protected activity, and there is absolutely no evidence in this record that Plaintiff's alleged protected activity was the but-for cause of the termination decision. For either of these reasons, summary judgment in favor of the University is proper. *See Wolf v. MWH Constructors, Inc.*, 34 F. Supp. 3d 1213, 1227 (M.D. Fla. 2014) ("summary judgment is appropriate if the plaintiff fails to satisfy any of the elements of a *prima facie* case") (citing *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1433 (11th Cir. 1998)).

**A.    Plaintiff Never Engaged in Statutorily-Protected Activity.**

Two types of statutorily-protected activity exist under the FCA: (1) "conduct in furtherance of FCA litigation" and (2) conduct "taken as an effort to stop the [FCA] violation." *Arthurs v.*

*Glob. TPA LLC*, 208 F. Supp. 3d 1260, 1265–66 (M.D. Fla. 2015) (citations and internal quotations omitted). However, "a person who acts to oppose an FCA violation for reasons other than protecting the federal government from potential fraud has not engaged in protected conduct." *Id.*

As one District Court held earlier this year, the FCA "generally does not protect activities that are within the scope of an employee's job responsibilities." *Gatti v. Granger Med. Clinic, P.C.*, No. 2:19-CV-00028-DAO, 2021 WL 1171719, at *7 (D. Utah Mar. 29, 2021) (citing *Adler v. Continental Ins. Co.*, No. 95-2282-EEO, 1996 WL 677085 at *4, (D. Kan. Nov. 1, 1996)). This is especially true with compliance employees like Plaintiff: "[C]ompliance employees typically must do more than other employees to show that their employer knew of the protected activity." *Id.* (quoting *United States ex rel. Reed v. KeyPoint Gov't Sols.*, 923 F.3d 729, 767 (10th Cir. 2019)). "This is because 'an employer might reasonably presume that when a compliance employee reports incidents of fraud she is just doing her job.'" *Id.* (quoting *Reed*, 923 F.3d at 767).

This principle - - sometimes referred to as the "Manager Rule" - - has been adopted by the Eleventh Circuit. "The 'manager rule' holds that a management employee [who], in the course of her normal job performance, disagrees with or opposes the actions of an employer, does not engage in 'protected activity.'" *Brush v. Sears Holdings Corp.*, 466 Fed. Appx. 781, 787 (11th Cir. 2012). In fact, the Eleventh Circuit has applied this Rule in the FCA retaliation context. *Mack v. Augusta-Richmond Cty., Ga.*, 148 Fed. Appx. 894, 897 (11th Cir. 2005) (noting that employee's e-mails - - which evidenced that he has trying to "ensure compliance with the HUD regulations" - - "not that an FCA action was a 'distinct possibility'" - - may not constitute protected activity).

In *Mack*, the Eleventh Circuit quoted - - with approval - - decisions from the First and Fourth Circuits, which recognized the principle that compliance employees must do more than their job duties to engage in protected activity. *Id.* (citing *Maturi v. McLaughlin Research Corp.*,

6

413 F.3d 166, 173 (1st Cir. 2005) ("[W]here an employee's job responsibilities involve overseeing government billings or payments, his burden of proving that his employer was on notice that he was engaged in protected conduct should be heightened. Yet, such an employee can put his employer on notice 'by any action which . . . [regardless of his job duties,] would put the employer on notice that [FCA] litigation is a reasonable possibility.'") (in turn quoting *Eberhardt v. Integrated Design & Constr., Inc.*, 167 F.3d 861, 868 (4th Cir. 1999) (alterations on original).

District courts have reasoned similarly. *See, e.g., Farnsworth v. HCA, Inc.*, No. 8:15-CV-65-T-24-MAP, 2015 WL 3453621, at *8 (M.D. Fla. May 29, 2015) (dismissing FCA retaliation claim because there "is a question as to whether such efforts [internal compliance reporting] were merely part of Farnsworth's job duties in her role as Vice President of Quality and Risk Management") (citing *United States v. KForce Gov't Sols., Inc.*, No. 8:13-CV-1517-T-36TBM, 2014 WL 5823460, at *10-11 (M.D. Fla. Nov. 10, 2014)); *Brunson v. Narrows Health & Wellness LLC*, No. 2:06-CV-1148-AR, 2008 WL 11422063, at *5 (N.D. Ala. Mar. 31, 2008) (finding that management employee, whose job duties included ensuring compliance with billing guidelines, did not engage in protected activity and noting that "[o]ther circuits have required that employees who are charged with ensuring compliance with standards and regulations affecting claims to the government as a part of their job must be explicit in alerting their employer that some sort of qui tam or government investigation is imminent in order to come within the scope of the FCA's protection against retaliation") (collecting cases).

This same reasoning applies here. Plaintiff admitted - - in his Third Amended Complaint, in his deposition and in response to the University's requests for admissions - - that his job duties consisted of reporting and stopping Medicare fraud. Plaintiff did nothing more in reporting his concerns - - a practice Plaintiff admitted was "regular" and "not exceptional."

Beyond that deficiency, Plaintiff never engaged in protected activity that (1) would have put the University on notice that there was a "distinct possibility" of False Claims Act litigation or (2) demonstrated that he had an objectively "reasonable belief" of a False Claims Act violation. *See Brown v. Morehouse Coll.*, 829 Fed. Appx. 942, 945 (11th Cir. 2020) ("protected activity under the FCA includes those employee actions by which FCA litigation was 'a distinct possibility.'") (quoting *Childree v. UAP/GA AG Chem., Inc.*, 92 F.3d 1140, 1146 (11th Cir. 1996)). *See also Briggs for use & benefit of United States v. QuantiTech Inc.*, No. 21-11448, 2022 WL 1308494, at *2 (11th Cir. May 2, 2022) (noting that the Eleventh Circuit has not yet adopted a controlling standard in light of recent amendments to the FCA and applying the "lesser standard that an employee only needs to have an objectively 'reasonable belief' of an FCA violation) (citing *Hickman v. Spirit of Athens, Ala., Inc.*, 985 F.3d 1284, 1289 (11th Cir. 2021)[2]

To begin, Plaintiff's alleged disclosure to President Shalala on December 14 about the contents of Dr. McCafferty's report - - four days *before* receiving a copy of Dr. McCafferty's report and five days *before* drafting a transmittal to President Shalala, in which he appears to share that information with her for the first time - - was based on "preliminary" assessments that everyone, including Plaintiff himself, agreed needed to be reviewed further before any judgments could be made. In other words, at that early stage, there was nothing more than a "mere possibility" of a potential violation. That is insufficient to establish an objectively reasonable belief. *See, e.g.*, *Colesanti v. Becton Dickinson*, No. CV 18-491WES, 2019 WL 4043957, at *11 (D.R.I. July 19, 2019) (rejecting whistleblower claim and noting that a "mere possibility of misconduct" is

---

[2] In its Order on the University's Motion to Dismiss, the Court noted that, although the Eleventh Circuit had not yet resolved the issue, other courts had; the Court adopted the objectively reasonably relief standard. (D.E. 122 at 13-16.)

insufficient to establish a "objectively reasonable belief of fraud"), *R&R adopted*, No. CV 18-491 WES, 2019 WL 4039529 (D.R.I. Aug. 27, 2019); *United States v. Ukomadu*, 236 F.3d 333, 337 (6th Cir. 2001) (holding that a "mere possibility" is insufficient to establish an "objectively reasonable basis").[3]

### B.   Plaintiff Cannot Prove that His Alleged Protected Activity was the But-for Cause of the University's Decision to Terminate His Employment.

Even if Plaintiff had engaged in statutorily-protected activity, Plaintiff cannot establish the third element of his *prima facie* case: but-for causation. As a threshold matter, in order to establish causation, Plaintiff must demonstrate that the decisionmaker was aware of his protected conduct:

> *To establish causation under § 3730(h)(1), the plaintiff must show that the final decision-maker who approves or implements the adverse employment action knew about the plaintiff's protected conduct*. . . . It is not enough for other employees, supervisors, or members of the employer's management to know about the plaintiff's protected conduct where these individuals have no decision-making authority.

*Kalch v. Raytheon Tech. Servs. Co., LLC*, No. 616CV1529ORL40KRS, 2017 WL 3394240, at *3 (M.D. Fla. Aug. 8, 2017) (internal citation omitted) (emphasis added). *See also Reynolds v. Winn-Dixie Raleigh Inc.*, 620 Fed. Appx. 785, 792 (11th Cir. 2015) (affirming summary judgment on FCA retaliation claim where the plaintiff "failed to establish causation because he did not present any evidence that the decision makers . . . knew that [he] had spoken . . . about potential false claims"); *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1208 (11th Cir. 2001) (noting that "[a] decision maker cannot have been motivated to retaliate by

---

[3]      There can be no retaliation when an employee first engages in protected activity *after* he was terminated. *Shedrick v. Dist. Bd. of Trs. of Miami-Dade Coll.*, 941 F. Supp. 2d 1348, 1365 (S.D. Fla. 2013). *See also Brown v. Morehouse Coll.*, 829 Fed. Appx. 942, 945 (11th Cir. 2020) (the distinct possibility standard requires that such possibility be in existence "at the time the" protected activity occurred). Therefore, events subsequent to December 2012 (*i.e.*, after Plaintiff had been terminated) cannot establish that Plaintiff engaged in protected activity).

something unknown to him") (quoting *Bechtel Constr. Co. v. Secretary of Labor,* 50 F.3d 926, 934 (11th Cir. 1995)); *Hernandez v. Hernandez*, No. 616CV1807ORL28TBS, 2017 WL 2557066, at *3 (M.D. Fla. June 12, 2017) (dismissing FCA retaliation claim because "temporal proximity between the protected conduct and the alleged retaliatory actions is insufficient to overcome Defendants' lack of knowledge of the protected conduct").

Further, it is well-established that an employee's intervening act of misconduct severs any causal connection that might be inferred from temporal proximity between the alleged statutorily-protected activity and the termination decision. *See, e.g., Henderson v. FedEx Express*, 442 Fed. Appx. 502, 506 (11th Cir. 2011); *Hankins v. AirTran Airways, Inc.*, 237 Fed. Appx. 513, 520-21 (11th Cir. 2007). *See also Schoebel v. Am. Integrity Ins. Co. of Fla.*, No. 8:14–cv–426–T–27AEP, 2015 WL 4231670 (M.D. Fla. July 10, 2015) (granting summary judgment to employer because, notwithstanding the close temporal proximity between the plaintiff's protected conduct and her termination, she indisputably violated her employer's e-mail policy, which was a legitimate reason for the termination unrelated to her protected conduct). Relatedly, a plaintiff cannot establish causation where the employer contemplates or takes adverse action *before* the alleged protected activity occurs. *Buchanan v. Delta Air Lines, Inc.*, 727 Fed. Appx. 639, 642 (11th Cir. 2018) (citing *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006)). In other words, "employees who are already on thin ice [cannot] insulate themselves against termination or discipline by preemptively making a discrimination complaint." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1270 (11th Cir. 2010).

Here, the record is undisputed that President Shalala was the decisionmaker with respect to Plaintiff's termination. Plaintiff relies solely on a December 14 meeting with President Shalala as the point at which protected activity was brought to her attention. Prior to that date, however,

President Shalala was aware of (1) the Petition seeking Plaintiff's removal, along with the growing unrest and low morale of the faculty directed toward Plaintiff and (2) the problems regarding Plaintiff's management/communication style - - the very reasons why Plaintiff's employment was terminated. Because Plaintiff was on "thin ice" at the time of his alleged complaint, he cannot establish causation.

In sum, summary judgment in favor of the University is appropriate because Plaintiff has failed to establish the element of causation. *See, e.g., Strickland v. Water Works & Sewer Bd. of City of Birmingham,* 239 F.3d 1199, 1207 (11th Cir. 2001); *Wascura v. City of South Miami,* 257 F.3d 1238, 1248 (11th Cir. 2001).

## IV. The University Had Legitimate, Non-Retaliatory and Non-Pretextual Reasons to Terminate Plaintiff's Employment.

The above analysis should end the inquiry, as "[s]ummary judgment is appropriate if the plaintiff fails to satisfy any one of the elements of a *prima facie* case." *Adams v. City of Montgomery*, 569 Fed. Appx. 769, 773 (11th Cir. 2014) (citing *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1433 (11th Cir. 1998)). Nevertheless, even if Plaintiff had met his burden of establishing a *prima facie* case of retaliation, summary judgment in favor of the University still is appropriate. The University's reasons for the decision to terminate Plaintiff's employment are legitimate, and Plaintiff cannot establish that these reasons are a pretext for retaliation.

A legitimate reason for an adverse action is a reason independent from the alleged basis of retaliation. *Sheppard v. Sears Roebuck & Co*., 391 F. Supp. 2d 1168 (S.D. Fla. 2005). Neither the Plaintiff nor the Court may recast the reason given by the employer for taking a particular action. *Chapman v. AI Transp.*, 229 F.3d 1012 (11th Cir. 2000). It is not the Court's role to determine whether an employer's decisions are right or fair, but whether such decisions were motivated by retaliation. *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984).

Moreover, an employer may take action "for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Id.* (quoting *Jones v. Bessemer Carraway Med. Ctr.,* 151 F.3d 1321, 1324 n.16 (11th Cir. 1998)).

It is well-established that an employee's poor work performance is a legitimate, non-discriminatory reason for an adverse employment action. *See, e.g.*, *Rio v. Runyon*, 972 F. Supp. 1446, 1460 (S.D. Fla. 1997) (noting that "unsatisfactory work performance" is a legitimate reason); *Arnold v. Burger Queen Sys., Inc.*, 509 So. 2d 958, 959 (Fla. 2d DCA 1987) (same). Further, complaints about an employee's "service and demeanor" and co-worker complaints about an employee being "difficult to work with" and having a "bad attitude" are sufficient grounds for termination. *Johnson v. Great Expressions Dental Ctrs of Fla., P.A.*, 132 So. 3d 1174, 1178–79 (Fla. 3d DCA 2014). In addition, the law is clear that "[a]n employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1363 n.3 (11th Cir. 1999).

It is undisputed that the University had a reasoned and good-faith belief that Plaintiff's conduct and demeanor were unsatisfactory, as judged not only by President Shalala but also by other management personnel and Plaintiff's subordinates. Those are legitimate, non-retaliatory reasons for termination.

Once the employer has met its burden of articulating a legitimate, non-retaliatory reason for the adverse employment action at issue, the burden shifts back to the employee to show that the employer's independent reasons were, in reality, a mere pretext for retaliation. *Schaaf v. Smithkline Beecham Corp.,* 602 F.3d 1236, 1244 (11th Cir. 2010). It is well-established that "an employee's assertions of his own good performance are insufficient to defeat summary judgment."

*Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997) (citing *Billet v. CIGNA Corp.*, 940 F.2d 812, 818-22 (3rd Cir. 1991)); *see also Valenzuela v. GlobeGround N. Am., LLC*, 18 So. 3d 17, 26 (Fla. 3d DCA 2009) (same).

A "plaintiff's pretext claim will fail where [she] merely questions the wisdom of the employer's reasons, at least where the reason is one that might motivate a reasonable employer." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997). Rather, to satisfy his burden, Plaintiff must present sufficient evidence to permit a reasonable factfinder to conclude that the reasons given by the University were not the real reasons for the adverse employment decision. *Schaaf,* 602 F.3d at 1244.

Moreover, to prove pretext, a plaintiff "cannot recast the reason [proffered by the employer] but must meet it head on and rebut it." *Springer v. Convergys Customer Mgt. Group Inc.*, 509 F.3d 1344, 1350 (11th Cir. 2007); *Barsorian v. Grossman Roth, P.A.*, 572 Fed. Appx. 864, 869 (11th Cir. 2014) (affirming summary judgment because plaintiff failed to meet the employer's reason "head on and rebut[] it"). "[A] reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." *Gossard v. JP Morgan Chase & Co.*, 612 F. Supp. 2d 1242, 1252 (S.D. Fla. 2009), *aff'd*, 389 Fed. Appx. 936 (11th Cir. 2010); *Brooks v. Cty. Comm'n of Jefferson Cty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006).

Plaintiff cannot meet his burden of establishing pretext. There is no dispute that the Petition existed, that it was signed by hundreds of faculty members and that the consensus on campus was that Plaintiff fostered a "Reign of Terror" culture. Therefore, Plaintiff cannot establish that those reasons were false or that retaliation was the real reason for his termination.

Further, it bears noting that other employees (like Dean Goldschmidt and Dr. McCafferty) shared the same TMG findings with President Shalala in the same timeframe as Plaintiff but were not terminated. Said another way, if President Shalala had retaliatory animus, every employee who raised concerns about Medicare fraud would have been fired. That Plaintiff's supervisor (Dean Goldschmidt) and subordinate (Dr. McCafferty) remained employed for engaging in the same alleged protected activity as Plaintiff further undermines any claim of pretext. *See Hamza v. Saks Fifth Ave., Inc.*, No. 07 CIV. 5974 (FPS), 2012 WL 13036200, at *6 (S.D.N.Y. Sept. 26, 2012) ("if others who engaged in the same protected activity are not met with similar adverse employment actions, such evidence is highly probative of non-retaliatory motivation") (citing *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)), *aff'd*, 533 Fed. Appx. 34 (2d Cir. 2013).[4]

In sum, there exists not a scintilla of evidence in this case that Plaintiff was terminated because of anything related to the FCA. To the contrary, the evidence is undisputed that Plaintiff's employment was terminated for legitimate, non-retaliatory and non-pretextual reasons. Accordingly, summary judgment is appropriate.

## V.     Plaintiff's Claims are Barred by the Doctrine of Judicial Estoppel.

The above analysis should end the inquiry. However, summary judgment also is appropriate based on the University's affirmative defense of judicial estoppel. "The equitable doctrine of judicial estoppel is intended to 'prevent the perversion of the judicial process' and 'protect [its] integrity . . . by prohibiting parties from deliberately changing positions according to

---

[4]     Similarly, the fact that other high-ranking officials (like Dr. Keitz, Lee Phillips and Nelson Weichold) were terminated/demoted around the same time as Plaintiff but had no involvement with the TMG audit further supports the University's legitimate, non-pretextual justifications. In response to faculty outcry, the University made significant changes to leadership having nothing to do with discrimination/retaliation.

the exigencies of the moment.'" *Slater v. United States Steel Corp.*, 871 F.3d 1174, 1180–81 (11th Cir. 2017) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001)). "When a party does so, the doctrine of judicial estoppel allows a court to exercise its discretion to dismiss the party's claims." *Id*. The Eleventh Circuit "employs a two-part test to guide district courts in applying judicial estoppel: whether (1) the party took an inconsistent position under oath in a separate proceeding, and (2) these inconsistent positions were calculated to make a mockery of the judicial system." *Id*. (citations and quotations omitted). The Court should consider "both the plaintiff's actions—whether he made inconsistent statements—and his motive—whether he intended to make a mockery of the judicial system." *Id*. "A motivation to conceal may be shown by evidence of a potential financial benefit that could result from concealment." *U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 274 (5th Cir. 2015) (applying judicial estoppel to bar FCA claim) (citing *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 262 (5th Cir. 2012),

Although judicial estoppel is often invoked against bankruptcy debtors, the doctrine is available in any civil action. *Stabielli v. Eagle Roofing Products Florida, LLC*, No. 12-80766-CIV, 2013 WL 12101139, at *2 (S.D. Fla. Aug. 19, 2013) (collecting cases and granting summary judgment on the basis of judicial estoppel). *See also Schaffart v. ONEOK, Inc.*, 686 F.3d 461, 470 (8th Cir. 2012) (noting that employee's statements in divorce deposition could support judicial estoppel defense).

This Court has invoked the doctrine of judicial estoppel to prevent a party from asserting conflicting positions before different tribunals. *See, e.g., Drew Estate Holding Co., LLC v. Fantasia Distribution, Inc.*, 875 F. Supp. 2d 1360, 1370–71 (S.D. Fla. 2012) (Altonaga, J.) ("The policies underlying the doctrine include preventing internal inconsistency, precluding litigants from playing fast and loose with the courts, and prohibiting parties from deliberately changing

positions according to the exigencies of the moment.") (quoting *United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir. 1993)); *Ramsay v. Broward Cty. Sheriff's Office*, No. 09-60456-CIV, 2009 WL 10668269, at *2–3 (S.D. Fla. July 31, 2009) ("The Court finds that Plaintiff is barred from raising arguments of deficiencies of the District Court's decisions in the prior cases by the doctrine of judicial estoppel."), *R&R adopted,* D.E. 31 by Altonaga, J. (Aug. 18, 2009); *Ocean's 11 Bar & Grill, Inc. v. Indem. Ins. Corp. RRG*, No. 11-61577-CIV, 2012 WL 5398625, at *19 (S.D. Fla. Nov. 2, 2012) (Altonaga, J.) ("doctrine of judicial estoppel, which prevents a party from asserting a position in a legal proceeding that is contrary to a position taken previously in the same or earlier proceeding, may be invoked through statements made by an attorney and imputed to the party") (citing *Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003), *aff'd*, 522 Fed. Appx. 696 (11th Cir. 2013).

Other courts have invoked judicial estoppel where a party "did indeed intend to make a mockery of the judicial system by attempting to shield potential assets from bankruptcy proceedings, making inconsistent statements in this court and the bankruptcy court, and now feigning ignorance and attempting to lay blame on his bankruptcy counsel" *Harewood v. Miami-Dade Cty.*, No. 1:16-CV-21874-KMM, 2018 WL 1156010, at *5 (S.D. Fla. Mar. 1, 2018) (granting summary judgment), *aff'd*, 780 Fed. Appx. 748 (11th Cir. 2019). In affirming a district court's application of judicial estoppel, the Eleventh Circuit has stated

> In sum, the district court did not abuse its discretion when it invoked the flexible, equitable doctrine of judicial estoppel here. "'Equity eschews mechanical rules' and 'depends on flexibility.'" *Slater*, 871 F.3d at 1187 (quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 396, 66 S.Ct. 582, 90 L.Ed. 743 (1946)). We affirm the district court's consideration of "all facts and circumstances in evaluating the plaintiff's intent," *id.*, as well as its exercise of its discretion in defense of the integrity of the judicial process. ***Korman's current position is clearly inconsistent with her earlier one, which was fully accepted by the 1990s district court. Although that***

> ***acceptance did not result in success for Korman, allowing her to
> proceed with her new position would still create the perception that
> the first court was misled.*** Allowing Korman's new position would
> also give her an unfair advantage, granting her a second chance to
> litigate a timeworn claim. *See generally New Hampshire*, 532 U.S.
> at 750–51, 121 S.Ct. 1808. ***The district court was entitled to defend
> itself against Korman's attempt to circumvent the time bar by
> asserting diametrically opposed facts. The balance of equities here
> favors barring Korman's present complaint in order to "protect the
> judiciary, as an institution, from the perversion of judicial
> machinery."*** See *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599
> (6th Cir. 1982).

*Korman v. Iglesias*, 778 Fed. Appx. 680, 683 (11th Cir. 2019) (emphasis added). *See also Weakley
v. Eagle Logistics*, 894 F.3d 1244, 1247 (11th Cir. 2018) ("Because the district court considered
all the facts and circumstances of Weakley's cases in determining whether he intended to mislead
the bankruptcy court . . . , it did not abuse its discretion by applying judicial estoppel and dismissing
these two lawsuits that he failed to disclose in his bankruptcy proceeding"); *Henderson v. Franklin*,
782 Fed. Appx. 866, 872 (11th Cir. 2019) ("the district court did not abuse its discretion in
determining based on all of the facts and circumstances of the case that Henderson intended to
make a mockery of the judicial system by pressing his USSA claims in one forum while denying
their existence in another").

Here, the elements of judicial estoppel have been satisfied. In his divorce proceedings,
Plaintiff repeatedly took the position (in deposition, in sworn interrogatory answers, in affidavits
and in pleadings) that he "retired" or "resigned" from the University and was no longer looking
for employment. The reason for this is obvious: Plaintiff's ex-wife sought alimony and, in light of
the duration of their marriage (approximately thirteen years) and his superior earning power (she
did not work during the marriage while he earned millions), she presumably would have been
entitled to same. *See, e.g.*, *Valente v. Barion*, 146 So. 3d 1247, 1249 (Fla. 2d DCA 2014) ("The
parties' twelve-year marriage is regarded as a moderate-term marriage. *See* § 61.08(4). In such a

case, permanent alimony may be awarded, but the trial court must decide that it is appropriate "based upon clear and convincing evidence after consideration of the factors set forth in subsection [61.08] (2)." § 61.08(8); *see also Walker v. Walker*, 85 So. 3d 553, 554 (Fla. 1st DCA 2012) ("In order to award permanent alimony, the trial court must make specific factual determinations with regard to actual need on the part of the former spouse seeking an alimony award."); *Addie v. Coale*, 120 So. 3d 44, 47 (Fla. 4th DCA 2013) (noting that, in "a gray area or moderate term marriage, the disparate earning power of the parties is a significant factor in determining whether permanent or temporary support is appropriate."). Plaintiff's representations before the divorce court - - which his ex-wife relied on and which were adopted by the divorce court in the settlement agreement and final judgment - - resulted in no alimony to the Plaintiff.

Now, years later, Plaintiff claims that he was terminated from all of his positions at the University and has actively looked for comparative employment over the last ten years with no success, seeking $50 million in damages. It would make a mockery of the judicial system to allow Plaintiff to proceed with these claims after successfully deceiving his ex-wife out of alimony and other financial remuneration by repeatedly stating under oath that he retired from the University and did not intend to work any longer. Under these circumstances, the University respectfully requests that the Court invoke the doctrine of judicial estoppel and dismiss this lawsuit.[5]

## CONCLUSION

There is no evidence to suggest that the University retaliated against Plaintiff because of any alleged protected activity. To the contrary, the record conclusively establishes the legitimacy

---

[5]     Alternatively, the University respectfully requests that Plaintiff's alleged/claimed damages be limited in accordance with his sworn statements in his divorce case. Plaintiff swore that he "retired" as of July 2013 (when his professorship ended). That date should be the cut-off for Plaintiff's damages claims, limiting Plaintiff's recovery accordingly.

of the University's employment decisions. Further, Plaintiff should not be permitted to take positions in this lawsuit that are diametrically opposed to the positions he successfully took in his divorce. In sum, application of controlling legal principles to the undisputed factual record in this case warrants summary judgment in favor of the University on Plaintiff's sole remaining claim.

WHEREFORE, the University respectfully requests that the Court (1) grant this Motion and enter final summary judgment in its favor on Plaintiff's FCA retaliation claim; (2) award the University its attorneys' fees and costs pursuant to applicable law, including 31 U.S.C. § 3730(d)(4); and (3) grant such other relief as the Court deems just and appropriate under the circumstances.

Respectfully submitted,

**ISICOFF RAGATZ**
601 Brickell Key Drive, Suite 750
Miami, Florida 33131
Tel: (305) 373-3232
Fax: (305) 373-3233

By: /s/ Christopher M. Yannuzzi
  Eric D. Isicoff
  Florida Bar No. 372201
  Isicoff@irlaw.com
  Teresa Ragatz
  Florida Bar No. 545170
  Ragatz@irlaw.com
  Christopher M. Yannuzzi
  Florida Bar No. 92166
  Yannuzzi@irlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I **HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via

CM/ECF this 31st day of May, 2022, upon the following:

Jeffrey H. Sloman
Stumphauzer Foslid Sloman Ross & Kolaya, PLLC
Two South Biscayne Boulevard, Suite 1600
Miami, Florida 33131
Telephone: (305) 614-1400
Facsimile: (305) 614-1425
E-mail: jsloman@sfslaw.com

By: /s/ Christopher M. Yannuzzi
Christopher M. Yannuzzi