UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-22500-CIV-ALTONAGA/McALILEY

JONATHAN LORD, M.D.,

Plaintiff,
v.

UNIVERSITY OF MIAMI,

Defendant.
_____/

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION IN LIMINE**

*Plaintiff's Reply in Support of Motion in Limine*
CASE NO. 13-22500-CIV

## I. INTRODUCTION

Dr. Lord's[1] Motion *in Limine* (the "MIL" (DE 158)) seeks to exclude evidence and argument concerning Dr. Lord's purported motive to "cheat his former wife out of alimony and other property" and that Dr. Lord "succeeded in accomplishing" his goal by reaching a settlement. (*See* Motion for Summary Judgment ("MSJ" (DE 139)) at 2.) This evidence should be excluded because it is (i) irrelevant to whether the University's firing of Dr. Lord was retaliatory (MIL at 6–7), (ii) marginally relevant only to a non-jury issue (judicial estoppel) (*id.* at 7–9), and (iii) substantially outweighed by the danger of unfair prejudice, confusion of issues, and misleading the jury, particularly respecting the University's failure to mitigate damages defense (*id.* at 9-–2). This requested relief appears **at least** 10 times on 8 different pages of Dr. Lord's 12-page MIL.[2]

Yet, the University's Response in Opposition to Dr. Lord's MIL (the "Opposition" or "Opp'n" (DE 166)) does not address the admissibility of that evidence and argument. That is because it has nothing to say about, among other things, the **nine** statutory factors for alimony (requiring proof by clear and convincing evidence). So while the University **tells** the Court Dr. Lord's "obvious" motive was to cheat his former wife ("Ms. Meagher") out of alimony she was "presumably" entitled to (*see* DE 139 at 2, 17; DE 153 at 9, 17; DE 166 at 5, 11 n.8), it cannot

---

[1] Dr. Lord's Reply in Support of Plaintiff's Motion *in Limine* uses the same abbreviations or conventions supplied in Plaintiff's Motion *in Limine*. (See DE 158.)

[2] (*See* MIL at 3, 4, 5 (seeking exclusion of "evidence relating to the outcome of Dr. Lord's prior divorce proceedings and . . . [argument] that Dr. Lord acted in bad faith" in divorce), § III.a. ("Dr. Lord's "motive" and the outcome of Dr. Lord's divorce proceedings is irrelevant to whether the University fired Dr. Lord because of his protected activity and the University's judicial estoppel defense is not an issue for the jury."), 6 (whether alimony was awarded in unrelated divorce and Dr. Lord's "motive" in that unrelated litigation are irrelevant), 9 (speculation regarding Dr. Lord's motives in his divorce and the court's rationale for approving a settlement without awarding alimony has no probative value), § III.b. ("[T]he University's unsupported argument that Dr. Lord acted in bad faith during these proceedings and that his ex-wife was not awarded alimony is unduly prejudicial and likely to confuse and mislead the jury."), 10 ("Even if . . . Dr. Lord's motives in the divorce proceedings and the outcome of the divorce proceeding had marginal relevance to this dispute (they do not), the University's incendiary speculation concerning those irrelevant factors is unfairly prejudicial and risks confusing or misleading the jury."), 11 (seeking exclusion of speculative evidence that Dr. Lord is a "liar and cheated his ex-wife out of alimony" because it "risks unfairly tainting Dr. Lord's character and credibility to the jury" and "the jury's consideration of the . . . failure to mitigate defense"), § IV. Conclusion ("This Court should . . . exclude all evidence relating to the outcome of Plaintiff's prior divorce proceedings and any argument insinuating Plaintiff acted in bad faith during those proceedings.")

***show*** that Dr. Lord's positions are "clearly inconsistent" (they are not) and were intended to have any actual bearing on Ms. Meagher's choice to agree to a substantial financial settlement.

So, instead, the University attacks a straw man, arguing Dr. Lord seeks to exclude his own statements in his prior divorce proceedings. (Opp'n at 1.) He does not. And the University knows it, noting "Plaintiff's concession" that the University may use his "'prior deposition testimony in his divorce case for impeachment purposes.'" (MIL at 6 n.3.) This is reason alone to grant the MIL.

In addition, the University claims that "neither Plaintiffs nor his attorneys (who were involved in both litigations) have advanced any contrary explanation for his shifting positions." (*See* Opp'n at 3–5 (citing MSJ argument and facts), 5 & n.2 (emphasis in original); *see also* DE 153 at 9 (claiming Dr. Lord did not identify evidence to deny motive).) This argument incorrectly implies that it is Dr. Lord's burden. In addition, each representation in the argument is wrong.

As an initial matter, Dr. Lord's lead counsel in the underlying *qui tam* action and in this case is Jeffrey Sloman, who had nothing to do with Dr. Lord's divorce. Neither did Mr. Sloman's firm nor Dr. Lord's other undersigned counsel.

More importantly, Dr. Lord argued the University was not entitled to summary judgment on its judicial estoppel defense. (DE 145 at 18–20.) Dr. Lord's testimony in his divorce proceeding is consistent with his anticipated testimony. (*Id.* at 18-19.) He testified in his divorce case (as he will testify here) that: (1) he was removed (*i.e.*, did not retire or resign) from his executive positions at the University (DE 146-2 at 105:8–22) but retired from his professorship (*id.* at 99:7–23, 105:8–22); (2) he was open to other opportunities (*id.* at 106:5–13); (3) in October 2014, a search firm contacted him about the CEO position with the American Diabetes Association ("ADA") (*id.* at 108:25–110:1); and (4) he was one of two finalists for the ADA position but did not get the position because of publicly available information regarding his termination from the University (*id.*).

Dr. Lord's deposition testimony discussed the difference between actively "seeking employment versus other opportunities and work." He noted that he networked with search firms, joined a variety of social sites that assist with job searches, attended conferences beginning in January 2013, and served on three or four additional boards beginning in 2013. (DE 146 ¶ 62.a.i.1. (citing DE 140-1 at 203:13–25).) This is consistent with his prior testimony that, while unemployed, he was open to, and made efforts to pursue, other opportunities—the same kind of efforts that led to his role with the University and nearly led to an opportunity with the American

College of Pathologists in 2017. (DE 145 at 19 (citing DE 146 ¶¶ 62, 63, Interrog. No. 12).)

Even if there is some inconsistency, it is neither irreconcilable nor the result of "cold manipulation." (DE 145 at 19–20.) Dr. Lord's testimony regarding his professorship was informed by what Provost LeBlanc told him in January 2013, namely, there were "no departmental funds available for his continued appointment in the pathology department." (DE 145 at 18 (citing DE 146 ¶ 63.a.i.1.).) It was not until late in discovery in this case that Dr. Lord confirmed what he suspected all along that he had, in fact, been terminated from all positions. (*Id.*) In addition, Dr. Lord was concerned about violating the sealing order, which the Court lifted to allow the parties to candidly discuss the FCA claim's impact on Dr. Lord's employment prospects in the divorce proceedings. (DE 145 at 18–19 (citing DE 146 ¶ 66).)

Contrary to the University's self-serving speculation, Dr. Lord gained no advantage vis-à-vis alimony by representing in his divorce that he retired from his professorship, removed from "the other titles that [he] held" (DE 146-2 at 105:8–22), and made efforts to pursue other opportunities, including the ADA position. And Ms. Meagher freely chose to enter a substantial settlement with Dr. Lord, the terms of which are partially disclosed in the hearing transcript. (DE 146 ¶ 67; DE 140-6.) The University even argues that "in settling his divorce, [Dr. Lord] avoided paying alimony." (Opp'n at 11.) The University has not proven its judicial estoppel defense.

The University also keeps repeating that Dr. Lord's only protected activity "involving the decisionmaker" is a December 14, 2012 meeting with President Shalala. (*See* DE 139 at 8, 10–11; DE 140 ¶ 32; DE 166 at 11.) This argument attempts to artificially limit Dr. Lord's protected activity to one face-to-face interaction with President Shalala and ignores scores of other evidence of Dr. Lord's protected activity of which President Shalala was aware, including through Dr. Livingstone.[3] (*See* DE 145 at 6–10 (citing DE 146 ¶¶ 77–79, 83–85, 88–90, 92, 102); DE 140-4 at Interrog. No. 5).)

Finally, none of the University's arguably relevant arguments support denial of the MIL. First, the University argues that Dr. Lord did not "specifically" identify the evidence to be excluded. But he did. He seeks to exclude the (limited) universe of "evidence" the University relies

---

[3] The University argues credibility is vital to this trial because there is "no written summary" of Dr. Lord's December 14 meeting between Dr. Lord and President Shalala, the events of which are "hotly disputed." (Opp'n at 11.) This same problem permeates the University's MSJ. Among other things, President Shalala's purported "legitimate" reasons for terminating Dr. Lord are also "hotly disputed" and not documented and, thus, hinge on witness credibility.

on in its MSJ regarding Dr. Lord's purported motive throughout his divorce proceedings and the outcome of those proceedings. (*See* DE 140 ¶¶ 59, 67, 68; DE 139 at 17 (arguing Dr. Lord was married to Ms. Meagher for 13 years, she sought alimony, and he had "superior earning power")).) To be sure, Dr. Lord also sought to exclude specifically identified **arguments** concerning this evidence. (*See supra* at n.2; DE 158 at 2–3 (citing DE 139 at 2, 17–18; DE 153 at 9).)

Second, the University contends (incorrectly) that Dr. Lord had a binary choice regarding the University's judicial estoppel defense—either file a motion for summary judgment or argue there are factual issues to be determined and proceed to a jury trial. (Opp'n at 8 & n.5.) This argument purports to limit the Court's discretion concerning this equitable defense, relies on an Eleventh Circuit decision where this equitable doctrine was resolved in a **bench trial**, and ignores Dr. Lord's argument that factual disputes can be resolved in an evidentiary hearing. (MIL at 8–9 (citing cases).)

Third, the University again mischaracterizes Dr. Lord's arguments, claiming that Dr. Lord's MIL appears to be an "untimely motion for summary judgment" on the failure to mitigate damages defense. (Opp'n at 10 n.7.) It does not. And the University again just ignores Dr. Lord's cited authorities holding that the party asserting failure to mitigate damages must prove that substantially equivalent work was available. (MIL at 11–12.) As argued in the MIL, Dr. Lord's motive in and the outcome of his divorce is irrelevant to the University's failure to mitigate damages defense. Presenting the University's speculation risks confusing the jury regarding the University's burden to prove its affirmative defense.[4]

And, fourth, the University argues that Dr. Lord's and Ms. Meagher's settlement is relevant to their "financial biases" because "in settling his divorce, [Dr. Lord] avoided paying alimony to his ex-wife and agreed to share any recovery with her." (Opp'n at 11–12.) This evidence is inadmissible. First, this is a subtle admission that the University is relying on the unfair prejudice this speculative evidence would cause Dr. Lord. In fact, the University does not know whether Ms. Meagher will confirm the University's speculation. So, it wants to let the jury speculate that Dr. Lord lied to avoid alimony and, using the fact that the FCA anti-retaliation claim was marital property (each receiving a 50% share in the settlement), that Dr. Lord and Ms. Meagher are lying to increase their recovery. Second, alimony has no bearing on this FCA litigation. And, third, Ms.

---

[4] The University must do much more than observe that now, ten years later, Dr. Lord is remarried and lives in Hawaii. (Opp'n at 11.)

*Plaintiff's Reply in Support of Motion in Limine*
CASE NO. 13-22500-CIV

Meagher and, particularly Dr. Lord (the Plaintiff), have always shared a financial interest in this FCA anti-retaliation case—the divorce settlement is unnecessary to prove that financial interest.

For these reasons, and those argued in the MIL, the University should be precluded from presenting this irrelevant and prejudicial evidence and argument to the jury.

## II. ARGUMENT

Dr. Lord seeks exclusion of evidence relating to the outcome of Dr. Lord's prior divorce proceedings and from arguing that Dr. Lord acted in bad faith during those proceedings to cheat Ms. Meagher out of alimony for three reasons: (1) Dr. Lord's "motive" and the outcome of his divorce proceedings is irrelevant to whether he was terminated because he engaged in protected activity (MIL at 6); (2) although marginally relevant to judicial estoppel, that equitable defense is for the Court to resolve, not the jury (*id.* at 7–9); and (3) any marginal relevance of this unsupported evidence and argument is outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury (*id.* at 9–12). The University's response does not sufficiently address these arguments. This Court should grant Dr. Lord's MIL.

### a. Dr. Lord specifically identified the evidence he seeks to exclude.

The University argues that Dr. Lord's MIL should be denied because his requested relief—exclusion of "irrelevant evidence in support of its judicial estoppel defense regarding Dr. Lord's unrelated divorce proceedings"—is too general. (Opp'n at 7.) But that is not an apt description of the evidence and argument Dr. Lord seeks to exclude. (*See supra* at 1 n.2. (citing each reference to specific relief requested).) Dr. Lord's MIL is not subject to dismissal on this basis.

"Motions *in limine* should be limited to specific pieces of evidence and not serve as reinforcement regarding the various rules governing trial, or (re)-addressing substantive motions such as motions for summary judgment." *RJ's Int'l Trading, LLC v. Crown Castle S., LLC*, Case No. 20-25162, 2021 WL 6135137, at *1–*2 (S.D. Fla. Dec. 2, 2021) (Altonaga, C.J.) (quoting *Holder v. Anderson*, No. 3:16-cv-1307, 2018 WL 4956757, at *1 (M.D. Fla. May 30, 2018) (italics added; citations omitted). Dr. Lord's MIL is appropriate.

Dr. Lord seeks to exclude the "evidence" the University relies on in its MSJ regarding Dr. Lord's purported motive in and the outcome of the divorce. (*See* DE 158 at 2–3, 5; DE 145 at 17–20; DE 140 ¶¶ 59, 67, 68; DE 139 at 17 (13-year marriage, alimony requested, and Dr. Lord had "superior earning power")).) This is not a generalized, sweeping motion *in limine* courts generally deny. *See, e.g.*, *RJ's Int'l Trading, LLC*, 2021 WL 6135137, at *1–*2 (request to preclude "lay

5

and fact witnesses" from presenting "opinion evidence or testimony regarding municipal zoning laws and regulations"); *Holley v. Carnival Corp.*, No. 20-CV-20495, 2021 WL 5299836, at *4 (S.D. Fla. Nov. 15, 2021) (request to generally exclude hearsay statements); *Holder*, 2018 WL 4956757, at *3 (requesting general adherence to federal rules); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Grp.*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996) (request to exclude extrinsic evidence offered to alter insurance terms was "too sweeping in scope" because it did not identify the extrinsic evidence or party intending to offer it).

To the extent Dr. Lord does not identify witnesses or testimony to be excluded, that is the University's fault. Dr. Lord does not know how the University intends to prove Dr. Lord's intent or prove his testimony avoided alimony. The University did not take Ms. Meagher's deposition and there is no testimony concerning his motive or the divorce judge's state of mind.

To be sure, Dr. Lord also sought to exclude specific ***arguments*** concerning this evidence. (*See supra* at n.2; DE 158 at 2–3 (citing DE 139 at 2, 17–18; DE 153 at 9).) This is enough. *See Dagnesses v. Target Media Partner Operating Co., LLC*, No. 1:15-CV-23989-UU, 2016 WL 10647255, at *4 (S.D. Fla. Nov. 14, 2016) (excluding multiple arguments); *United States v. Rodrigues*, No. 05-10009-CR, 2007 WL 788899, at *1 (S.D. Fla. Mar. 14, 2007) (excluding argument on "Legislative and Executive Branch Immigration Policies"), *aff'd sub nom. United States v. Dominguez*, 661 F.3d 1051 (11th Cir. 2011); *In re Norplant Contraceptive Products Liab. Litig.*, MDL No. 1038, 1997 WL 81090, at *1 (E.D. Tex. Feb. 21, 1997) (barring argument "Predicated on a Nonexistent Duty to Warn"); *United States v. Bonds*, No. 2:16-CR-0034-RWS-JCF, 2017 WL 2991465, at *1 (N.D. Ga. July 13, 2017) (excluding argument). The Court should grant the MIL.

### b. *Any disputed factual issues can be resolved in an evidentiary hearing.*

Dr. Lord argues in his MIL that judicial estoppel is not a jury issue; rather, it is an equitable doctrine invoked at the Court's discretion based on flexible considerations. (MIL at 7–9 (citing Eleventh Circuit, Seventh Circuit, and Third Circuit cases, and noting there is no pattern jury instruction in Florida state courts because judicial estoppel is "an equitable doctrine which a court is to determine").) The University's counterarguments lack merit.

The University argues that any fact disputes regarding judicial estoppel must be resolved at trial. (Opp'n at 8–9.) In support, the University notes that (i) Dr. Lord argued factual issues which precluded summary judgment and (ii) the parties' Joint Pre-Trial Stipulation identified that

"[w]hether Dr. Lord is estopped from pursuing his claims in this case" is an issue of "fact which remain[s] to be litigated at trial." (*Id.* (quoting DE 160 at 4).) The University is mistaken.

First, the University's argument suggests that Dr. Lord either had to move for summary judgment or try any factual disputes at trial. (Opp'n at 8 & n.5.) This is a false dilemma and ignores that courts invoke judicial estoppel at their discretion. Moreover, this argument assumes judicial estoppel is a jury issue (it is not) and does not consider that federal courts have concluded that any fact issues can be resolved at an evidentiary hearing. (MIL at 8–9.)

Second, the Joint Pre-Trial Stipulation is not the concession the University thinks it is. Because Dr. Lord opposes summary judgment, he concedes that there are fact issues precluding summary judgment, not that these issues must be tried before a jury. In fact, Dr. Lord submitted two other filings the same day as the Joint Pre-Trial Stipulation arguing that judicial estoppel is not a jury issue. (*See* MIL at 7–9; D.E. 161 at 49 n.2 (noting Dr. Lord argued judicial estoppel is not a jury issue in his competing judicial estoppel jury instruction offered "solely to avoid waiving any objection to the University of Miami's proposed instruction").)

In fact, judicial estoppel is not a jury issue. Nothing in the University's response squarely addresses Dr. Lord's supporting authorities. (*See* MIL at 7–9 (citing cases).) Instead, the University addresses this important issue in a one-line argument, suggesting (through parentheticals) that there is a "nationwide" consensus that judicial estoppel issues are submitted to the jury. (*See* Opp'n at 9 (arguing issues must be resolved at trial, "whether the Court or the jury ultimately decides the issue").) But there is none. In fact, the University cites to an Eleventh Circuit case affirming application of judicial estoppel following a **bench trial** and an Eastern District of Missouri case that cited to **one** Missouri state court case. (*See id.* (citing *Ajak v. Residential Funding Corp.*, 278 F. App'x. 916, 917 (11th Cir. 2008) and *United Fire & Cas. Co. v. Thompson*, 949 F. Supp. 2d 922, 931 (E.D. Mo. 2013) (citing *Loth v. Union Pacific R. Co.*, 354 S.W.3d 635, 642 (Mo. Ct. App. 2011) ("after finding that the trial court impermissibly made credibility determinations, the Missouri Court of Appeals noted that the 'trial court could only reach its conclusions that plaintiff had a motive to conceal his claim by drawing inferences'").)

The University also cited a case from the District of Oregon. That court recognized that other federal courts have resolved fact issues for judicial estoppel at evidentiary hearings but was bound by decisions from the Ninth Circuit holding generally that issues of intent are for the jury. *See Reddy v. Morrisey*, No. 3:18-CV-00938-YY, 2020 WL 8268884, at *13 & n.15 (D. Or. Nov.

30, 2020). That court also cited to an Eastern District of Pennsylvania decision that relied on cases that do not support that a jury determines fact issues relating to judicial estoppel. *See Benjamin v. Nat'l R.R. Passenger Corp.*, No. CIV.A. 09-4885, 2011 WL 2036702, at *5 (E.D. Pa. May 23, 2011) (citing *In Re: Myers*, 491 F.3d 120, 125 (3d Cir. 2007) (bad faith determination best for bankruptcy court to decide); *In re Okan's Foods, Inc.*, 217 B.R. 739, 755 (Bkrtcy. E.D. Pa. 1998) (bad faith issue not usually resolved on summary judgment, without deciding it is a jury issue); *Whitford Land Transfer Co., Inc. v. Seneca Ins. Co., Inc.*, No. 08-0071, 2008 WL 4792386, at *7 (E.D. Pa. Oct.31, 2008) (general bad faith case)). *Benjamin* also appears inconsistent with Third Circuit decisions, including one cited in footnote 15 in *Reddy*. *See Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 780 n.5 (3d Cir. 2001) (cited in *Reddy* and holding court could decide bad faith without evidentiary hearing, but noting courts must generally resolve fact disputes in an evidentiary hearing); *see also Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 325 (3d Cir. 2003) (affirming application of judicial estoppel raised *sua sponte* without first holding an evidentiary hearing).

### c. *Evidence and argument concerning Dr. Lord's motive in and outcome of the divorce proceeding risks unfair prejudice and confusion of issues.*

Dr. Lord argues in his MIL that the University's introduction of this evidence in support of a defense theory similar to its other "related" affirmative defense of failure to mitigate risks confusion of the issues or misleading the jury. (MIL at 11–12.) In relevant part, Dr. Lord argues that conjecture regarding Dr. Lord's motive and the outcome of the divorce proceeding risks tainting the jury's consideration of the University's failure to mitigate damages defense because the defense requires the University to prove that substantially equivalent employment opportunities were available to Dr. Lord in the same area and judicial estoppel does not. (*Id.* (citing *Galbreath v. Hale Cnty., Ala. Comm'n*, 754 F. App'x 820, 830 (11th Cir. 2018); *Ross v. Twenty-Four Collections, Inc.*, 681 F. Supp. 1547, 1554 (S.D. Fla. 1988)).)

The University's counterarguments are unconvincing. It contends that the Eleventh Circuit Pattern Jury Instructions for Title VII damages controls, again ignoring Dr. Lord's Eleventh Circuit authorities that hold to the contrary, and claims the fact that Judge Rosenbaum used this instruction earlier this year is persuasive. (Opp'n at 10 (citing pattern instructions and *Cutlass Collieries, LLC v. Jones*, No. 20-CV-80001, 2022 WL 580485, at *2–*3 (S.D. Fla. Feb. 25, 2022).)

But the pattern instructions for Title VII damages or for retaliation do not state they are intended for FCA anti-retaliation claims. And neither cites to any authority supporting the

emphasized portion of the instruction cited by the University. *See* Current Civil Pattern Jury Instructions (last revised in March 2022), *available at* https://www.ca11.uscourts.gov/sites/default/files/courtdocs/clk/FormCivilPatternJuryInstructionsRevisedMAR2022.pdf. The University also did not independently support that part of the instruction. (*See* D.E. 161 at 33–34.)

Further, the parties in *Cutlass Collieries*, an age discrimination matter, ***agreed*** to the specific instruction the University refers to in its Opposition. *See Cutlass Collieries, LLC v. Jones*, No. 20-CV-80001, DE 211 at 43–44 (S.D. Fla. Feb. 23, 2022), attached as **Exhibit 1**. Whether that part of the instruction is correct was not before the court. The parties, however, asked the court to apply competing non-pattern proposed jury instructions "that summarize[] his/its own view of how Mr. Jones should have mitigated his damages in this case." *Cutlass Collieries, LLC*, 2022 WL 580485, at *2. The court declined to adopt either party's non-pattern jury instruction and, thus, defaulted to the agreed-to pattern mitigation jury instruction. *Id.* at *2–*3.

Accordingly, the University must prove that substantially equivalent work was available to support its failure to mitigate damages defense. Presenting the University's speculative evidence and argument relating to Dr. Lord's divorce to the jury risks confusing or misleading the jury regarding the University's burden on its failure to mitigate defense. It should be excluded.

### d. *The divorce settlement is not relevant to financial bias.*

Finally, the University argues that Dr. Lord's and Ms. Meagher's divorce settlement is relevant to their "financial biases in their testimony in this case" because "in settling his divorce, [Dr. Lord] avoided paying alimony to his ex-wife and agreed to share any recovery with her." (Opp'n at 11-12.) This is argument is curious (and incorrect) in many ways.

First, the University suggests it intends to impeach Ms. Meagher, a witness the University is not expecting to call. (*See* DE 160-4 at 2.) In fact, the University claimed that it could rely on Ms. Meagher's former testimony to support the University's MSJ under Federal Rule of Civil Procedure 32 and FRE 804(b)(1) (it cannot)[5] and intends to use her transcript at trial. (*See* DE 160-

---

[5] (*See* DE 153 ¶ 67.) Dr. Lord disagrees that the hearing transcript from the divorce proceeding is appropriate to consider on summary judgment. *See* Fed. R. Civ. P. 56(c)(2). The former testimony at issue is a hearing transcript, not a deposition. *See* Fed. R. Civ. P. 32. And even if Ms. Meagher is unavailable under FRE 804(a) (she is not), Dr. Lord did not have the opportunity to cross-examine Ms. Meagher and would not have had a similar motive to develop her testimony. *See* FRE 804(b)(1)(B); *see also United States v. DiNapoli*, 8 F.3d 909, 912 (2d Cir. 1993) (no similar motive because party had little incentive to undermine witness's credibility); *Matter of Sterling Nav. Co.*,

9

4 at 2.) If the transcript is, in fact, admissible (it is not), the University cannot impeach a transcript.

Second, the University knows it cannot impeach a hearing transcript. Because it argues the divorce settlement is admissible to impeach her, it must anticipate that Ms. Meagher will testify at trial without knowing in advance whether she will confirm the University's theory. How could it? The University did not take her deposition and has no evidence of what occurred in the "six hours, plus" Dr. Lord and Ms. Meagher spent negotiating their settlement agreement, including whether they discussed that they "saved [themselves] a lot of money and a lot of aggravation and angst and emotions, and all the rest that goes with it" by settling the divorce. (*See* DE 140-6 at 35, 39–40.)

Third, the University believes the settlement in and of itself is evidence to support judicial estoppel—because Ms. Meagher agreed not to receive alimony—and is evidence to impeach Ms. Meagher—because she is entitled to half of marital property—if her testimony does not support the University's story. This is a subtle admission that the University does not know whether Ms. Meagher was "cheated out of alimony." It knows only that this evidence is unfairly prejudicial either way the University uses it—speculate that Dr. Lord acted in bad faith to cheat Ms. Meagher out of alimony or speculate that Ms. Meagher and he are lying under oath because they agreed to an even split of what was and remains marital property (the FCA anti-retaliation claim) because it developed during the marriage.

Finally, alimony from a settled divorce proceeding has no bearing on this litigation and is not evidence of Dr. Lord's or Ms. Meagher's bias. And, again, Ms. Meagher and, particularly, Dr. Lord (the Plaintiff), have always had a financial interest in this case. Thus, the divorce settlement is unnecessary and cumulative to prove any financial interest or so-called bias and, thus, is outweighed by the danger of unfair prejudice or confusion of the issues.

### III. CONCLUSION

This Court should grant Dr. Lord's Motion and exclude all evidence relating to the outcome of Plaintiff's prior divorce proceedings and any argument insinuating Plaintiff acted in bad faith during those proceedings.

---

*Ltd.*, 444 F. Supp. 1043 (S.D.N.Y. 1977) (no similar motive where testimony was from nonadversarial hearing).

*Plaintiff's Reply in Support of Motion in Limine*<br>CASE NO. 13-22500-CIV

Dated: July 25, 2022

Respectfully Submitted,

**STUMPHAUZER FOSLID SLOMAN & KOLAYA, PLLC**
Two South Biscayne Boulevard, Suite 1600
Miami, Florida 33131
Tel.: (305) 614-1400
Fax: (305) 614-1425


By: /s/ *Jeffrey H. Sloman*
JEFFREY H. SLOMAN
Florida Bar No. 378879
jsloman@sfslaw.com
JORGE A. PÉREZ SANTIAGO
Florida Bar No. 91915
jperezsantiago@sfslaw.com
JENNIFER M. HERNANDEZ
Florida Bar No. 1018836
jhernandez@sfslaw.com


*Counsel for Plaintiff Dr. Lord*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 25, 2022, I filed the foregoing document on CM/ECF causing a copy to be served on all counsel of record via electronic mail.

/s/ *Jeffrey H. Sloman*
JEFFREY H. SLOMAN

11