# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

GARRETT MYRON JONES,

        Claimant.

v.

CUTLASS COLLIERIES, LLC n/k/a VISTA
ENERGY RESOURCES, LLC,

        Employer.

Case No. 9:20-cv-80001-RLR

_____

**REVISED JOINT PROPOSED JURY INSTRUCTIONS[1]**

     Claimant, GARRETT MYRON JONES ("Claimant" or "Jones") and Employer,

CUTLASS COLLIERIES, LLC n/k/a VISTA ENERGY RESOURCES, LLC ("Cutlass" or

"Employer"), by and through their undersigned counsel and pursuant to this Court's ruling

during today's Zoom status conference, hereby jointly submit revised proposed jury

instructions.

     Consistent with this Court's Order Setting Pretrial Deadlines, *see* ECF No. 130, where

the Parties disagree, alternative instructions are included. Instructions and questions proposed

only by Cutlass to which the Jones objects are *italicized*. Instructions and questions proposed

only by Jones to which Cutlass objects are **bold-faced**. Specific objections to and authority in

support of contested or alternative instructions are set forth by the Parties in footnotes. Unless

---

[1] The Parties reserve the right to amend, add or remove jury instructions based on evidence
offered, admitted and/or excluded at trial.

stated otherwise, the authority for uncontested instructions that are neither italicized nor bold-faced can be found in the correspondingly numbered instruction contained within the current Eleventh Circuit Pattern Jury Instructions for Civil Cases. Additionally, a copy of the Parties' agreed joint proposed verdict form is attached hereto as Exhibit 1.

## 1.1 - General Preliminary Instruction (Pattern Modified)

Members of the Jury:

Now that you've been sworn, I need to explain some basic principles about a civil trial and your duty as jurors. These are preliminary instructions. I'll give you more detailed instructions at the end of the trial.

<u>The jury's duty:</u>

It's your duty to listen to the evidence, decide what happened, and apply the law to the facts. It's my job to provide you with the law you must apply – and you must follow the law even if you disagree with it.

<u>What is evidence:</u>

You must decide the case on only the evidence presented in the courtroom. Evidence comes in many forms. It can be testimony about what someone saw, heard, or smelled. It can be an exhibit or a photograph. It can be someone's opinion.

Some evidence may prove a fact indirectly. Let's say a witness saw wet grass outside and people walking into the courthouse carrying wet umbrellas. This may be indirect evidence that it rained, even though the witness didn't personally see it rain. Indirect evidence like this is also called "circumstantial evidence" – simply a chain of circumstances that likely proves a fact.

As far as the law is concerned, it makes no difference whether evidence is direct or indirect. You may choose to believe or disbelieve either kind. Your job is to give each piece of evidence whatever weight you think it deserves.

<u>What is not evidence:</u>

During the trial, you'll hear certain things that are not evidence, and you must not consider them.

First, the lawyers' statements and arguments aren't evidence. In their opening statements and closing arguments, the lawyers will discuss the case. Their remarks may help you follow each side's arguments and presentation of evidence. But the remarks themselves aren't evidence and shouldn't play a role in your deliberations.

Second, the lawyers' questions and objections aren't evidence. Only the witnesses' answers are evidence. Don't decide that something is true just because a lawyer's question suggests that it is. For example, a lawyer may ask a witness, "You saw Mr. Smith hit his sister, didn't you?" That question is not evidence of what the witness saw or what Mr. Smith did – unless the witness agrees with it.

There are rules of evidence that control what the court can receive into evidence. When a lawyer asks a witness a question or presents an exhibit, the opposing lawyer may object if [he/she] thinks the rules of evidence don't permit it. If I overrule the objection, then the witness may answer the question or the court may receive the exhibit. If I sustain the objection, then the witness cannot answer the question, and the court cannot receive the exhibit. When I sustain an objection to a question, you must ignore the question and not guess what the answer might have been.

Sometimes I may disallow evidence – this is also called "striking" evidence – and order you to disregard or ignore it. That means that you must not consider that evidence when you are deciding the case.

I may allow some evidence for only a limited purpose. When I instruct you that I have admitted an item of evidence for a limited purpose, you must consider it for only that purpose and no other.

Credibility of witnesses:

To reach a verdict, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. When considering a witness's testimony, you may take into account:

· the witness's opportunity and ability to see, hear, or know the things the witness is testifying about;

· the witness's memory;

· the witness's manner while testifying;

· any interest the witness has in the outcome of the case;

· any bias or prejudice the witness may have;

· any other evidence that contradicts the witness's testimony;

· the reasonableness of the witness's testimony in light of all the evidence; and

· any other factors affecting believability.

At the end of the trial, I'll give you additional guidelines for determining a witness's credibility.

Description of the case:

This is a civil case. To help you follow the evidence, I'll summarize the Parties' positions:

In this case, Mr. Jones makes a claim under the federal law that prohibits employers from discriminating against an employee in the terms and conditions of employment because of

the employee's age. The federal law applies to employees who are at least 40 years old.

Specifically, Mr. Jones claims that Cutlass terminated him because of his age. Cutlass denies Mr. Jones's claim and asserts that Mr. Jones's position was eliminated as the Company transitioned from development to operations and as part of a company-wide reduction in force necessitated for financial reasons, and maintains that his age had nothing to do with the decision. Mr. Jones asserts that Cutlass' suggested reasons are pretext or cover-ups for age discrimination.

Burden of proof:

Mr. Jones has the burden of proving his case by what the law calls a "preponderance of the evidence." That means Mr. Jones must prove that, in light of all the evidence, what he claims is more likely true than not. So, if you could put the evidence favoring Mr. Jones and the evidence favoring Cutlass on opposite sides of balancing scales, Mr. Jones needs to make the scales tip to his side. If Mr. Jones fails to meet this burden, you must find in favor of Cutlass.

To decide whether any fact has been proved by a preponderance of the evidence, you may – unless I instruct you otherwise – consider the testimony of all witnesses, regardless of who called them, and all exhibits that the court allowed, regardless of who produced them. After considering all the evidence, if you decide a claim or fact is more likely true than not, then the claim or fact has been proved by a preponderance of the evidence.

On certain issues, called "affirmative defenses," Cutlass has the burden of proving the elements of a defense by a preponderance of the evidence. I'll instruct you on the facts Cutlass must prove for any affirmative defense. After considering all the evidence, if you decide that

Cutlass has successfully proven that the required facts are more likely true than not, the affirmative defense is proved.

Conduct of the jury:

While serving on the jury, you may not talk with anyone about anything related to the case. You may tell people that you're a juror and give them information about when you must be in court. But you must not discuss anything about the case itself with anyone.

You shouldn't even talk about the case with each other until you begin your deliberations. You want to make sure you've heard everything – all the evidence, the lawyers' closing arguments, and my instructions on the law – before you begin deliberating. You should keep an open mind until the end of the trial. Premature discussions may lead to a premature decision.

In this age of technology, I want to emphasize that in addition to not talking face-to-face with anyone about the case, you must not communicate with anyone about the case by any other means. This includes e-mails, text messages, phone calls, and the Internet, including social-networking websites and apps such as Facebook, Instagram, Snapchat, TikTok, YouTube, and Twitter. You may not use any similar technology of social media, even if I have not specifically mentioned it here.

You must not provide any information about the case to anyone by any means whatsoever, and that includes posting information about the case, or what you are doing in the case, on any device or Internet site, including blogs, chat rooms, social websites, or any other means.

You also shouldn't Google or search online or offline for any information about the case, the parties, or the law. Don't read or listen to the news about this case, visit any places

7

related to this case, or research any fact, issue, or law related to this case. The law forbids the jurors to talk with anyone else about the case and forbids anyone else to talk to the jurors about it. It's very important that you understand why these rules exist and why they're so important. You must base your decision only on the testimony and other evidence presented in the courtroom. It is not fair to the parties if you base your decision in any way on information you acquire outside the courtroom. For example, the law often uses words and phrases in special ways, so it's important that any definitions you hear come only from me and not from any other source. Only you jurors can decide a verdict in this case. The law sees only you as fair, and only you have promised to be fair – no one else is so qualified.

Taking notes:

If you wish, you may take notes to help you remember what the witnesses said. If you do take notes, please don't share them with anyone until you go to the jury room to decide the case. Don't let note-taking distract you from carefully listening to and observing the witnesses. When you leave the courtroom, you should leave your notes hidden from view in the jury room.

Whether or not you take notes, you should rely on your own memory of the testimony. Your notes are there only to help your memory. They're not entitled to greater weight than your memory or impression about the testimony.

Course of the trial:

Let's walk through the trial. First, each side may make an opening statement, but they don't have to. Remember, an opening statement isn't evidence, and it's not supposed to be argumentative; it's just an outline of what that party intends to prove.

Next, Mr. Jones will present his witnesses and ask them questions. After Mr. Jones questions the witness, Cutlass may ask the witness questions – this is called "cross-examining"

the witness. Then Cutlass will present its witnesses, and Mr. Jones may cross-examine them. You should base your decision on all the evidence, regardless of which party presented it.

After all the evidence is in, the parties' lawyers will present their closing arguments to summarize and interpret the evidence for you, and then I'll give you instructions on the law.

You'll then go to the jury room to deliberate.

AUTHORITY:          PATTERN JURY INSTRUCTIONS, CIVIL CASES INSTRUCTION 1.1

## 1.4 - Jury Questions

During this trial, you may submit questions to a witness after the lawyers have finished their own questioning. Here is how the procedure works: After each witness has testified, and the lawyers have asked all of their questions, I'll ask if any of you have questions. If you have a question, write it down and give it to the court staff.

You may submit a question for a witness only to clarify an answer or to help you understand the evidence. Our experience with juror questions indicates that jurors rarely have more than a few questions for any one witness, and there may be no questions at all for some witnesses.

If you submit a question, the court staff will give it to me and I'll share your questions with the lawyers in the case. If the rules of evidence allow your question, one of the lawyers or I will read your question to the witness. I may modify the form or phrasing of a question so that it's allowed under the evidence rules. Sometimes, I may not allow the questions to be read to the witness, either because the law does not allow it or because another witness is in a better position to answer the question. If I can't allow the witness to answer a question, you must not draw any conclusions from that fact or speculate on what the answer might have been.

Here are several important things to keep in mind about your questions for the witnesses:

· First, you must submit all questions in writing. Please don't ask any questions aloud.

· Second, the court can't re-call witnesses to the stand for additional juror questions. If you have a question for a particular witness, you must submit it when I ask.

· Finally, because you should remain neutral and open-minded throughout the trial, you should phrase your questions in a way that doesn't express an opinion about the case or a witness. You must keep an open mind until you've heard all the evidence, the closing arguments, and my final instructions on the law.

AUTHORITY:     PATTERN JURY INSTRUCTIONS, CIVIL CASES INSTRUCTION 1.4

## 2.1 - Stipulations

Sometimes the parties have agreed that certain facts are true. This agreement is called a stipulation. You must treat these facts as proved for this case.


AUTHORITY:      PATTERN JURY INSTRUCTIONS, CIVIL CASES INSTRUCTION
                        2.1

## 2.2 – Use of Depositions

A deposition is a witness's sworn testimony that is taken before the trial. During a deposition, the witness is under oath and swears to tell the truth, and the lawyers for each party may ask questions. A court reporter is present and records the questions and answers.

The deposition of [name of witness], taken on [date], [is about to be] presented to you [by a video/by reading the transcript]. Deposition testimony is entitled to the same consideration as live testimony, and you must judge it in the same was as if the witness was testifying in court.

[Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.]

AUTHORITY:      PATTERN JURY INSTRUCTIONS, CIVIL CASES INSTRUCTION 2.2

**2.5 – Judicial Notice**

The rules of evidence allow me to accept facts that no one can reasonably dispute. The law calls this "judicial notice."  I've accepted [state the fact that the court has judicially noticed] as proved even though no one introduced evidence to prove it.  You must accept it as true for this case.


AUTHORITY:          PATTERN JURY INSTRUCTIONS, CIVIL CASES INSTRUCTION 2.5

## 2.6 – Use of Interrogatories

[You'll now hear/You've heard] answers that [name of party] gave in response to written questions the other side submitted.  The questions are called "interrogatories."  Before the trial, [name of party] gave the answers in writing while under oath.

You must consider [name of party]'s answers to as though [name of party] gave the answers on the witness stand.

AUTHORITY:      PATTERN JURY INSTRUCTIONS, CIVIL CASES INSTRUCTION 2.6

## 2.8 – Civil *Allen* Charge

Members of the jury:

I'm going to ask you to continue your deliberations to reach a verdict. Please consider the following comments.

This is an important case. The trial has been expensive in terms of time, effort, money, and emotional strain to both Plaintiff and Defendant. If you fail to agree on a verdict, the case remains open and may have to be tried again. A second trial would be costly to both sides, and there's no reason to believe either side can try it again better or more exhaustively than they have tried it before you.

Any future jury would be selected in the same manner and from the same source as you. There's no reason to believe that the case could ever be submitted to a jury of people more conscientious, more impartial, or more competent to decide it—or that either side could produce more or clearer evidence.

It's your duty to consult with one another and to deliberate with a view to reaching an agreement—if you can do it without violating your individual judgment. You must not give up your honest beliefs about the evidence's weight or effect solely because of other jurors' opinions or just to return a verdict. You must each decide the case for yourself—but only after you consider the evidence with your fellow jurors.

You shouldn't hesitate to reexamine your own views and change your opinion if you become convinced it's wrong. To bring your minds to a unanimous result, you must openly and frankly examine the questions submitted to you with proper regard for the opinions of others and with a willingness to reexamine your own views.

If a substantial majority of you is for a verdict for one party, each of you who holds a different position ought to consider whether your position is reasonable. It may not be reasonable since it makes so little impression on the minds of your fellow jurors—who bear the same responsibility, serve under the same oath, and have heard the same evidence.

You may conduct your deliberations as you choose, but I suggest that you now carefully reexamine and reconsider all the evidence in light of the court's instructions on the law. You may take all the time that you need.

I remind you that in your deliberations, you are to consider the court's instructions as a whole. You shouldn't single out any part of any instructions, including this one, and ignore others.

You may now return to the jury room and continue your deliberations.

AUTHORITY:      PATTERN JURY INSTRUCTIONS, CIVIL CASES INSTRUCTION 2.8

**3.1 – Introduction/Final Charge to Jury**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 9:20-cv-80001-Rosenberg/Reinhart

GARRETT MYRON JONES,

     Claimant,

vs.

CUTLASS COLLIERIES, LLC, n/k/a
VSTA ENERGY RESOURCES, LLC,

     Employer.

_____/

<u>COURT'S INSTRUCTIONS TO THE JURY</u>

Members of the jury:

It's my duty to instruct you on the rules of law that you must use in deciding this case.

When I have finished you will go to the jury room and begin your discussions, sometimes called deliberations.


AUTHORITY:     PATTERN JURY INSTRUCTIONS, CIVIL CASES INSTRUCTION 3.1

**3.2.2 – Duty to Follow Instructions – Corporate Party Involved (Limited Liability Company)**

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

The fact that a limited liability company is involved as a party must not affect your decision in any  way. A limited liability company and all other persons stand equal before the law and must be dealt with as  equals in a court of justice. When a limited liability company is involved, of course, it may act only through  people as its employees; and, in general, a limited liability company is responsible under the law for the acts  and statements of its employees that are made within the scope of their duties as employees of  the company.

AUTHORITY:      PATTERN JURY INSTRUCTIONS, CIVIL CASES INSTRUCTION 3.2.2

Limited Liability Company – Acts Only Through its Agents

A limited liability company cannot act other than through its agents. In this case, when one of Cutlass' officers, such as Michael Snelling or Michael Beyer acted, by words or deeds, while performing their Cutlass duties, Cutlass itself performed such acts

### 3.3 – Consideration of Direct and Circumstantial Evidence; Argument of Counsel; Comments by the Court

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But anything the lawyers say is not evidence and isn't binding on you.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There's no legal difference in the weight you may give to either direct or circumstantial evidence.

AUTHORITY:     PATTERN JURY INSTRUCTIONS, CIVIL CASES INSTRUCTION 3.3

### 3.4 – Credibility of Witnesses

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate.  You should decide whether you believe what each witness had to say, and how important that testimony was.  In making that decision you may believe or disbelieve any witness, in whole or in part.  The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

1.  Did the witness impress you as one who was telling the truth?

2.  Did the witness have any particular reason not to tell the truth?

3.  Did the witness have a personal interest in the outcome of the case?

4.  Did the witness seem to have a good memory?

5.  Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

6.  Did the witness appear to understand the questions clearly and answer them directly?

7.  Did the witness's testimony differ from other testimony or other evidence?

AUTHORITY:      PATTERN JURY INSTRUCTIONS, CIVIL CASES INSTRUCTION 3.4

### 3.5.1 – Impeachment of Witnesses because of Inconsistent Statements

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact.  And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it.  People naturally tend to forget some things or remember them inaccurately.  So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception.  The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

AUTHORITY:    PATTERN JURY INSTRUCTIONS, CIVIL CASES INSTRUCTION
              3.5.1

### 3.7.1 – Responsibility for Proof – Preponderance of the Evidence

In this case, it is the responsibility of Mr. Jones to prove every essential part of his claims by a "preponderance of the evidence." Also, it is the responsibility of Cutlass to prove every essential part of its affirmative defense by a "preponderance of the evidence. This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that Mr. Jones's claim is more likely true than not true.

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against Mr. Jones.

In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of Mr. Jones's claim by a preponderance of the evidence, you should find for Cutlass as to that claim.

AUTHORITY:      PATTERN JURY INSTRUCTIONS, CIVIL CASES INSTRUCTION 3.7.1

## 4.10 - Age Discrimination in Employment Act - 29 U.S.C. §§ 621-634

In this case, Mr. Jones makes a claim under the federal law that prohibits employers from discriminating against an employee in the terms and conditions of employment because of the employee's age. The federal law applies to employees who are at least 40 years old.

Specifically, Mr. Jones claims that Cutlass [*eliminated his position and terminated his employment because of his age*] **[terminated him because of his age].**Cutlass denies Mr. Jones's claim and asserts that Mr. Jones's position was eliminated as the Company transitioned from development to operations and as part of a company-wide reduction in force necessitated for financial reasons, and maintains that his age had nothing to do with the decision**.** Mr. Jones asserts that Cutlass' suggested reasons are pretext or cover-ups for age discrimination.

To succeed on his claim against Cutlass, Mr. Jones must prove each of the following facts by a preponderance of the evidence:

First:  Mr. Jones was Cutlass's employee; in this case, the parties have stipulated that Mr. Jones was Cutlass' employee;

Second:  Mr. Jones was at least 40 years old at the time *that his position was eliminated* **[of his termination]**; the parties have stipulated that Mr. Jones was at least 40 years old at the time of his termination;

Third:  Cutlass *eliminated Mr. Jones's position and thereby terminated his employment*,**[terminated Mr. Jones]**; the parties have stipulated that Cutlass terminated Mr. Jones; and

Fourth:  Cutlass took that action because of Mr. Jones's age.

In the verdict form that I will explain in a moment, you will be asked to answer questions about these factual issues.

Because the Parties stipulate and agree that Mr. Jones was Cutlass's employee, was at least 40 years old, and that Cutlass terminated him, you must decide whether Cutlass took those actions because of Mr. Jones' age.

To determine that Cutlass [*eliminated Mr. Jones's position*]**[terminated Mr. Jones]** because of his age, you must decide  that Cutlass would not have  *[eliminated his position or terminated him]* **[terminated him]** if Mr. Jones had been  younger but everything else had  been the same. *[When making this determination, you should keep in mind that the law does not prohibit employers like Cutlass from making employment decisions like position eliminations or terminations on the basis of higher salaries, increased benefits, pension status, or claims for medical expenses even though these characteristics are often correlated with an employee's age.]*[2]

[3]

Cutlass denies that it made the decision to [*eliminate Mr. Jones's position*] **[terminate Mr. Jones]** because of his age, and asserts that Mr. Jones's position was eliminated as part of a company-wide reduction-in-force necessitated for financial reasons.  Specifically, Cutlass asserts that Mr. Jones's position was selected for elimination in its reduction-in-force because the Company was transitioning from development to operations, Cutlass had a financial need to cut its overhead costs for payroll, Mr. Jones was among the highest paid employees at Cutlass, and Mr. Jones was not currently providing value to Company sufficient to justify keeping him on the payroll at the time given his high salary rate.

---

[2] The bracketed language reflects binding Eleventh Circuit precedent on ADEA claims. *See Broaddus v. Fla. Power Corp.*, 145 F.3d 1283, 1287 (11th Cir. 1998) ("[t]he ADEA does not prohibit an employer from making an employment decision on the basis of higher salaries, increased benefits, pension status, or claims for medical expenses even though these characteristics are often correlated with an employee's age"); *Beaver v. Rayonier, Inc.*, 200 F.3d 723, 728 (11th Cir.1999) (an "employer is free to choose whatever means it wants, so long as it is not discriminatory, in responding to bad economic conditions").

[3] Mr. Jones responds that the explanation for what Mr. Jones must prove and how is stated numerous times already throughout these instructions, including in the agreed-upon Pattern instructions.

An employer may not discriminate against an employee because of age, but an employer may [*decide to eliminate an employee's position or otherwise terminate an employee*] **[terminate an employee]** for any other reason, good or bad, fair or unfair. If you believe Cutlass's [*reason for its decision to eliminate Mr. Jones's position*] **[reason for terminating Mr. Jones]** *[or]*[4] **[and]** you find that Cutlass's decision was not because of Mr. Jones's age, you must not second guess that decision, and you must not substitute your own judgment for Cutlass's judgment – even if you do not agree with it.

---

[4] The Eleventh Circuit Pattern jury instructions use the conjunction "and" instead of the conjunction "or" proposed within brackets within this instruction. As authority for this substitution of language, Cutlass asserts that the use of the conjunction "or" here is a more accurate reflection of the applicable burdens of proof at issue, because even if the jury were to decide that it doesn't believe Cutlass's proffered reasons for its decision to eliminate Mr. Jones's position, Mr. Jones would nonetheless fail to meet his burden to establish that such proffered reasons were pretexts for age discrimination so long as the jury finds that the true reason for Cutlass's decision to eliminate Mr. Jones's position was not because of Mr. Jones's age. As such, the use of the conjunction "and" in this instruction could result in jury confusion that would unfairly prejudice Cutlass, and the substitution of "or" is both appropriate and a correct statement of the applicable law. *See e.g., Baker v. Russell Corp.*, 372 Fed. App'x 917, 920 (11th Cir.2010) ("a reason cannot be proved to be a 'pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason").

### Requirements for Mr. Jones to Prove Case by Preponderance of the Evidence

[An employee shows a prima facie case of age discrimination by presenting evidence that he (1) is a member of the protected class of persons 40 years of age or older; (2) was the subject of adverse employment action; (3) was replaced by or otherwise lost his position to a substantially younger person; and (4) he was qualified for the position.[5] The parties have stipulated, and I instruct you as a matter of law, that Mr. Jones is a member of the protected class of persons over 40 years of age; he was the subject of adverse employment action; he was replaced by or otherwise lost his position to persons substantially younger than he was; and he was qualified for the position. As such, Mr. Jones has already satisfied the standards for proving a *prima facie* case of age discrimination.][6] [7] [*Here, the parties stipulate and agree that Mr. Jones was a Cutlass*

---

[5] *Aldabblan v. Festive Pizza, Ltd.*, 380 F.Supp.2d 1345 (S.D. Fla. 2005); *Liebman v. Metropolitan Life Insurance Company*, 808 F.3d 1294 (11th Cir. 2015); March 8, 2021, Omnibus Order, pg. 19.

[6] See March 8, 2021, Omnibus Order, pgs. 19-20. There, the Court, after reciting the elements of a *prima facie* case, stated that Mr. Jones had offered summary judgment evidence to satisfy all of the elements. The Court then shifted the burden to Cutlass to show legitimate non-discriminatory reasons. By shifting that burden, the Court has necessarily ruled that Mr. Jones has satisfied the *prima facie* case.

[7] Cutlass objects to this instruction as it does not articulate the correct legal standard for establishing a prima facie case of age discrimination under the ADEA in a case where, like here, the employee's position was eliminated. See *Adams v. Holland*, 824 F. App'x 982, 984 (11th Cir. 2020) (explaining that, to establish a *prima facie* case of age discrimination in a reduction-in-force case where, like here, a position is eliminated in its entirety, an employee must show that: "(1) he was in the protected age group and was subject to an adverse employment decision; (2) he was qualified for his current position or to assume another position at the time of discharge; and (3) evidence by which a fact finder could reasonably conclude that the employer intended to discriminate on the basis of age in reaching its decision") (*citing Jameson v. Arrow Co.*, 75 F.3d 1528, 1532 (11th Cir. 1996)). In addition, the instruction's suggestion that establishing a *prima facie* case is a method of *proving* Mr. Jones's case by a preponderance of the evidence is clearly incorrect as a matter of law. As previously discussed, the *prima facie* case and the applicable burden of proof as to but-for causation are separate issues. Merely establishing a *prima facie* case cannot satisfy Mr. Jones's

*employee, and that he was at least 40 years old at the time Cutlass [eliminated his position thereby terminating his employment. Therefore*, you must decide whether Cutlass made the decision to *[eliminate Mr. Jones's position]***[terminate Mr. Jones]** because of his age.

**[I instruct you that, because Mr. Jones has shown that *prima facie* case regarding termination, the burden has shifted as a matter of law for Cutlass to offer evidence that it terminated Mr. Jones for legitimate and non-discriminatory reasons.]**[8] [9] **[If Cutlass**

---

burden of proof as to but-for causation. Thus, this proposed instruction is an incorrect statement of the law and is also confusing and misleading.

[8] See March 8, 2021, Omnibus Order, pgs. 19-20 and footnote 18. This instructions accurately reflects Cutlass' burden to produce evidence of non-discriminatory reasons.

[9] Cutlass objects to this proposed instruction as a misstatement of the law. Jones has the sole burden of proof in this case with respect to his age discrimination claims. Mr. Jones's proposed language to the contrary is a misstatement of law and its inclusion in the jury instructions would amount to reversible error. Under the *McDonnel Douglass* burden shifting standard, Cutlass has the burden of *production* to set forth its legitimate non-discriminatory reasons for eliminating Jones's position; it does not have any affirmative burden of *proof*. *See Sims v. MVM, Inc.*, 704 F.3d 1327, 1332–33 (11th Cir. 2013) ("The burden of persuasion always remains on the plaintiff in an ADEA case to proffer evidence sufficient to permit a reasonable fact finder to conclude that the discriminatory animus was the "but-for" cause of the adverse employment action . . . the McDonnell Douglas framework does not shift the burden of persuasion to the defendant; instead, once the employee establishes a prima facie case of discrimination, the burden of production is shifted to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action . . . Importantly, throughout this entire process, the ultimate burden of persuasion remains on the employee), *see also, St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993) ("It is important to note, however, that although the McDonnell Douglas presumption shifts the burden of production to the defendant, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against remains at all times with the plaintiff.' ") (citation omitted); *Willis v. Conopco, Inc.*, 108 F.3d 282, 286 (11th Cir.1997); *Gross v. FBL Fin. Servs., Inc.*, 588 F.3d 614, 617 (8th Cir. 2009) (finding, on remand from the SCOTUS, that the defendant employer was entitled to a new trial on plaintiff's ADEA claim and error was not harmless where erroneous jury instruction by trial court improperly shifted the burden of proof to defendant employer on central issue). The inclusion of this language would result in confusion to the jury and unfairly prejudice Cutlass—particularly when coupled with earlier objected-to proposed instructions that instruct the jury that Mr. Jones has established his prima facie case without a similar instruction that Cutlass has met its burden of production regarding evidence of non-discriminatory reasons for the termination.

**produces such evidence, Mr. Jones then has the burden of proving by a preponderance of the evidence that Cutlass' offered reasons are pretextual or cover-ups for discriminating against Mr. Jones because of his age. If Mr. Jones proves by a preponderance of the evidence that Cutlass' offered explanations are pretext or cover-ups, you have found Cutlass liable for taking adverse employment action against Mr. Jones because of his age, and you will then determine damages.] [10] [11]**

---

[10] *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148-149 (2000). In *Reeves*, the United States Supreme Court states that "(i)t suffices to say that, because a prima facie case and sufficient evidence to reject the employer's explanation may permit a finding of liability, the Court of Appeals erred in proceeding from the premise that a plaintiff must always introduce additional, independent evidence of discrimination." Because a prima facie case and proving by a preponderance of evidence that the employer's reason for the adverse employment action "may permit a finding of liability," since this Court has conclusively ruled that Mr. Jones has shown a *prima facie* case, he now only must prove that Cutlass' termination reasons are pretext.

[11] Cutlass objects to this proposed language as an improper misstatement of the applicable law that would result in confusion of the jury and unfairly prejudice Cutlass. Notably, since the United States Supreme Court's decision in *Gross v. FBL Financial Services, Inc.,* 557 U.S. 167, 176 (2009), the law has been clear that the applicable causation standard for disparate treatment claims under the ADEA is a "but for" standard. *See id.* (holding that the language "because of" in the ADEA statute means that a plaintiff must prove that discrimination was the "but-for" cause of the adverse employment action); *see also id.* ("To establish a disparate-treatment claim under the plain language of the ADEA, therefore, a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision."); *id.* (explaining that the claim "cannot succeed unless the employee's protected trait actually played a role in [the employer's decision-making] process and had a determinative influence on the outcome"). The authority relied upon by Mr. Jones to support this language pre-dates *Gross* and articulates the incorrect standard. This language should be stricken. Indeed, Mr. Jones appears to concede that he bears the burden of proving that the proffered reasons are pretextual (in footnote 34). But there is no way for Mr. Jones to do so *except* by establishing that age was the but-for cause of his termination. In this respect, Cutlass incorporates the objections articulated in footnote 26.

<u>**Cutlass' Offered Reasons for Termination**</u>

**[Cutlass has offered various reasons, which it asserts are non-discriminatory legitimate reasons, for Mr. Jones' termination. They are: (1) Cutlass questioned Mr. Jones' judgment; (2) Mr. Jones was "disruptive" and "not a team player"; (3) Mr. Jones failed to execute a directive in connection with a specific transaction; (4) Cutlass was eliminating Mr. Jones' position; and (5) Cutlass was experiencing financial difficulties.[12] I instruct that Cutlass has now stipulated and agreed that reasons 1 through 3 were not reasons for re-assigning Mr. Jones' job duties or terminating him. As explained, Cutlass must offer evidence of numbers 4 and 5 for the burden to shift to Mr. Jones to show that such reasons are pretext or cover-ups for age discrimination.][13]**

---

[12] Mr. Jones cites pg. 20 of the Omnibus Order, Cutlass' August 26, 2020, Motion for Summary Judgment, Cutlass' statement of the case in the Joint Pretrial Statement, and the parties' February 16, 2022, Joint Supplement to Joint Pretrial Stipulation (ECF No. 197).

[13] Cutlass objects to this proposed language on the grounds that it would confuse the jury and result in unfair prejudice to Cutlass. Notably, this Court has already rejected Mr. Jones's argument that Cutlass's asserted reasons for its decision to eliminate Mr. Jones's position have "shifted" throughout this case. *See* ECF 198 at 12 ("the Defendant relies upon the premise that the Plaintiff's proffered non-discriminatory basis for the Defendant's termination is 'new,' and 'shifting' . . . The Defendant is incorrect"). This proposed language suggesting otherwise is thus improper and should be stricken. It also relies on arguments presented in a motion for summary judgment (where the standard was different) and not on any evidence that will be presented at trial. Indeed, Cutlass stipulated that performance was not the reason for the termination in an effort to narrow issues for the trial. There is no reason to introduce performance issues into the case. Doing so will necessarily confuse the jury, unfairly prejudice Cutlass, and undermine the entire purpose of entering into pre-trial stipulations.

**Pretext**

As I have explained, Mr. Jones has the burden to prove that Cutlass' decision *[to eliminate his position* ]**[to terminate him]** was because of his age. I have explained to you that evidence can be direct or circumstantial. To decide whether Cutlass' decision [*to eliminate Mr. Jones's position was]* **[terminate Mr. Jones was]** because of Mr. Jones' age, you may consider the circumstances of Cutlass' decision. For example, you may consider whether you believe the reasons Cutlass gave for the decision**.** If you do not believe the reasons it gave for the decision, you may consider whether the reasons were so unbelievable that they were a cover-up to hide the true discriminatory reasons for the decision.**[14]**

---

[14] As authority for the bracketed text, the Parties cite to the optional portion of the Eleventh Circuit Pattern Jury Instructions section 4.10 for ADEA claims regarding pretext.

**Pretext- Pattern of Terminating Others in Protected Class**

[I hereby instruct you that a pattern of firing older workers and replacing them with younger workers, by the relevant decision-maker during the same time period, constituted probative circumstantial evidence of age discrimination. In this case, if you find that Cutlass created a list of persons within the federally protected age group, including Mr. Jones, and terminated them during the same time-period that Cutlass terminated Mr. Jones, you may consider that as probative evidence as to whether Cutlass terminated Mr. Jones because of his age.][15][16]

---

[15] As authority for this contested language, Mr. Jones cites to *Damon v. Fleming Supermarkets Of Florida, Inc.*, 196 F.3d 1354 (11th Cir. 1999); *Ostrow v. GlobeCast Am. Inc.*, 489 Fed. Appx. 433, 438 (11th Cir. 2012).

[16] Cutlass objects to this language on the grounds that it presumes the admission of facts in evidence that Cutlass denies exist. Notably, Mr. Jones did not request any discovery as to the relative ages of the individuals who were laid off in the reduction-in-force that resulted in the elimination of Mr. Jones's position. What's more, Cutlass objects to this proposed language as unfairly prejudicial, lacking in probative value, and lacking in proper analytical foundation. *See Mitchell v. City of LaFayette*, 504 Fed. App'x 867, 871 (11th Cir. 2013) (holding that "the fact that younger employees were retained" in a RIF "does not support an inference of discriminatory intent in light of the fact that the [employer] also retained other employees who were well over 40" and that "statistical calculations" proffered by attorneys "lack probative value" as "they have not named an expert to establish a proper analytical foundation").

Cutlass further objects to this language on the grounds that Mr. Jones has brought only a one count claim for age discrimination under the ADEA based upon a disparate treatment theory; he has not alleged a disparate impact claim. Additionally, Cutlass objects to the language suggesting the jury "should" consider something probative evidence, rather than "may" consider it.

**Pretext – Shifting Explanations**

[In evaluating the legitimacy of reasons for termination, you shall consider whether Cutlass has offered shifting explanations regarding the reasons for terminating Mr. Jones.  I instruct you that shifting explanations are probative evidence of a cover-up to hide the true discriminatory reason for the decision.  For example, Cutlass alleged earlier in this lawsuit that Mr. Jones was terminated because Mr. Beyer, the CEO of Cutlass, questioned Mr. Jones' judgment; that Mr. Jones was disruptive and not a team player; and that Mr. Jones failed to implement Mr. Beyer's instructions regarding drafting a contract with one of Cutlass' vendors.  Cutlass has now stipulated that Mr. Jones was not terminated because of those reasons.  I instruct you that you may consider that change in position on those incorrect

termination bases as evidence of shifting positions and a cover-up for age discrimination by Cutlass.][17] [18]

### Pretext – Cutlass' Reasons Told to Mr. Jones During Termination Different than Those Offered at Trial

[I hereby instruct you that if you determine that the reason(s) that Cutlass told Mr. Jones for why he was terminated differ from the reasons that they have offered during this case or during trial, you should consider that as probative evidence of shifting explanations and pretext for age discrimination. I further instruct you that this Court has already determined that, while terminating Mr. Jones, Cutlass did not tell him that his job performance, his behavior, or his ability to follow directives was a reason for termination,

---

[17] As authority for this contested language, Mr. Jones cites to Cutlass' August 26, 2020, Motion for Summary Judgment (ECF no. 65), pg. 19; February 16, 2022, Stipulation between Cutlass and Mr. Jones (ECF No. 197); *United States v. One Heckler-Koch Rifle*, 629 F.2d 12, 50 (7th Cir. 1980). In Cutlass' Motion for Summary Judgment, it stated that "…Cutlass has offered several non-discriminatory reasons for his termination. In particular, Mr. Beyer testified that he terminated Defendant because (1) development was over and his position was no longer needed, *see id.*; (2) Mr. Beyer questioned Defendant's judgment, *see id.* at ¶ 54; (3) Defendant was "disruptive" and "not a team player," *see id.* at ¶55; and Defendant failed to implement Mr. Beyer's instructions regarding termination and performance parameters in a contract with Stillwater, *see id.* at ¶56." Also, on page 23 of the Omnibus Order, the Court stated that "(a)lthough the parties dispute the specifics of what was said, the Court does not glean a summary judgment dispute on this particular issue: the Defendant was not told that his job performance, his behavior, or his ability to follow directives was a basis for his termination."

[18] Cutlass objects to this instruction as both factually inaccurate and improper. This Court has already rejected Mr. Jones's argument that Cutlass's asserted reasons for its decision to eliminate Mr. Jones's position have "shifted" throughout this case. *See* ECF 198 at 12 ("the Defendant relies upon the premise that the Plaintiff's proffered non-discriminatory basis for the Defendant's termination is 'new,' and 'shifting' . . . The Defendant is incorrect"). Thus, this proposed language suggesting otherwise should be stricken. Cutlass also incorporates the objections articulated in footnote 33.

although Cutlass earlier in this case asserted those same reasons, only to later stipulate that they were not reasons for terminating Mr. Jones. ][19] [20]

**Intent to Discriminate**

[You may find Cutlass' intent to discriminate if Cutlass consciously refused to consider retaining Mr. Jones because of his age or if Cutlass regarded age as a negative factor in such consideration. For purposes of this instruction, you shall consider that Cutlass

---

[19] As authority for the bracketed text, Mr. Jones cites to the following *Saridakis v. South Broward Hospital District,* 681 F.Supp.2d 1338, 1351 (S.D. Fla. 2009); March 8, 2021, and Omnibus Order on All Pending Motions (ECF No. 102); Cutlass' August 26, 2020, Motion for Summary Judgment; and the February 16, 2022, Joint Supplement to Pretrial Stipulation between the parties that was presented to this Court.

[20] Cutlass likewise objects to this instruction as both factually inaccurate and improper. This Court has already rejected Mr. Jones's argument that Cutlass's asserted reasons for its decision to eliminate Mr. Jones's position have "shifted" throughout this case. *See* ECF 198 at 12 ("the Defendant relies upon the premise that the Plaintiff's proffered non-discriminatory basis for the Defendant's termination is 'new,' and 'shifting' . . . The Defendant is incorrect"). Thus, this proposed language suggesting otherwise should also be stricken.

admits that its CEO, Michael Beyer, did not consider Mr. Jones' age in terminating him and never considers someone's age for employment decisions, whether hiring or firing.][21] [22]

### Admission of Case Weakness – Offering Job to Material Witness

---

[21] As authority for this contested language, Mr. Jones cites to *Allison v. Western Union. Tel. Co.*, 680 F.2d 1318 (11th Cir. 1982). Mr. Jones also cites to Mr. Beyer's deposition.

[22] Cutlass objects to this instruction as an improper misstatement of the law and as illogical, confusing, and likely to result in unfair prejudice. *See Gross v. FBL Financial Services, Inc.* 557 U.S. 167, 176 (2009) (holding that the language "because of" in the ADEA statute means that a plaintiff must prove that discrimination was the "but-for" cause of the adverse employment action); *see also id.* ("To establish a disparate-treatment claim under the plain language of the ADEA, therefore, a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision."); *id.* (explaining that the claim "cannot succeed unless the employee's protected trait actually played a role in [the employer's decision-making] process and had a determinative influence on the outcome"). This language should be stricken.

     Moreover, there is no logic to this proposed instruction. Beyer's testimony that he does *not* consider age in making employment decisions does not somehow give rise to an inference that Cutlass intended to discriminate based on age or considered age as a negative factor when making decisions. If anything, the testimony supports the *exact opposite* conclusion.

**[You are instructed that Cutlass offered a job to Michael Snelling, a material witness, in the week before Mr. Snelling's sworn deposition in this case. I hereby instruct you may consider that job offer as an admission by Cutlass as to the weakness of its case.][23] [24]**

## CONTINUED MODIFIED ADEA PATTERN INSTRUCTION 4.10

If you find in Mr. Jones's favor for each fact he must prove, you must consider Mr.

---

[23] As authority for this contested language, Mr. Jones cites to M. Beyer Depo., 76:14-16; Erickson v. Newmar Corporation, 87 F.3d 298, 303 (9th Cir.1996) (a job offer to a witness could be construed as an "improper attempt to influence a witness who is about to testify"); *United States v. Tocco*, 135 F.3d 116, 126-27 (2d Cir.1998) (employment of witness by defendant demonstrated his "substantial influence over witness"); 2 McCormick on Evidence, Section 265 (8th ed.). Mr. Beyer and Tanner Cline, the son of Cline Group founder, Chris Cline, fully knew that Mr. Snelling was scheduled to testify on July 17, 2020. As such, early in the week before Mr. Snelling's deposition, Mr. Beyer and Tanner Cline consulted about the matter, Mr. Beyer called Mr. Snelling and spoke for two hours to offer him a job and persuade him to take it. At the time of doing so, Mr. Snelling had long-since left his Cutlass employment and the consulting agreement under which he had operated after his employment had expired. In other words, all he was at that time was a material witness in this case. Cutlass' claim that it never discussed a specific dollar amount for the job is false. Mr. Beyer specifically raised with Mr. Beyer renewing the expired consulting agreement, which has express compensation. In any event, discussing a precise dollar amount is not necessary in showing the wholly improper (and illegal under Florida law) offering of a job or work to a material witness in a case prior to his testifying.

[24] Cutlass objects to this instruction as it has no basis in fact or law. As an initial matter, Snelling was not even employed by Cutlass at the time that the decision to terminate Mr. Jones was made, and it is not disputed that he had nothing to do with Cutlass's decision to terminate Mr. Jones. There was no reason to suspect that Snelling was a relevant witness as to a termination decision that post-dated his time at Cutlass by several months, and in which he had no involvement whatsoever. Moreover, Snelling was Cutlass's former CEO, was deeply experienced in the mining industry, and had personally invited Chris Cline's son, Tanner Cline, to reach out to him any time and suggested that he would be happy to help. In addition, there was no "offer" of employment. No one ever discussed compensation or any terms. Instead, Tanner and Beyer simply reached out to Snelling to gauge his interest in consulting for Cutlass regarding several operational issues, as he had previously offered to do. As such, inclusion of this instruction would do nothing to assist the jury in completing their task to determine whether Cutlass terminated Mr. Jones because of his age, and would result in undue prejudice to Cutlass. Its inclusion also creates the improper suggestion of bias, particularly when the proposed instruction does not inform the jury that Snelling is Mr. Jones's best friend—as both men testified—and that the two communicated without interruption during this case, including about whether and how various events impacted Mr. Jones's lawsuit.

Jones's compensatory damages.

[*When considering the issue of Mr. Jones's compensatory damages, you must decide whether Cutlass's decision to eliminate Mr. Jones's position was the proximate cause of damages he sustained. Put another way, you must decide, if Cutlass had not selected Mr. Jones's position for elimination and thereby terminated his employment, would these damages have occurred?*][25]

When considering the issue of Mr. Jones's compensatory damages, you should determine what amount, if any, has been proven by Mr. Jones by a preponderance of the evidence as full, just and reasonable compensation for all of Mr. Jones's damages as a result of [ *his position with Cutlass being eliminated,* ] **[Mr. Jones' termination]** no more and no less. Compensatory damages are not allowed as a punishment and must not be imposed or increased to penalize Cutlass. Also, compensatory damages must not be based on speculation or guesswork.

You should consider the following elements of damage, to the extent you find that Mr. Jones has proved it by a preponderance of the evidence, and no others: net lost wages and benefits from the date of Cutlass' termination of Mr. Jones to date of your verdict.

**Net Lost Wages - Salary**

---

[25] The bracketed language is from the Pattern Instruction for retaliation (4.22), which has the same burden of proof and provides additional explanation.

[If you determine that Mr. Jones has prevailed on his age discrimination claim, you must award him the net lost salary amount that he lost as a result of his Cutlass termination. To determine the amount of the net lost salary, you are instructed that Mr. Jones' Cutlass salary was $400,000. The period that you must award this, if you have determined that he prevails on his claim, is from November 11, 2019, until the date of your verdict. You must reduce this salary amount by the amount of salary that Mr. Jones has received from his present employer, Linder Industrial Machinery, from October 5, 2020, until the date of your verdict.][26] [27]

## Net Lost Wages – Retention Bonus

---

[26] As authority for this contested language, Mr. Jones cites to *Goldstein v. Manhattan Indus., Inc.,* 758 F.2d 1435, 1446 (11th Cir. 1985); April 20, 2017, Cutlass employment contract.

[27] Cutlass objects to this language. It is Mr. Jones's burden to prove the damages to which he is entitled at trial by a preponderance of the evidence, including the amount of damages that may be owed. It is wholly improper for Mr. Jones to attempt to skirt his burden by requesting the Court to make findings of fact as to the amount of damage to which Mr. Jones may be owed within the jury instructions. The uncontested pattern jury instructions dealing with the computation of damages in ADEA cases provides plenty of guidance for the jury as to how to calculate damages owed to Mr. Jones should he prevail on his claim, it is Mr. Jones's burden at trial to establish the figures from which the jury should use to calculate said damages and the amount that Mr. Jones is owed.

Cutlass further objects to the proposed instruction because it is misleading and confusing as to what it means for Mr. Jones to "prevail" on his claim. In particular, proximate causation of damages and but-for causation for the termination decision having been made based on age are two separate burdens, and Jones must prevail on *both* issues to receive any damages at all. This proposed instruction suggests—in confusing and misleading language—that the jury "must" award compensatory damages upon finding only that age was the but-for cause of his termination. This statement is incorrect as a matter of law. The instruction also ignores how mitigation evidence factors into the calculation, and is confusing and misleading for that reason as well. For example, the jury is not required to find Jones's efforts were reasonable here; it may determine that, with reasonable efforts, he could have obtained far more lucrative offers and bonuses, in which case it should deduct those amounts rather than the amounts received from Linder.

As a final point, the included date is incorrect as a matter of fact. Cutlass continued to pay Jones, even though he had been terminated, through December 1, 2019. This date is repeated—incorrectly—in several subsequent proposed instructions.

**[If you determine that Mr. Jones has prevailed on his claim, you must award Mr. Jones the $75,000 retention bonus that he did not receive because Cutlass terminated him before it came due.][28] [29]**

**Net Lost Wages – Performance Bonuses**

---

[28] As authority for this contested language Mr. Jones cites to the April 20, 2017, Cutlass employment contract.

[29] Cutlass objects to this language. It is Mr. Jones's burden to prove the damages to which he is entitled at trial by a preponderance of the evidence, including whether or not he is entitled to recover damages for any retention bonus. The uncontested pattern jury instructions dealing with the computation of damages in ADEA cases provides plenty of guidance for the jury as to how to calculate damages owed to Mr. Jones should he prevail on his claim, it is Mr. Jones's burden at trial to establish the figures from which the jury should use to calculate said damages and the amount that Mr. Jones is owed. This proposed instruction again avoids the issue of proximate causation that would remain even if the jury were to conclude that age was the but-for reason for the termination. As a result, it is confusing, misleading, and unfairly prejudicial. The same is true as to the confusing language regarding what it means for Mr. Jones to "prevail" on his claim.

[If you determine that Mr. Jones has succeeded on his claim, you must determine the amount of the performance bonus from Mr. Jones' April 20, 2017, employment contract that he would have received from Cutlass from November 11, 2019, until the date of your verdict (i.e., 2019, 2020, and 2021) if Cutlass had not terminated him. In determining the likelihood that Mr. Jones would have received the bonuses in any or all such years and in what amount, you are instructed that its maximum amount annual amount is $200,000, and you should consider all of the facts and circumstances regarding Mr. Jones' employment while at Cutlass, including Mr. Jones' history of receiving the bonus and his Cutlass job performance. You should use your good judgment based on these facts and circumstances in arriving at the amount of any such bonuses.

You should reduce the amount that you determine Mr. Jones would have received in performance bonuses from November 11, 2019, until the date of your verdict by the amount of performance bonuses that Mr. Jones has received from his present employer, Linder Industrial Equipment, during that same period.][30] [31]

---

[30] As authority for this contested language, Mr. Jones cites to *In re Herman*, 495 B.R. 555, 589-90 (Bank. S.D. Fla. 2013); *LaCoursiere v. Camwest Development, Inc.,* 289 P.3d 683 (Ct. App. Wash. 2012); *Hardenbrook v. United Parcel Service, Inc.*, 490 Fed.Appx. 45 (9th Cir. 2012); *McCleary v. Wells Fargo Securities*, LLC, 29 N.E.3d 1087, 1093 (Ct. App. Ill. 2015).

[31] Cutlass objects to this language. It is Mr. Jones's burden to prove the damages to which he is entitled at trial by a preponderance of the evidence, including whether or not he is entitled to recover damages for any performance bonus. The uncontested pattern jury instructions dealing with the computation of damages in ADEA cases provides plenty of guidance for the jury as to how to calculate damages owed to Mr. Jones should he prevail on his claim, it is Mr. Jones's burden at trial to establish the figures from which the jury should use to calculate said damages and the amount that Mr. Jones is owed. Once again, the proposed instruction sidesteps the issue of proximate causation entirely and is confusing, misleading, and unfairly prejudicial as a result. In addition, it misstates the impact of mitigation evidence on the calculations. The jury is not required to find Jones's efforts were reasonable here; it may determine that, with reasonable efforts, he could have obtained far more lucrative offers and bonuses, in which case it should deduct those

## Net Lost Benefits

[If you determine that Mr. Jones has prevailed on his claim, you must award him his net lost benefits from November 11, 2019, until the date of your verdict. You must determine this amount by considering the amounts during that period that represent the value of Mr. Jones' right to be covered by Cutlass' medical, dental, vision, and prescription insurance plans. You must also award the value of Mr. Jones' participation during that time period in Cutlass' 401(k) savings plan, vacation time, and life insurance program.

You must reduce the foregoing amounts by the amounts that Mr. Jones has received from his present employer, Linder Industrial Machinery, benefit programs during this period.][32] [33]

## Mitigation of Damages

---

amounts rather than the amounts received from Linder. The proposed instruction is confusing, misleading, and unfairly prejudicial for this reason as well.

[32] As authority for this contested language, Mr. Jones cites to *April 20, 2017, Cutlass employment contract; 7 Emp. Coord. Employment Practices 72:31-36.*

[33] Cutlass objects to this language. It is Mr. Jones's burden to prove the damages to which he is entitled at trial by a preponderance of the evidence, including whether or not he is entitled to recover damages for lost benefits. The uncontested pattern jury instructions dealing with the computation of damages in ADEA cases provides plenty of guidance for the jury as to how to calculate damages owed to Mr. Jones should he prevail on his claim, it is Mr. Jones's burden at trial to establish the figures from which the jury should use to calculate said damages and the amount that Mr. Jones is owed. Cutlass further incorporates its objections as expressed in footnotes 37, 39, and 41.

You are instructed that any person who claims damages as a result of an alleged wrongful act on the part of another has a duty under the law to "mitigate" those damages. For purposes of this case, the duty to mitigate damages requires Mr. Jones to be reasonably diligent in seeking substantially equivalent employment to the position he held with Cutlass. To prove that Mr. Jones failed to mitigate damages, Cutlass must prove by a preponderance of the evidence that: (1) work comparable to the position Mr. Jones held with Cutlass was available, and (2) Mr. Jones did not make reasonably diligent efforts to obtain it. If, however, Cutlass shows that Mr. Jones did not make reasonable efforts to obtain any work, then Cutlass does not have to prove that comparable work was available.

If you find that Cutlass proved by a preponderance of the evidence that Mr. Jones failed to mitigate damages, then you should reduce the amount of Mr. Jones's damages by the amount that could have been reasonably realized if Mr. Jones had taken advantage of an opportunity for substantially equivalent employment.

**<u>Required Efforts to Find Substantially Equivalent Employment</u>**

[The standard of using reasonably diligent efforts in finding substantially equivalent employment requires only that Mr. Jones have made an honest, good faith effort to find such employment.][34][35]  [If you find that, after his Cutlass termination, Mr. Jones made an honest and good faith effort to find substantially equivalent employment to the Cutlass position before accepting the Linder position in September 2020, then Mr. Jones satisfied his mitigation duties upon accepting the Linder Industrial Equipment position.  That is true even if you find that the Linder position was not substantially equivalent to Mr. Jones' Cutlass position.  As such, if you find that Mr. Jones made an honest and good faith effort to find substantially equivalent employment before accepting the Linder Industrial Equipment position, his mitigation duties ended then, and he was not required to search for or accept any other substantially equivalent employment in order to further mitigate his damages.][36][37]

---

[34] As authority for this contested language Mr. Jones cites to *Smith v. Great American Restaurants*, 969 F.2d 430, 438 (7th Cir. 1992).

[35] Cutlass objects to this language. The question of whether Mr. Jones was reasonably diligent in his job search efforts is a fact issue for the jury to decide. This language is improper for a jury instruction.

[36] As authority for this contested language, Mr. Jones cites to *Sennello v. Reserve Life Insurance Company,* 667 F.Supp.1498 (S.D. Fla. 1987)*; J. H. Rutter v. N. L. R. B.,* 473 F.2d 223 (5th Cir. 1973).

[37] Cutlass objects to this language. The question of whether and when Mr. Jones has satisfied his duty to mitigate by making reasonably diligent efforts to obtain substantially equivalent employment is a fact issue for the jury to decide. *See Hurley v. Racetrac Petroleum, Inc.*, 146 Fed. App'x 365, 367 (11th Cir. 2005) (affirming jury verdict in favor of plaintiff/employee in ADEA case that awarded plaintiff no monetary damages because the jury found, based on the following instruction, that plaintiff/employee unreasonably rejected unconditional job offer from employer "The unconditional offer of employment by the employer can toll or stop the continuing accrual of back pay liability. The plaintiff's rejection of an unconditional offer of a job previously denied ends the accrual of back pay. If you find the unconditional offer of employment made by RaceTrac to the plaintiff was rejected and plaintiff failed to offer any legitimate reason for rejecting

**Substantially Equivalent Employment**

[*Cutlass maintains that Mr. Jones received offers for jobs that were substantially comparable to his former employment with Cutlass that he unreasonably rejected. If you find that Mr. Jones unreasonably rejected offers for jobs that were substantially comparable to his former position with Cutlass, I charge you as follows:*

*An employee's unreasonable rejection of an offer of substantially comparable employment may toll or stop the continuing accrual of back pay. If you find that Mr. Jones was given an offer or offers of employment that were substantially comparable to his former employment with Cutlass and that Mr. Jones unreasonably rejected such offer or offers, then Mr. Jones may not recover back wages after the date that any such offer was made.]*[38]

---

RaceTrac's unconditional offer of employment, then you must reduce the amount of plaintiff's damages by the amount that would have been reasonably realized if the plaintiff had taken advantage of such an opportunity"); *Perry v. Schumacher Grp. of Louisiana*, No. 2:13-CV-36-FTM-29DNF, 2020 WL 6938391, at *4 (M.D. Fla. Nov. 25, 2020) (finding that "whether plaintiff's rejection of [subsequent] job offers was reasonable falls within the issue of whether she reasonably tried to mitigate her damages, and that such a question should be determined by a jury"). This language is improper for a jury instruction.

[38] For authority to support the bracketed text, *see Hurley v. Racetrac Petroleum, Inc.*, 146 Fed. App'x 365, 367 (11th Cir. 2005) (affirming jury verdict in favor of plaintiff/employee in ADEA case that awarded plaintiff no monetary damages because the jury found, based on the following instruction, that plaintiff/employee unreasonably rejected unconditional job offer from employer "The unconditional offer of employment by the employer can toll or stop the continuing accrual of back pay liability. The plaintiff's rejection of an unconditional offer of a job previously denied ends the accrual of back pay. If you find the unconditional offer of employment made by RaceTrac to the plaintiff was rejected and plaintiff failed to offer any legitimate reason for rejecting RaceTrac's unconditional offer of employment, then you must reduce the amount of plaintiff's damages by the amount that would have been reasonably realized if the plaintiff had taken advantage of such an opportunity"); *Perry v. Schumacher Grp. of Louisiana*, No. 2:13-CV-36-FTM-29DNF, 2020 WL 6938391, at *4 (M.D. Fla. Nov. 25, 2020) (finding that "whether plaintiff's rejection of [subsequent] job offers was reasonable falls within the issue of whether she reasonably tried to mitigate her damages, and that such a question should be determined by a jury").

[Substantially equivalent employment is employment that affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status to those available under Mr. Jones' Cutlass position. Also, substantially equivalent employment does not include any job for which Mr. Jones' work location was different than Boone, North Carolina, where he lived for his Cutlass job and presently lives. Also, substantially equivalent employment to the Cutlass job with the mine located in Hinton, Alberta, does not include any position with a mine located outside of Hinton, Alberta.

A terminated employee does not have to move outside of the city where he lives at the time of his termination to find substantially equivalent employment. I therefore instruct you that Mr. Jones did not have to move to Alberta, Canada, or to British Columbia, Canada, in order to mitigate his damages.][39] [40]

---

[39] As authority for this contested language and in opposition to Cutlass' offered language, Mr. Jones cites to *Richardson v. Tricom Pictures & Productions, Inc.,* 334 F.Supp.2d 1303 (S.D. Fla. 2004)*; Carl v. Fulton County, Georgia,* 2013 WL 12357465, at *11 (N.D. Ga. 2013)

[40] Cutlass objects to this language. The question of whether a job offer made to Mr. Jones was "substantially equivalent" to his position with Cutlass and/or whether Mr. Jones's rejection of any such job offer was reasonable are fact questions for the jury to decide. This language is improper for a jury instruction; it essentially resolves a disputed factual issue via instruction. What's more, the cited case law does not suggest that nothing about the jobs may change at all, or that every feature must track exactly. The critical factual question for the jury is simply whether the jobs at issue are "substantially equivalent," not identical in every conceivable way. Indeed, the instruction appears to *require* that Mr. Jones become reemployed by Cutlass to meet his mitigation duties, as there is no other coal mine that satisfies the proposed condition of being in Hinton, Alberta.

### 3.8.1 – Duty to Deliberate when Only One Party Seeks Damages

Of course, the fact that I have given you instructions concerning the issue of Plaintiff's damages should not be interpreted in any way as an indication that I believe that the Plaintiff should, or should not, prevail in this case.

Your verdict must be unanimous – in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you're judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case.


AUTHORITY:         PATTERN JURY INSTRUCTIONS, CIVIL CASES INSTRUCTION
                   3.8.1

### 3.9 – Election of Foreperson Explanation of Verdict Form

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

[Explain verdict]

Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign and date it. Then you'll return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I'll respond as promptly as possible – either in writing or by talking to you in the courtroom. Please understand that I may have to talk with the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you to not tell me how many jurors have voted one way or the other at that time. That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.

AUTHORITY:      PATTERN JURY INSTRUCTIONS, CIVIL CASES INSTRUCTION 3.9

Dated: February 23, 2022

/s/ Jaclyn S. Clark
Jaclyn S. Clark (Fla. Bar No. 117652)
Nicholas S. Johnson (admitted *pro hac vice*)
Joshua I. Hammack (admitted *pro hac vice*)
BAILEY GLASSER LLP
1055 Thomas Jefferson Street, NW, Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
jclark@baileyglasser.com
njohnson@baileyglasser.com
jhammack@baileyglasser.com
*Counsel for Plaintiff*

/s/ David H. Simmons
David H. Simmons (Fla. Bar No. 240745)
Daniel J. O'Malley (Fla. Bar No. 0124450)
DE BEAUBIEN, SIMMONS, KNIGHT,
MANTZARIS & NEAL, LLP
DSK LAW
332 North Magnolia Avenue
Orlando, Florida 32801
dsimmons@dsklawgroup.com
domalley@dsklawgroup.com
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 23rd day of February 2022, that a true copy of the foregoing was served on all parties and counsel of record via CM/ECF.

/s/ Jaclyn S. Clark
Jaclyn S. Clark