UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-22500-CIV-ALTONAGA/McALILEY

JONATHAN LORD, M.D.,

     **Plaintiff,**

v.

UNIVERSITY OF MIAMI,

     **Defendant.**

_____/

**JOINT NOTICE OF FILING AMENDED PROPOSED JURY INSTRUCTIONS**

     Plaintiff, Jonathan Lord, M.D. ("Dr. Lord"), and Defendant, University of Miami (the "University"), by and through their undersigned counsel and pursuant to the Court's Orders dated September 3, 2021 (D.E. 111), June 7, 2022 (D.E. 143), and September 8, 2022 (D.E. 193), respectfully submit their Joint Amended Proposed Jury Instructions, attached hereto.

Respectfully submitted this 12th day of September, 2022,

| | |
|---|---|
| **STUMPHAUZER FOSLID SLOMAN & KOLAYA, PLLC**<br>Two South Biscayne Boulevard, Suite 1600<br>Miami, Florida 33131<br>Tel.: (305) 614-1400<br>Fax: (305) 614-1425<br><br>By: /s/ Jeffrey H. Sloman _____<br>    Jeffrey H. Sloman<br>    Florida Bar No. 378879<br>    jsloman@sfslaw.com<br>    Jorge A. Perez Santiago<br>    Florida Bar No. 91915<br>    jperezsantiago@sfslaw.com<br>    Jennifer M. Hernandez<br>    Florida Bar No. 1018836<br>    jhernandez@sfslaw.com<br><br>*Counsel for Plaintiff, Dr. Jonathan Lord* | **ISICOFF RAGATZ**<br>601 Brickell Key Drive, Suite 750<br>Miami, Florida 33131<br>Tel.: (305) 373-3232<br>Fax: (305) 373-3233<br><br>By: /s/ Christopher M. Yannuzzi _____<br>    Eric D. Isicoff<br>    Florida Bar No. 372201<br>    Isicoff@irlaw.com<br>    Teresa Ragatz<br>    Florida Bar No. 545170<br>    Ragatz@irlaw.com<br>    Christopher M. Yannuzzi<br>    Florida Bar No. 92166<br>    Yannuzzi@irlaw.com<br><br>*Counsel for Defendant, University of Miami* |

## 1.1 General Preliminary Instruction

Members of the Jury:

Now that you've been sworn, I need to explain some basic principles about a civil trial and your duty as jurors. These are preliminary instructions. I'll give you more detailed instructions at the end of the trial.

The jury's duty:

It's your duty to listen to the evidence, decide what happened, and apply the law to the facts. It's my job to provide you with the law you must apply – and you must follow the law even if you disagree with it.

What is evidence:

You must decide the case on only the evidence presented in the courtroom. Evidence comes in many forms. It can be testimony about what someone saw, heard, or smelled. It can be an exhibit or a photograph. It can be someone's opinion.

Some evidence may prove a fact indirectly. Let's say a witness saw wet grass outside and people walking into the courthouse carrying wet umbrellas. This may be indirect evidence that it rained, even though the witness didn't personally see it rain. Indirect evidence like this is also called "circumstantial evidence" – simply a chain of circumstances that likely proves a fact.

1

As far as the law is concerned, it makes no difference whether evidence is direct or indirect. You may choose to believe or disbelieve either kind. Your job is to give each piece of evidence whatever weight you think it deserves.

<u>What is not evidence</u>:

During the trial, you'll hear certain things that are not evidence and you must not consider them.

First, the lawyers' statements and arguments aren't evidence. In their opening statements and closing arguments, the lawyers will discuss the case. Their remarks may help you follow each side's arguments and presentation of evidence. But the remarks themselves aren't evidence and shouldn't play a role in your deliberations.

Second, the lawyers' questions and objections aren't evidence. Only the witnesses' answers are evidence. Don't decide that something is true just because a lawyer's question suggests that it is. For example, a lawyer may ask a witness, "You saw Mr. Jones hit his sister, didn't you?" That question is not evidence of what the witness saw or what Mr. Jones did – unless the witness agrees with it.

There are rules of evidence that control what the court can receive into evidence. When a lawyer asks a witness a question or presents an exhibit, the opposing lawyer may object if [he/she] thinks the rules of evidence don't permit it. If I overrule the objection, then the witness may answer the question or the court

may receive the exhibit. If I sustain the objection, then the witness cannot answer the question, and the court cannot receive the exhibit. When I sustain an objection to a question, you must ignore the question and not guess what the answer might have been.

Sometimes I may disallow evidence – this is also called "striking" evidence – and order you to disregard or ignore it. That means that you must not consider that evidence when you are deciding the case.

I may allow some evidence for only a limited purpose. When I instruct you that I have admitted an item of evidence for a limited purpose, you must consider it for only that purpose and no other.

Credibility of witnesses:

To reach a verdict, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. When considering a witness's testimony, you may take into account:

- the witness's opportunity and ability to see, hear, or know the things the witness is testifying about;
- the witness's memory;
- the witness's manner while testifying;
- any interest the witness has in the outcome of the case;
- any bias or prejudice the witness may have;
- any other evidence that contradicts the witness's testimony;
- the reasonableness of the witness's testimony in light of all the evidence; and
- any other factors affecting believability.

3

At the end of the trial, I'll give you additional guidelines for determining a witness's credibility.

Description of the case:

This is a civil case. To help you follow the evidence, I'll summarize the parties' positions. The Plaintiff, [Dr. Jonathan Lord], claims the Defendant, [University of Miami], [***terminated his employment unlawfully in violation of the False Claims Act because Dr. Lord raised complaints about illegal activity***][**terminated his employment in retaliation for complaining about Medicare fraud and/or taking steps to stop the University from violating the False Claims Act**].

[The University of Miami] denies those claims and contends that [it terminated Dr. Lord's employment for legitimate, performance-based reasons].

Burden of proof:

[Dr. Lord] has the burden of proving [his] case by what the law calls a "preponderance of the evidence." That means [Dr. Lord] must prove that, in light of all the evidence, what [he] claims is more likely true than not. So, if you could put the evidence favoring [Dr. Lord] and the evidence favoring [the University of Miami] on opposite sides of balancing scales, [Dr. Lord] needs to make the scales

tip to [his] side. If [Dr. Lord] fails to meet this burden, you must find in favor of [University of Miami].

To decide whether any fact has been proved by a preponderance of the evidence, you may – unless I instruct you otherwise – consider the testimony of all witnesses, regardless of who called them, and all exhibits that the court allowed, regardless of who produced them. After considering all the evidence, if you decide a claim or fact is more likely true than not, then the claim or fact has been proved by a preponderance of the evidence.

On certain issues, called "affirmative defenses," [the University of Miami] has the burden of proving the elements of a defense by a preponderance of the evidence. I'll instruct you on the facts [the University of Miami] must prove for any affirmative defense. After considering all the evidence, if you decide that [the University of Miami] has successfully proven that the required facts are more likely true than not, the affirmative defense is proved.]

Conduct of the jury:

While serving on the jury, you may not talk with anyone about anything related to the case. You may tell people that you're a juror and give them information about when you must be in court. But you must not discuss anything about the case itself with anyone.

5

You shouldn't even talk about the case with each other until you begin your deliberations. You want to make sure you've heard everything – all the evidence, the lawyers' closing arguments, and my instructions on the law – before you begin deliberating. You should keep an open mind until the end of the trial. Premature discussions may lead to a premature decision.

In this age of technology, I want to emphasize that in addition to not talking face-to-face with anyone about the case, you must not communicate with anyone about the case by any other means.  This includes e-mails, text messages, phone calls, and the Internet, including social-networking websites and apps such as Facebook, Instagram, Snapchat, YouTube, and Twitter.  You may not use any similar technology of social media, even if I have not specifically mentioned it here.

You must not provide any information about the case to anyone by any means whatsoever, and that includes posting information about the case, or what you are doing in the case, on any device or Internet site, including blogs, chat rooms, social websites, or any other means.

You also shouldn't Google or search online or offline for any information about the case, the parties, or the law. Don't read or listen to the news about this case, visit any places related to this case, or research any fact, issue, or law related to this case. The law forbids the jurors to talk with anyone else about the case and

forbids anyone else to talk to the jurors about it. It's very important that you understand why these rules exist and why they're so important. You must base your decision only on the testimony and other evidence presented in the courtroom. It is not fair to the parties if you base your decision in any way on information you acquire outside the courtroom. For example, the law often uses words and phrases in special ways, so it's important that any definitions you hear come only from me and not from any other source. Only you jurors can decide a verdict in this case. The law sees only you as fair, and only you have promised to be fair – no one else is so qualified.

Taking notes:

If you wish, you may take notes to help you remember what the witnesses said. If you do take notes, please don't share them with anyone until you go to the jury room to decide the case. Don't let note-taking distract you from carefully listening to and observing the witnesses. When you leave the courtroom, you should leave your notes hidden from view in the jury room.

Whether or not you take notes, you should rely on your own memory of the testimony. Your notes are there only to help your memory. They're not entitled to greater weight than your memory or impression about the testimony.

Course of the trial:

Let's walk through the trial. First, each side may make an opening statement, but they don't have to. Remember, an opening statement isn't evidence, and it's not supposed to be argumentative; it's just an outline of what that party intends to prove.

Next, [Dr. Lord] will present [his] witnesses and ask them questions. After [Dr. Lord] questions the witness, [the University of Miami] may ask the witness questions – this is called "cross-examining" the witness. Then [the University of Miami] will present [its] witnesses, and [Dr. Lord] may cross-examine them. You should base your decision on all the evidence, regardless of which party presented it.

After all the evidence is in, the parties' lawyers will present their closing arguments to summarize and interpret the evidence for you, and then I'll give you instructions on the law.

You'll then go to the jury room to deliberate.

**Authority**: ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL CASES), NO. 1.1

### 1.4 Jury Questions

During this trial, you may submit questions to a witness after the lawyers have finished their own questioning. Here is how the procedure works: After each witness has testified, and the lawyers have asked all of their questions, I'll ask if any of you have questions. If you have a question, write it down and give it to the court staff.

You may submit a question for a witness only to clarify an answer or to help you understand the evidence. Our experience with juror questions indicates that jurors rarely have more than a few questions for any one witness, and there may be no questions at all for some witnesses.

If you submit a question, the court staff will give it to me and I'll share your questions with the lawyers in the case. If the rules of evidence allow your question, one of the lawyers or I will read your question to the witness. I may modify the form or phrasing of a question so that it's allowed under the evidence rules. Sometimes, I may not allow the questions to be read to the witness, either because the law does not allow it or because another witness is in a better position to answer the question. If I can't allow the witness to answer a question, you must not draw any conclusions from that fact or speculate on what the answer might have been.

Here are several important things to keep in mind about your questions for the witnesses:

9

· First, you must submit all questions in writing. Please don't ask any questions aloud.

· Second, the court can't re-call witnesses to the stand for additional juror questions. If you have a question for a particular witness, you must submit it when I ask.

· Finally, because you should remain neutral and open-minded throughout the trial, you should phrase your questions in a way that doesn't express an opinion about the case or a witness. You must keep an open mind until you've heard all the evidence, the closing arguments, and my final instructions on the law.

**Authority**: ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL CASES), NO. 1.4

**1.5 Interim Statements**

At times during the trial, the lawyers will address you. You'll soon hear the lawyers' opening statements, and at the trial's conclusion you'll hear their closing arguments. Sometimes the lawyers may choose to make short statements to you, either to preview upcoming evidence or to summarize and highlight evidence they just presented. These statements and arguments are the lawyers' views of the evidence or of what they anticipate the evidence will be. They are not evidence themselves.

**Authority**: ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL CASES), NO. 1.5

**2.1 Stipulations**

Sometimes the parties have agreed that certain facts are true. This agreement is called a stipulation. You must treat these facts as proved for this case.

**Authority**: ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL CASES), NO. 2.1

**2.2 Use of Depositions**

A deposition is a witness's sworn testimony that is taken before the trial. During a deposition, the witness is under oath and swears to tell the truth, and the lawyers for each party may ask questions. A court reporter is present and records the questions and answers.

The deposition of [name of witness], taken on [date], [is about to be/has been] presented to you [by a video/by reading the transcript]. Deposition testimony is entitled to the same consideration as live testimony, and you must judge it in the same way as if the witness was testifying in court.

Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

**Authority**: ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL CASES), NO. 2.2

## 2.4 Interim Statements

At the beginning of the trial, I told you that the lawyers might make short statements previewing upcoming evidence or summarizing and highlighting evidence that they have already presented before. Right now, [Mr./Ms.] [name of attorney] is going to make a short statement. Please remember that the statement you are about to hear – like all statements by the lawyers – is [Mr./Ms.] [name of attorney]'s view of the evidence or of what [he/she] anticipates the evidence will be, but isn't itself evidence.

**Authority**: ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL CASES), NO. 2.4

**2.5 Judicial Notice**

The rules of evidence allow me to accept facts that no one can reasonably dispute. The law calls this "judicial notice." I've accepted [state the fact that the court has judicially noticed] as proved even though no one introduced evidence to prove it. You must accept it as true for this case.

**Authority**: ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL CASES), NO. 2.5

**2.6 Use of Interrogatories**

[You'll now hear/You've heard] answers that [name of party] gave in response to written questions the other side submitted. The questions are called "interrogatories." Before the trial, [name of party] gave the answers in writing while under oath.

You must consider [name of party]'s answers to as though [name of party] gave the answers on the witness stand.

**Authority**: ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL CASES), NO. 2.6

**2.7 In-Trial Instructions on News Coverage**

Reports about this trial [or about this incident] may appear in the media. The reporters may not have heard all the testimony as you have, may be getting information from people who are not under oath and subject to cross examination, may emphasize an unimportant point, or may simply be wrong.

You must not read, listen to, or watch anything about this trial. It would violate your oath as a juror to decide this case on anything other than the evidence presented at trial and on your own common sense. You must decide this case exclusively on the evidence you receive here in court.

**Authority**: ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL CASES), NO. 2.7

**3.1 Introduction**

<u>COURT'S INSTRUCTIONS TO THE JURY</u>

Members of the jury:

It's my duty to instruct you on the rules of law that you must use in deciding this case.

When I have finished you will go to the jury room and begin your discussions, sometimes called deliberations.

**Authority**: ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL CASES), NO. 3.1

### 3.2.2 The Duty to Follow Instructions – Corporate Party Involved

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company.

**Authority**: ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL CASES), NO. 3.2.2

### 3.3  Consideration of Direct and Circumstantial Evidence; Argument of Counsel; Comments by the Court

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But, anything the lawyers say is not evidence and isn't binding on you.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There's no legal difference in the weight you may give to either direct or circumstantial evidence.

**Authority**: ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL CASES), NO. 3.3

**3.4 Credibility of Witnesses**

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

1. Did the witness impress you as one who was telling the truth?

2. Did the witness have any particular reason not to tell the truth?

3. Did the witness have a personal interest in the outcome of the case?

4. Did the witness seem to have a good memory?

5. Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

6. Did the witness appear to understand the questions clearly and answer them directly?

7. Did the witness's testimony differ from other testimony or other evidence?

**Authority**: ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL CASES), NO. 3.4

### 3.5.1 Impeachment of Witnesses Because of Inconsistent Statements

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

**Authority**: ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL CASES), NO. 3.5

### 3.6.2 Expert Witness – When Expert Fees Represent a Significant Portion of the Witness's Income

When scientific, technical or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter.

But that doesn't mean you must accept the witness's opinion. As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion.

When a witness is being paid for reviewing and testifying concerning the evidence, you may consider the possibility of bias and should view with caution the testimony of such witness where court testimony is given with regularity and represents a significant portion of the witness's income.

**Authority**: ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL CASES), NO. 3.6.2

### 3.7.1 Responsibility for Proof – Plaintiff's Claim[s], Cross Claims, Counterclaims – Preponderance of the Evidence

In this case it is the responsibility of [Dr. Lord] to prove every essential part of [his] claim[s] by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that [Dr. Lord's] claim is more likely true than not true.

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against [Dr. Lord].

In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of [Dr. Lord's] claim[s] by a preponderance of the evidence, you should find for the [University of Miami] as to that claim.

**Authority**: ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL CASES), NO. 3.7.1

### 3.7.2 Responsibility for Proof – Affirmative Defense
###      Preponderance of the Evidence

In this case, the [University of Miami] asserts the affirmative defense[s] of [failure to mitigate and estoppel]. Even if [Dr. Lord] proves [his] claim[s] by a preponderance of the evidence, the [University of Miami] can prevail in this case and/or reduce any damages awarded to Dr. Lord if [it] proves an affirmative defense by a preponderance of the evidence.

When more than one affirmative defense is involved, you should consider each one separately.

I caution you that the [University of Miami] does not have to disprove [Dr. Lord's] claim[s], but if the [University of Miami] raises an affirmative defense, the only way [it] can prevail on that specific defense is if [it] proves that defense by a preponderance of the evidence.

**Authority**: ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL CASES), NO. 3.7.2; *Team Sys. Int'l LLC v. Aquate Corp.*, 682 F. App'x 820, 825 (11th Cir. 2017) (affirming reduction of award due to failure to mitigate).

### 3.8.1 Duty to Deliberate When Only the Plaintiff Claims Damages

Of course, the fact that I have given you instructions concerning the issue of [Dr. Lord's] damages should not be interpreted in any way as an indication that I believe that [Dr. Lord] should, or should not, prevail in this case.

Your verdict must be unanimous – in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you're judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case.

**Authority**: ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL CASES), NO. 3.8.1

### 3.9 Election of Foreperson Explanation of Verdict Form[s]

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

[Explain verdict]

Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign it and date it. Then you'll return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I'll respond as promptly as possible – either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted one way or the other at that time. That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.

**Authority**: ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL CASES), NO. 3.9

27

*4.22 Defendant's Proposed Instruction on FCA Retaliation and Damages*

*In this case, [Dr. Lord] claims that [the University of Miami] retaliated against [him] because [he] took steps to enforce [his] lawful rights under [the False Claims Act, which prohibits an employer from taking retaliatory action against an employee because the employee has asserted rights or made complaints under that law.]*

*[Dr. Lord] claims that [the University of Miami] [terminated his employment] because [Dr. Lord] [took steps to prevent violations of the False Claims Act].*

*[The University of Miami] denies [Dr. Lord's]'s claim and asserts that [the University of Miami terminated Dr. Lord's employment because of his unsatisfactory and disruptive work performance].*

*To succeed on [his] claim, [Dr. Lord] must prove each of the following facts by a preponderance of the evidence:*

*First:   [Dr. Lord] engaged in a protected activity;*

*Second: [The University of Miami] took an adverse employment action against Dr. Lord because of [Dr. Lord]'s protected activity; and*

*Third:  [Dr. Lord] suffered damages because of the adverse employment action.*

28

In the verdict form that I will explain in a moment, you will be asked to answer questions about these factual issues.

For the first element, [Dr. Lord] claims that [he] engaged in protected activity when [he] [took steps to prevent violations of the False Claims Act]. That action is "protected activity" if it was based on [Dr. Lord's] good-faith, reasonable belief that [the University of Miami] had engaged in activities that would be in violation of the False Claims Act.

[Dr. Lord] had a "good faith" belief if [he/] honestly believed that [the University] was engaged in such activities. To establish "good faith," however, it is insufficient for [Dr. Lord] merely to allege that [his] belief in this regard was honest and bona fide; the allegations and the record must also establish that the belief, though perhaps mistaken, was objectively reasonable. [Dr. Lord] had a "reasonable" belief if a reasonable person would, under the circumstances, believe that [the University of Miami] was engaged in such activities. [Dr. Lord] does not have to prove that [the University of Miami] actually was engaged in such activities. But [he] must prove that [he] had a good-faith, reasonable belief that [the University of Miami] did so. The "mere possibility" of a potential FCA violation is insufficient.

29

*[In addition, the False Claims Act generally does not protect activities that are within the scope of an employee's job responsibilities. Compliance employees typically must do more than other employees to show that they are engaging in protected activity rather than merely performing their required job duties.]*

*For the second element, if you find that [Dr. Lord] engaged in protected activity, you must decide whether [the University of Miami] took that action because of [Dr. Lord's]'s protected activity. Put another way, you must decide whether [Dr. Lord's] protected activity was the main reason for [the University of Miami's] decision to terminate.*

*To determine that [the University] took an adverse employment action because of [Dr. Lord's] protected activity, you must decide that [the University] would not have taken the action had [Dr. Lord] not engaged in the protected activity but everything else had been the same.*

*[The University of Miami] claims that [it] did not [terminate Plaintiff's employment] because of [Dr. Lord's] [protected activity] and that [it] took the action [because of Dr. Lord's management style and the resulting Faculty Petition that called for his removal.] An employer may not take an adverse action against an employee because of the employee's protected activity. But an employer may [terminate] an employee for any other reason, good or bad, fair or unfair. If you*

believe [the University of Miami's] reasons for [its] decision, and you find that [the University of Miami] did not make [its] decision because of [Dr. Lord's] protected activity, you must not second guess that decision, and you must not substitute your own judgment for [the University's] judgment – even if you do not agree with it.

As I have explained, [Dr. Lord] has the burden to prove that [the University of Miami's] decision to [terminate his employment] was because of [Dr. Lord's] protected activity. I have explained to you that evidence can be direct or circumstantial. To decide whether [the University of Miami's] [termination decision] was because of [Dr. Lord's] protected activity, you may consider the circumstances of [the University of Miami's] decision. For example, you may consider whether you believe the reason that [the University of Miami] gave for the decision. If you do not believe the reasons that [it] gave for the decision, you may consider whether the reasons [were] so unbelievable that [they were] a cover-up to hide the true retaliatory reasons for the decision.

For the third element, you must decide whether [the University of Miami's] acts were the proximate cause of damages that [Dr. Lord] sustained. Put another way, you must decide, if [the University of Miami] had not [terminated] [Dr. Lord], would these damages have occurred?

*If you find that [the University of Miami's] acts were the proximate cause of damages that [Dr. Lord] sustained, you must determine the amount of damages.*

*When considering the issue of [Dr. Lord's] compensatory damages, you should determine what amount, if any, has been proven by [Dr. Lord] by a preponderance of the evidence as full, just and reasonable compensation for all of [Dr. Lord's] damages as a result of the [termination], no more and no less. Compensatory damages are not allowed as a punishment and must not be imposed or increased to penalize [the University of Miami]. Also, compensatory damages must not be based on speculation or guesswork.*

*You should consider the following elements of damage, to the extent you find that [Dr. Lord] has proved them by a preponderance of the evidence, and no others: net lost wages and benefits from the date of [termination] to the date of your verdict. To determine the amount of [Dr. Lord's] net lost wages and benefits, you should consider evidence of the actual wages [he] lost and the monetary value of any benefits [he] lost.*

*You are instructed that any person who claims damages as a result of an alleged wrongful act on the part of another has a duty under the law to "mitigate" those damages. For purposes of this case, the duty to mitigate damages requires [Dr. Lord] to be reasonably diligent in seeking comparable employment to the*

*position [he] held with [the University of Miami]. [Comparable employment means alternative employment similar to Dr. Lord's former job in the nature of the work, responsibilities and skills required. Dr. Lord need not accept employment that is unsuitable or demeaning when compared with Dr. Lord's former job.]*

*To prove that [Dr. Lord] failed to mitigate damages, [the University of Miami] must prove by a preponderance of the evidence that: (1) work comparable to the position [Dr. Lord] held with [the University of Miami] was available, and (2) [Dr. Lord] did not make reasonably diligent efforts to obtain it. If, however, [the University of Miami] shows that [Dr. Lord] did not make reasonable efforts to obtain any work, then [the University of Miami] does not have to prove that comparable work was available.*

*If you find that [the University of Miami] proved by a preponderance of the evidence that [Dr. Lord] failed to mitigate damages, then you should reduce the amount of [Dr. Lord]'s damages by the amount that could have been reasonably realized if [Dr. Lord] had taken advantage of an opportunity for comparable employment, [which could result in a damages award of $0.00].*

**Authority**: ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL CASES), NO. 4.22 (Retaliation); ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL CASES), NO. 4.5 (Title VII Damages); FLORIDA STANDARD JURY INSTRUCTIONS (CIVIL CASES) NO. 417.10 (Affirmative Defense – Failure to Mitigate Lost Wages)

*Mooren v. Sys. Studies & Simulation, Inc.*, No. 5:12-CV-00230-AKK, 2017 WL 3581727, at \*3 (N.D. Ala. Aug. 18, 2017) ("the standard for analyzing FLSA, Title VII, FCA, and Section 1981 retaliation claims is the same in this Circuit") (citing *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342–43 (11th Cir. 2000)).

*Gatti v. Granger Med. Clinic, P.C.*, No. 2:19-CV-00028-DAO, 2021 WL 1171719, at \*7 (D. Utah Mar. 29, 2021) (the FCA "generally does not protect activities that are within the scope of an employee's job responsibilities," and "compliance employees typically must do more than other employees to show that their employer knew of the protected activity.") (citations omitted); *Brush v. Sears Holdings Corp.*, 466 Fed. Appx. 781, 787 (11th Cir. 2012) ("The 'manager rule' holds that a management employee [who], in the course of her normal job performance, disagrees with or opposes the actions of an employer, does not engage in 'protected activity.'"); *Mack v. Augusta-Richmond Cty., Ga.*, 148 Fed. Appx. 894, 897 (11th Cir. 2005) (noting that employee's e-mails - - which evidenced that he has trying to "ensure compliance with the HUD regulations" - - "not that an FCA action was a 'distinct possibility'" - - may not constitute protected activity).

*Colesanti v. Becton Dickinson, No. CV 18-491WES, 2019 WL 4043957, at \*11 (D.R.I. July 19, 2019) (rejecting whistleblower claim and noting that a "mere possibility of misconduct" is insufficient to establish a "objectively reasonable belief of fraud"), R&R adopted, No. CV 18-491 WES, 2019 WL 4039529 (D.R.I. Aug. 27, 2019); United States v. Ukomadu, 236 F.3d 333, 337 (6th Cir. 2001) (holding that a "mere possibility" is insufficient to establish an "objectively reasonable basis").*

*Simon ex rel. Fla. Rehab. Assocs., PLLC v. Healthsouth of Sarasota Ltd. P'ship*, No. 21-11618, 2022 WL 3910607 (11th Cir. Aug. 31, 2022) (affirming summary judgment because the plaintiff did not engage in statutorily-protected activity because she could not show that she had an "objectively reasonable belief" that her employer was violating the FCA; noting that "[t]he objective reasonableness of an employee's belief that her employer has engaged in an unlawful employment practice must be measured against existing substantive law"; and rejecting that either (1) "differences of opinion among physicians" or (2) the settlement of qui tam claims between the government and the defendant-employer could establish an objectively-reasonable belief that false claims had been submitted to the government).

**4.22 Plaintiff's Proposed Instruction on FCA Retaliation**

**The False Claims Act ("FCA") is a federal law that imposes liability on persons and companies who defraud the government by submitting fraudulent claims for payment and/or to avoid a payment to the government. It also contains an anti-retaliation provisions that protects employees who may expose or consider exposing fraudulent claims from retaliatory acts from their employer.**

**In this case, [Dr. Lord] claims that [the University of Miami] retaliated against [him] because [he] took steps to enforce [his] lawful rights under [the FCA, which prohibits an employer from taking retaliatory action against any employee because the employee or associated others have asserted rights or made complaints under that law.]**

**[Dr. Lord] claims that [the University of Miami] [terminated his employment] because [Dr. Lord] [complained about or took steps to prevent alleged Medicare fraud within the University of Miami Health System's Department of Surgery in a laboratory called the Immuno-Monitoring Laboratory ("IML").].**

**[The University of Miami] denies [Dr. Lord's]'s claim and asserts that [the University of Miami terminated Dr. Lord's employment because of his alleged management style and a faculty Petition].**

**To succeed on [his] claim, [Dr. Lord] must prove each of the following facts by a preponderance of the evidence:**

**First:    [Dr. Lord] engaged in a protected activity; and**

**Second: [the University of Miami] terminated Dr. Lord because of [Dr. Lord]'s protected activity.**

**In the verdict form that I will explain in a moment, you will be asked to answer questions about these factual issues.**

**For the first element, [Dr. Lord] claims that [he] engaged in protected activity when [he] [raised complaints about and/or took steps to prevent alleged Medicare fraud within the University of Miami Health System's Department of Surgery in a laboratory called the Immuno-Monitoring Laboratory ("IML")]. That action is "protected activity" if Dr. Lord engaged in such conduct in furtherance of a FCA suit when such suit was a "distinct possibility" or Dr. Lord attempted to stop a violation of the FCA based on an objectively reasonable belief that violations had occurred.**

**With respect to the "distinct possibility" standard, anti-retaliation protection applies where the filing of a private or government action by anyone**

36

was a distinct possibility at the time Dr. Lord's assistance was rendered. That is, protection applies if the University of Miami could have feared being reported to the government for fraud or sued in a qui tam action.

With respect to the "objectively reasonable belief" standard, anti-retaliation protection applies if Dr. Lord's conduct was based on [Dr. Lord's] good-faith, reasonable belief that [the University of Miami] had engaged in Medicare fraud in violation of the False Claims Act.

[Dr. Lord] had a "good faith" belief if [he/] honestly believed that [the University] was engaged in Medicare fraud. To establish "good faith," however, it is insufficient for [Dr. Lord] merely to allege that [his] belief in this regard was honest and bona fide; the allegations and the record must also establish that the belief, though perhaps mistaken, was objectively reasonable. [Dr. Lord] had a "reasonable" belief if a reasonable person would, under the circumstances, believe that [the University of Miami] was engaged in Medicare fraud. [Dr. Lord] does not have to prove that [the University of Miami] actually was engaged in such activities. But [he] must prove that [he] had a good-faith, reasonable belief that [the University of Miami] had engaged in Medicare fraud in violation of the FCA and took actions designated to stop those violations.

      **For the second element, if you find that [Dr. Lord] engaged in protected activity when he raised complaints about alleged Medicare fraud and/or took steps to prevent Medicare fraud, you must decide whether [the University of Miami] took that action because of [Dr. Lord's]'s protected activity.**

      **To determine that [the University of Miami] terminated Dr. Lord because of [Dr. Lord's] protected activity, you must first decide whether the University of Miami had knowledge by the time of Dr. Lord's termination that Dr. Lord was acting in furtherance of a private or government lawsuit under the FCA or was engaged in efforts to stop one or more violations of the FCA. This notice element is satisfied by any action that you can reasonably conclude would make the University of Miami aware that litigation is a reasonable possibility or that Dr. Lord was engaged in efforts to stop FCA violations.**

      **If you determine that the notice element is satisfied, then to determine that [the University] terminated Dr. Lord because of [Dr. Lord's] protected activity, you need not find that the only reason that the University of Miami terminated Dr. Lord was Dr. Lord's protected activity; but you must decide that [the University] would not have taken the action had [Dr. Lord] not engaged in the protected activity but everything else had been the same.**

**[The University of Miami] claims that [it] did not [terminate Plaintiff's employment] because [Dr. Lord] [raised complaints about alleged Medicare fraud and/or took steps to prevent Medicare fraud] and that [it] took the action [because of Dr. Lord's management style and a Faculty Petition.] An employer may not [terminate] an employee because of the employee's protected activity. But an employer may [terminate] an employee for any other reason, good or bad, fair or unfair. If you believe [the University of Miami's] reasons for [its] decision, and you find that [the University of Miami] did not make [its] decision because of [Dr. Lord's] protected activity, you must not second guess that decision, and you must not substitute your own judgment for [the University's] judgment – even if you do not agree with it.**

**However, events often have multiple "but-for" causes. For example, if a car accident occurred both because the defendant ran a red light and because the plaintiff failed to signal his turn at the intersection, we might call each a "but-for" cause of the collision. Thus, you may find the University of Miami terminated Dr. Lord because of his protected activity if you determine that Dr. Lord's management style and the faculty Petition contributed to the University of Miami's decision to terminate Dr. Lord, so long as you conclude that Dr. Lord's protected activity was one but-for cause of that decision.**

**As I have explained, [Dr. Lord] has the burden to prove that [the University of Miami's] decision to [terminate his employment] was because of [Dr. Lord's] protected activity. I have explained to you that evidence can be direct or circumstantial. To decide whether [the University of Miami's] [decision to terminate Dr. Lord] was because of [Dr. Lord's] protected activity, you may consider the circumstances of [the University of Miami's] decision. For example, you may consider whether you believe the reason that [the University of Miami] gave for the decision. If you do not believe the reasons that [it] gave for the decision, you may consider whether the reasons [were] so unbelievable that [they were] a cover-up to hide the true retaliatory reasons for the decision.**

**Authority:** 31 U.S.C. §§ 3729, 3730(h); ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL CASES), NO. 4.22 (Retaliation) (modified to FCA anti-relation requirements); *Patterson v. Georgia Pacific, LLC*, No. 20-12733 (11th Cir. June 28, 2022) (holding that "manager exception" rule did not apply to Title VII claims because such an exception "contradicts the text" of the statute which explicitly extends its protection to "any of [the employer's] employees"); *Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1739 (2020) (interpreting "because of" causation under Title VII retaliation claims and concluding a "defendant cannot avoid liability just by citing some *other* factor that contributed to its challenged employment decision. So long as the plaintiff's sex was one but-for cause of that decision, that is enough to trigger the law" because "[o]ften, events have multiple but-for causes" and Congress "could have added 'solely'" to the "because of" standard); *Nesbitt v. Candler Cnty.*, 945 F.3d 1355, 1359 (11th Cir. 2020) (but-for causation applies to FCA claims); *Farnsworth v. HCA, Inc.*, 2015 WL 5234640, at *3 (M.D. Fla. Sept. 8, 2015) (listing elements of FCA claim); *Lord v. University of Miami*, --- F. Supp. 3d ----, Case No. 13-cv-225002021 WL 5327788, at *8-*11 (S.D. Fla. Nov. 16, 2021) (discussing standards for protected activity) (citing 31 U.S.C. § 3730(h)(1); *Childree v. UAP/GA AG CHEM, Inc.*, 92 F.3d 1140, 1146 (11th

Cir. 1996); and *United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 201 (4th Cir. 2018)); FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL CASES), No. 11.5 (Retaliation) (damages not an element of claim; but-for cause does not mean only reason for termination); *United States of America ex rel. Barrick v. Parker-Migliorini Int'l, LLC*, Case 2:12-cv-00381-JNP, Doc. 313 (D. Utah July 7, 2021) (Final Instruction Nos. 22 (False Claims Act Retaliation Claim – Introduction) and 27 (False Claims Act Retaliation Claim – Explanation of Causal Connection)); *U.S. ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 736 (D.C. Cir. 1998) (explaining retaliation provision was response to concern that whistleblowers were being punished by employers and was passed to provide protection to whistleblowers and assure employees who may be considering exposing fraud that they are protected from retaliatory acts); D.E. 173 at 23-24 (discussing history and purpose of the FCA and the retaliation provision); *id.* at 24 (listing elements of FCA retaliation claim (citing *Briggs ex rel. United States v. QuantiTech Inc.*, No. 21-11448, 2022 WL 1308494, at *2 (11th Cir. May 2, 2022)); *id.* at 25-26, 29 (discussing "distinct possibility" and "other efforts" standards for protected activity); *id.* at 30-32 (discussing notice requirements); *id.* at 39 (stating "if successful at trial, Plaintiff may be entitled to two times back pay") (citing 31 U.S.C. § 3730(h)(2)); *Harris v. Blue Ridge Health Services, Inc.*, 388 F. Supp. 3d 633, 639 (M.D.N.C. 2019) (granting default judgment on FCA claim without reference to sufficiency of allegations or proof of damages).

**4.5 Plaintiff's Proposed Damages Instruction.**

**If you find that Dr. Lord has proven, by a preponderance of the evidence, that the University of Miami terminated him because of his protected activity, then the FCA states that Dr. Lord is entitled to all relief necessary to make him whole. Such relief shall include back pay and interest on the back pay. In addition, such relief shall include compensation for any special damages sustained as a result of Dr. Lord's termination.**

**When considering the issue of [Dr. Lord's] back pay,[1] you should determine what amount, if any, has been proven by [Dr. Lord] by a preponderance of the evidence as full, just and reasonable compensation for all of [Dr. Lord's] back pay, no more and no less. Back pay refers to the amount of wages Dr. Lord should have received but did not actually receive. Back pay is not allowed as a punishment and must not be imposed or increased to penalize**

---

[1] In the Eleventh Circuit, back pay is considered equitable relief, so it is ordinarily a question for the court and not the jury. *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1184 (11th Cir. 2010); *see also* Eleventh Circuit Pattern Jury Instructions, Civil Cases (March 10, 2022), § 4.5 at 19. However, because the University has raised failure to mitigate (a legal issue) as an affirmative defense (but *see*, *infra* at footnote 2), the amount of Dr. Lord's net lost salary and benefits is a question for the jury. *Brown*, 597 F.3d at 1184 (noting that under the Seventh Amendment when legal and equitable remedies overlap factually and are tried together, all factual findings necessarily made by the jury on a legal issue are binding on the trial court sitting in equity).

[the University of Miami]. Also, back pay must not be based on speculation or guesswork.

You should consider the following elements to determine back pay, to the extent you find that [Dr. Lord] has proved them by a preponderance of the evidence, and no others: net lost wages and benefits from the date of [termination] to the date of your verdict. To determine the amount of [Dr. Lord's] net lost wages and benefits, you should consider evidence of the actual wages [he] lost and the monetary value of any benefits [he] lost. Benefits include vacation, sick pay, insurance, and retirement benefits.

In addition, Dr. Lord claims entitlement to special damages resulting from his termination, including the lost value of stock and option sales and non-economic damages for emotional distress and public humiliation. When considering the issue of [Dr. Lord's] entitlement to special damages, you should determine what amount, if any, has been proven by [Dr. Lord] by a preponderance of the evidence as full, just and reasonable compensation for all of [Dr. Lord's] special damages, no more and no less. Special damages are not allowed as a punishment and must not be imposed or increased to penalize [the University of Miami]. Also, special damages must not be based on speculation or guesswork.

**If you find that [the University of Miami's] acts were the proximate cause of special damages that [Dr. Lord] sustained from the premature sales of certain stocks and options, you must determine the amount of damages.**

**You should consider the following elements of damage, to the extent you find that [Dr. Lord] has proved them by a preponderance of the evidence, and no others: the lost value stocks and options Dr. Lord allegedly sold prematurely as a result of his termination.**

**To determine whether and how much [Dr. Lord] should recover for emotional distress and public humiliation, you may consider both the mental and physical aspects of injury – tangible and intangible. [Dr. Lord] does not have to introduce evidence of a monetary value for intangible things like emotional distress and humiliation. You will determine what amount fairly compensates [him] for [his] claim. There is no exact standard to apply, but the award should be fair in light of the evidence.**

**You are instructed that any person who claims damages as a result of an alleged wrongful act on the part of another has a duty under the law to "mitigate" those damages. For purposes of this case, the duty to mitigate damages requires [Dr. Lord] to be reasonably diligent in seeking substantially equivalent comparable employment to the positions [he] held with [the**

44

**University of Miami], including Chief Operations Officer and Chief Compliance Officer. [Substantially equivalent work is employment which affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as the positions from which Dr. Lord was terminated in the relevant area. Dr. Lord need not accept employment that is unsuitable or demeaning when compared with Dr. Lord's former job. Moreover, Dr. Lord is not required to relocate to another community, city, or state.]²**

**To prove that [Dr. Lord] failed to mitigate damages, [the University of Miami] must prove by a preponderance of the evidence that: (1) work substantially equivalent to the positions [Dr. Lord] held with [the University of Miami] was available, and (2) [Dr. Lord] did not make reasonably diligent efforts to obtain it. If, however, [the University of Miami] shows that [Dr. Lord]**

---

² Unlike Title VII, the FCA's anti-retaliation provision does not expressly impose a duty to mitigate damages. *See* 31 U.S.C. § 3730(h). Despite this, multiple courts have permitted employers to assert mitigation of damages defenses against FCA retaliation claims. *Miniex v. Houston Hous. Auth.*, 400 F. Supp. 3d 620, 654 n.177 (S.D. Tex. 2019), *judgment entered*, CV 4:17-00624, 2019 WL 10892215 (S.D. Tex. Sept. 16, 2019). Dr. Lord proposes a mitigation instruction solely to avoid waiving any objection to the University of Miami's instruction, but does not waive any argument that mitigation is not an available defense under the 31 U.S.C. § 3730(h).

did not make reasonable efforts to obtain any work, then [the University of Miami] does not have to prove that comparable work was available.

    To determine whether Dr. Lord made reasonably diligent efforts to obtain substantially equivalent work in the relevant area, you must consider that reasonable efforts to mitigate damages do not include futile or pointless efforts. Further, in determining the reasonableness of Dr. Lord's efforts, you should consider all of Dr. Lord's efforts to obtain substantially equivalent positions, including any applications to other positions, networking, reaching out to contacts, creating a resume, securing a resume, and identifying open or available positions.

    If you find that [the University of Miami] proved by a preponderance of the evidence that [Dr. Lord] failed to mitigate damages, then you should reduce the amount of [Dr. Lord]'s damages by the amount that could have been reasonably realized if [Dr. Lord] had taken advantage of an opportunity for substantially equivalent employment.

**Authority:** 31 U.S.C. § 3730(h); ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL CASES), NO. 4.5 (Title VII Damages (modified to FCA claims)); *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1531 (11th Cir. 1985) (special damages include loss of a business opportunity); *Galbreath v. Hale Cnty., Alabama Comm'n*, 754 F. App'x 820, 830 (11th Cir. 2018) (substantially comparable work must be in relevant area); *Galbreath v. Hale Cnty., Alabama Comm'n*, 754 F. App'x 820, 830 (11th Cir. 2018) (district court correctly rejected argument that plaintiff failed to mitigate damages because "she did not look for other

46

work" because "'Defendants did not show that substantially comparable work existed within the relevant area'" (quoting *Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1527 (11th Cir. 1991) (defining substantially equivalent work), *superseded by statute on other grounds*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071, as stated in *Munoz v. Oceanside Resorts, Inc.*, 223 F.3d 1340 (11th Cir. 2000))); *Crabtree v. Baptist Hosp. of Gadsden, Inc.*, 749 F.2d 1501, 1502 (11th Cir. 1985) (benefits included for back pay); *Galbreath v. Hale Cnty., Alabama Comm'n*, CV 15-308-CG-N, 2017 WL 3402967, at *12 (S.D. Ala. Aug. 8, 2017) (identifying relevant factors for reasonableness of efforts), *aff'd*, 754 F. App'x 820 (11th Cir. 2018) (citing *Ross v. Twenty-Four Collections, Inc.*, 681 F. Supp. 1547, 1554 (S.D. Fla. 1988) (finding an employee's lack of diligence did not reduce her back pay where any attempts to secure employment were rendered futile by the employer's actions)); McNamara & Southerland, Federal Employment Jury Instructions, (March 2007 rev. ed.) §3:490; *Brandon v. Anesthesia & Pain Mgmt. Assocs., Ltd.*, 277 F.3d 936, 944 (7th Cir. 2002) (stating that the allowance for special damages in 31 U.S.C. § 3730(h) "permits recovery for emotional distress"); *Hammond v. Northland Counseling Ctr., Inc.*, 218 F.3d 886, 892–93 (8th Cir. 2000); *Neal v. Honeywell, Inc.*, 191 F.3d 827, 832 (7th Cir. 1999) (emotional distress are special damages); *Sowers v. Kemira, Inc.*, 701 F. Supp. 809, 827 (S.D. Ga. 1988) (no requirement to relocate); *United States of America ex rel. Barrick v. Parker-Migliorini Int'l, LLC*, Case 2:12-cv-00381-JNP, Doc. 313 (D. Utah July 7, 2021) (Final Instruction Nos. 28-31 (False Claims Act Retaliation Claim instructions for introduction to damages, proof of damages, back pay, and special damages)); *Harris v. Blue Ridge Health Services, Inc.*, 388 F. Supp. 3d at 642, 644 (stating "[r]elief under the FCA's retaliation provision 'shall include . . . 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees'" and noting "back pay" is "properly understood to refer to the amount of wages Plaintiffs should have received but did not actually receive") (quoting 31 U.S.C. § 3730(h)(2)).

**416.33 Defendant's Proposed Instruction on Judicial Estoppel[3]**

*The University of Miami also has asserted the equitable defense of estoppel. To prove this defense, the University of Miami must establish the following two elements by a preponderance of the evidence:*

*First: Dr. Lord took an inconsistent position under oath in a separate proceeding.*

*Second: Dr. Lord's inconsistent positions were calculated to make a mockery of the judicial system.*

*You must consider both Dr. Lord's actions—whether he made inconsistent statements—and his motive—whether he intended to make a mockery of the judicial system. A motivation to conceal may be shown by evidence of a potential financial benefit that could result from concealment.*

*If you find that the University of Miami proved both elements by a preponderance of the evidence, you must find in favor of the University of Miami.*

**Authority:** FLORIDA STANDARD JURY INSTRUCTIONS (CIVIL CASES) NO. 416.33 (Affirmative Defense – Equitable Estoppel).

---

[3] Dr. Lord does not propose a jury instruction on judicial estoppel because the Court excluded all references to "the doctrine of judicial estoppel, its elements, or its presence as a defense in this case" and indicated at the August 9, 2022 pretrial conference that there would be no instructions to the jury regarding judicial estoppel. (D.E. 176 ¶ 2.) To the extent the University proposes a judicial estoppel instruction for preservation purposes, Dr. Lord notes the University's proposed instruction is inadequate. (*See* D.E. 161 at 49-51.)

"The equitable doctrine of judicial estoppel is intended to 'prevent the perversion of the judicial process' and 'protect [its] integrity . . . by prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" *Slater v. United States Steel Corp.*, 871 F.3d 1174, 1180–81 (11th Cir. 2017) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001)). "The Eleventh Circuit "employs a two-part test to guide district courts in applying judicial estoppel: whether (1) the party took an inconsistent position under oath in a separate proceeding, and (2) these inconsistent positions were calculated to make a mockery of the judicial system." *Id.* (citations and quotations omitted). The Court should consider "both the plaintiff's actions—whether he made inconsistent statements—and his motive—whether he intended to make a mockery of the judicial system." *Id.* "A motivation to conceal may be shown by evidence of a potential financial benefit that could result from concealment." *U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 274 (5th Cir. 2015) (applying judicial estoppel to bar FCA claim) (citing *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 262 (5th Cir. 2012)).

49

**2.8 Civil *Allen* Charge**

Members of the jury:

I'm going to ask you to continue your deliberations to reach a verdict. Please consider the following comments.

This is an important case. The trial has been expensive in terms of time, effort, money, and emotional strain to both the plaintiff and the defendant. If you fail to agree on a verdict, the case remains open and may have to be tried again. A second trial would be costly to both sides, and there's no reason to believe either side can try it again better or more exhaustively than they have tried it before you.

Any future jury would be selected in the same manner and from the same source as you. There's no reason to believe that the case could ever be submitted to a jury of people more conscientious, more impartial, or more competent to decide it – or that either side could produce more or clearer evidence.

It's your duty to consult with one another and to deliberate with a view to reaching an agreement – if you can do it without violating your individual judgment. You must not give up your honest beliefs about the evidence's weight or effect solely because of other jurors' opinions or just to return a verdict. You must each decide the case for yourself – but only after you consider the evidence with your fellow jurors.

You shouldn't hesitate to reexamine your own views and change your opinion if you become convinced it's wrong. To bring your minds to a unanimous result, you must openly and frankly examine the questions submitted to you with proper regard for the opinions of others and with a willingness to reexamine your own views.

If a substantial majority of you is for a verdict for one party, each of you who holds a different position ought to consider whether your position is reasonable. It may not be reasonable since it makes so little impression on the minds of your fellow jurors – who bear the same responsibility, serve under the same oath, and have heard the same evidence.

You may conduct your deliberations as you choose, but I suggest that you now carefully reexamine and reconsider all the evidence in light of the court's instructions on the law. You may take all the time that you need.

I remind you that in your deliberations, you are to consider the court's instructions as a whole. You shouldn't single out any part of any instructions including this one, and ignore others.

You may now return to the jury room and continue your deliberations.

**Authority**: ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL CASES), NO. 2.8