UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-22500-CIV-ALTONAGA/McALILEY

JONATHAN LORD, M.D.,

    **Plaintiff,**

v.

UNIVERSITY OF MIAMI,

    **Defendant.**

_____/

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S SUGGESTION THAT DEFENDANT HAS "OPENED THE DOOR"**

Defendant, University of Miami (the "University"), hereby responds to the Trial Brief (D.E. 212) filed by Plaintiff, in which Plaintiff argues that he should be permitted to (1) illicit testimony from Dr. Jennifer McCafferty-Fernandez regarding the University's alleged retaliation against her and (2) introduce evidence regarding the government's investigation into this matter and the later settlement of the False Claims Act claims. Neither of Plaintiff's requests is supported by the evidence or applicable law.

To begin, there is absolutely no evidence that the University retaliated against Dr. McCafferty-Fernandez. In November 2013 - - approximately <u>11 months</u> after Dr. McCafferty-Fernandez drafted and circulated her memorandum summarizing TMG's preliminary findings - - Dr. McCafferty-Fernandez was reassigned from her role as Chief Medical Compliance Officer to the role of Assistant Provost.[1] In her deposition, Dr. McCafferty-Fernandez expressly was asked

---

[1] Dr. McCafferty-Fernandez testified that, when she was hired by the University in 2007, she considered both a compliance position and a provost/academic position. In fact, she was working in the Provost's Office when Plaintiff appointed her as Chief Medical Compliance Officer in March 2012.

by Plaintiff's counsel whether her reassignment was a "promotion or a demotion." (D.E. 140-13, McCafferty Depo. 169:6-11.) She responded that it was a significant scope change, which she characterized as a "lateral move." (*Id.*) Given the opportunity to call the reassignment a demotion, she chose not to do so. Dr. McCafferty-Fernandez's salary, benefits and seniority were not changed or negatively impacted. In sum, the suggestion that Dr. McCafferty-Fernandez was retaliated against simply is unsupported.

Further, there is no dispute that Dr. McCafferty-Fernandez was reassigned because of the University's determination that she displayed poor judgment by meeting with representatives from the U.S. Attorney's Office without first advising the University that she had been contacted by that Office and, instead, engaging private counsel for herself (again, without the University's knowledge). During trial (at approximately 4:35 p.m. on September 23, 2022), Dr. McCafferty-Fernandez testified that the University has a policy <u>requiring</u> employees to notify the University (*e.g.*, General Counsel's Office) when contacted by the government about something related to the University and/or their work. She explained that Dr. Phillip Ruiz was reassigned because of a violation of this policy. Given that Dr. McCafferty-Fernandez admittedly violated this policy, any suggestion of retaliation is unfounded. *See Garcia v. DS Waters of Am., Inc.*, 372 Fed. Appx. 925, 927 (11th Cir. 2010) ("Because [the plaintiff] has admitted in his deposition that at least two of the legitimate non-discriminatory reasons for firing him were accurate, he has failed to rebut [the defendant's] nondiscriminatory reason."); *Rose v. Wal-Mart Stores E., Inc.*, 631 Fed. Appx. 796, 799 (11th Cir. 2015) (where employee admits to having engaged in some misconduct, he cannot prove pretext).

Not only is the suggestion that Dr. McCafferty-Fernandez was the victim of retaliation not supported factually, it also is not supported legally. Plaintiff appears to want to rely on Dr.

2

McCafferty-Fernandez's reassignment as "me too" evidence demonstrating the University's propensity to retaliate. But that argument ignores the fact that President Shalala (the decisionmaker with respect to Plaintiff's termination) <u>was not</u> involved with the decision to reassign Dr. McCafferty-Fernandez. "[E]vidence of discrimination perpetrated by anyone other than [President Shalala], the decision-maker, is irrelevant." *Hughes v. City of Lake City*, No. 3:12-CV-158-J-32JBT, 2015 WL 846543, at *3 (M.D. Fla. Feb. 26, 2015) (citing *Jackson v. United Parcel Serv., Inc.*, 593 Fed. Appx. 871, 877 (11th Cir. 2014) (finding irrelevant any evidence of "me too" complaints of discrimination and retaliation committed by a former supervisor, since they did not bear on the intent of the relevant decision-maker)). That is in accord with long-standing precedent that, in a retaliation case, "reality as it exists outside of the decision maker's head" is irrelevant. *Giraldo v. Miami Dade Coll.*, 739 Fed. Appx. 572, 574 (11th Cir. 2018) (quoting *Alvarez v. Royal Atlantic Developers*, 610 F.3d 1253, 1266 (11th Cir. 2010)). Without President Shalala's involvement in Dr. McCafferty-Fernandez's reassignment, the proffered evidence has no probative value in showing her alleged propensity to retaliate.

In any event, the alleged "me too" evidence actually supports the University's position. Other employees (like Dean Goldschmidt and Dr. McCafferty-Fernandez) shared the same TMG preliminary findings with President Shalala - - in writing - - at the same time as Plaintiff but were not terminated. Said another way, if President Shalala had retaliatory animus, every employee who raised these concerns to her would have been fired. That Plaintiff's supervisor (Dean Goldschmidt) and subordinate (Dr. McCafferty-Fernandez) remained employed for engaging in the same alleged protected activity as Plaintiff undermines any claim of retaliation. *See Hamza v. Saks Fifth Ave., Inc.*, No. 07 CIV. 5974 (FPS), 2012 WL 13036200, at *6 (S.D.N.Y. Sept. 26, 2012) ("if others who engaged in the same protected activity are not met with similar adverse employment actions,

3

such evidence is highly probative of non-retaliatory motivation") (citing *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)), *aff'd*, 533 Fed. Appx. 34 (2d Cir. 2013).[2]

In sum, Plaintiff will not suffer any prejudice by excluding evidence regarding Dr. McCafferty-Fernandez's lateral reassignment, as the evidence is not probative of any issue in this case. By contrast, the University will be unfairly prejudiced, as it would open the door to the very issues that the Court previously and properly excluded pre-trial: evidence regarding the government's investigation into Plaintiff's FCA claims and the settlement of those claims. That settlement - - which was finalized years after Plaintiff separated from the University - - occurred with an express disclaimer of liability by the University. (D.E. 95-1 at 4.) As the Court's Order on the parties' cross-motions in *limine* makes clear:

> Defendant's Motion to exclude mention of Plaintiff's underlying qui tam claims, the Government's investigation of those claims, and the ultimate settlement of those claims is GRANTED in part and DENIED in part. The parties shall confer and then present to the Court a reason for the nine-year delay in this case and the seal that will be offered to the jury. ***No further mention of the Government's investigation and settlement of the qui tam lawsuit — other than references to the case being sealed and its effect on Plaintiff's deposition answers in his divorce case — may be offered to the jury unless Defendant opens the door.***

(D.E. 176 at 1-2) (emphasis added). The University has not opened the door and, instead, has exercised extreme care and caution in not doing so. Contrary to Plaintiff's arguments in his Trial Brief, the University carefully has respected the Court's pre-trial ruling and not elicited any evidence/testimony regarding the results of the assessment conducted by Compliance Concepts

---

[2]  Similarly, the fact that other high-ranking officials (like Dr. Sheri Keitz, Lee Phillips and Nelson Weichold) were terminated/demoted around the same time as Plaintiff but had no involvement with the TMG assessment further supports the University's legitimate, non-pretextual justification for terminating Plaintiff. The evidence clearly shows that, in response to faculty outcry, the University made significant changes to leadership having nothing to do with discrimination/retaliation.

4

(the independent third-party reviewer that was engaged by the University after the TMG assessment was transferred to Internal Audit).

The results of the Compliance Concepts assessment demonstrated that the University had not engaged in any improper billing and that the allegations against the IML were unfounded. However, the University understands that bringing forth this information would "open the door" to Plaintiff introducing evidence of the subsequent government investigation/settlement (in which, without admitting liability, the University agreed to pay $22 million to resolve those claims, *see* D.E. 95-1 at 4). Accordingly, the University carefully has avoided that subject area. The University, however, should be able to rebut Plaintiff's demonstrably-false accusation that the decision to transfer oversight of the assessment to Internal Audit was part of an effort to "sweep it under the rug" by describing the function of Internal Audit and noting that Internal Audit decided not to continue the assessment by TMG and immediately engaged an independent third party to continue the review. Said another way, there is a substantial difference between reporting the results of the Compliance Concepts review (which were not released until July 2013, approximately six-to-seven months after the termination decision at issue)[3] and simply mentioning that another company was hired in early 2013 to continue the review (a decision that was made in the same timeframe as the termination decision at issue).

It is somewhat ironic for Plaintiff to accuse the University of "opening the door" when *Plaintiff* is the only party to have violated the Court's pre-trial ruling by discussing matters expressly excluded by the Court. Plaintiff gratuitously and improperly testified about the

---

[3]  That was the topic of discussion during the Pre-Trial Conference, at which the Court ruled on the University's motion in *limine*. (D.E. 212-1 at 9.)

involvement of the U.S. Attorneys' office in this matter.[4] Given that it is Plaintiff - - not the University - - who has opened the door, evidence regarding the government's investigation and the settlement should remain excluded from trial.

Respectfully submitted,

**ISICOFF RAGATZ**
601 Brickell Key Drive, Suite 750
Miami, Florida 33131
Tel: (305) 373-3232
Fax: (305) 373-3233

By: /s/ Christopher M. Yannuzzi
Eric D. Isicoff
Florida Bar No. 372201
Isicoff@irlaw.com
Teresa Ragatz
Florida Bar No. 545170
Ragatz@irlaw.com
Christopher M. Yannuzzi
Florida Bar No. 92166
Yannuzzi@irlaw.com

---

[4] The University immediately moved to strike the testimony and for a mistrial. The Court granted the former motion and denied the latter motion.

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via CM/ECF this 26th day of September, 2022, upon the following:

Jeffrey H. Sloman
Jorge A. Perez Santiago
Jennifer M. Hernandez
Stumphauzer Foslid Sloman Ross & Kolaya, PLLC
Two South Biscayne Boulevard, Suite 1600
Miami, Florida 33131
Telephone: (305) 614-1400
Facsimile: (305) 614-1425
E-mail: jsloman@sfslaw.com
E-mail: jperezsantiago@sfslaw.com
E-mail: jhernandez@sfslaw.com

                                                   By: /s/ Christopher M. Yannuzzi
                                                         Christopher M. Yannuzzi