UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-22500-CIV-ALTONAGA/McALILEY

JONATHAN LORD, M.D.,

      **Plaintiff,**

v.

UNIVERSITY OF MIAMI,

      **Defendant.**

_____/

## JOINT NOTICE OF FILING JURY INSTRUCTIONS

      Plaintiff, Jonathan Lord, M.D. ("Dr. Lord"), and Defendant, University of Miami (the "University"), by and through their undersigned counsel and pursuant to the Court's Order following the charge conference dated September 15, 2022, respectfully submit the Jury Instructions, attached hereto.

Respectfully submitted on September 27, 2022,

<table>
<tr>
<td>

**STUMPHAUZER FOSLID SLOMAN & KOLAYA, PLLC**
Two South Biscayne Boulevard, Suite 1600
Miami, Florida 33131
Tel.: (305) 614-1400
Fax: (305) 614-1425

By: /s/ Jeffrey H. Sloman
    Jeffrey H. Sloman
    Florida Bar No. 378879
    jsloman@sfslaw.com
    Jorge A. Perez Santiago
    Florida Bar No. 91915
    jperezsantiago@sfslaw.com
    Jennifer M. Hernandez
    Florida Bar No. 1018836
    jhernandez@sfslaw.com

*Counsel for Plaintiff, Dr. Jonathan Lord*

</td>
<td>

**ISICOFF RAGATZ**
601 Brickell Key Drive, Suite 750
Miami, Florida 33131
Tel.: (305) 373-3232
Fax: (305) 373-3233

By: /s/ Christopher M. Yannuzzi
    Eric D. Isicoff
    Florida Bar No. 372201
    Isicoff@irlaw.com
    Teresa Ragatz
    Florida Bar No. 545170
    Ragatz@irlaw.com
    Christopher M. Yannuzzi
    Florida Bar No. 92166
    Yannuzzi@irlaw.com

*Counsel for Defendant, University of Miami*

</td>
</tr>
</table>

## 1.1 General Preliminary Instruction

Members of the Jury:

Now that you've been sworn, I need to explain some basic principles about a civil trial and your duty as jurors. These are preliminary instructions. I'll give you more detailed instructions at the end of the trial.

The jury's duty:

It's your duty to listen to the evidence, decide what happened, and apply the law to the facts. It's my job to provide you with the law you must apply – and you must follow the law even if you disagree with it.

What is evidence:

You must decide the case on only the evidence presented in the courtroom. Evidence comes in many forms. It can be testimony about what someone saw, heard, or smelled. It can be an exhibit or a photograph. It can be someone's opinion.

Some evidence may prove a fact indirectly. Let's say a witness saw wet grass outside and people walking into the courthouse carrying wet umbrellas. This may be indirect evidence that it rained, even though the witness didn't personally see it rain. Indirect evidence like this is also called "circumstantial evidence" – simply a chain of circumstances that likely proves a fact.

As far as the law is concerned, it makes no difference whether evidence is direct or indirect. You may choose to believe or disbelieve either kind. Your job is to give each piece of evidence whatever weight you think it deserves.

What is not evidence:

During the trial, you'll hear certain things that are not evidence and you must not consider them.

First, the lawyers' statements and arguments aren't evidence. In their opening statements and closing arguments, the lawyers will discuss the case. Their remarks may help you follow each side's arguments and presentation of evidence. But the remarks themselves aren't evidence and shouldn't play a role in your deliberations.

Second, the lawyers' questions and objections aren't evidence. Only the witnesses' answers are evidence. Don't decide that something is true just because a lawyer's question suggests that it is. For example, a lawyer may ask a witness, "You saw Mr. Jones hit his sister, didn't you?" That question is not evidence of what the witness saw or what Mr. Jones did – unless the witness agrees with it.

There are rules of evidence that control what the court can receive into evidence. When a lawyer asks a witness a question or presents an exhibit, the opposing lawyer may object if he or she thinks the rules of evidence don't permit it. If I overrule the objection, then the witness may answer the question or the court

2

may receive the exhibit. If I sustain the objection, then the witness cannot answer the question, and the court cannot receive the exhibit. When I sustain an objection to a question, you must ignore the question and not guess what the answer might have been.

Sometimes I may disallow evidence – this is also called "striking" evidence – and order you to disregard or ignore it. That means that you must not consider that evidence when you are deciding the case.

I may allow some evidence for only a limited purpose. When I instruct you that I have admitted an item of evidence for a limited purpose, you must consider it for only that purpose and no other.

Credibility of witnesses:

To reach a verdict, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. When considering a witness's testimony, you may take into account:

- the witness's opportunity and ability to see, hear, or know the things the witness is testifying about;
- the witness's memory;
- the witness's manner while testifying;
- any interest the witness has in the outcome of the case;
- any bias or prejudice the witness may have;
- any other evidence that contradicts the witness's testimony;
- the reasonableness of the witness's testimony in light of all the evidence; and
- any other factors affecting believability.

3

At the end of the trial, I'll give you additional guidelines for determining a witness's credibility.

Description of the case:

This is a civil case. To help you follow the evidence, I'll summarize the parties' positions. The Plaintiff, Dr. Jonathan Lord, claims the Defendant, University of Miami, terminated his employment in retaliation for complaining about alleged Medicare fraud and/or taking steps to stop the University from violating the False Claims Act.

The University of Miami denies those claims and contends that it terminated Dr. Lord's employment for legitimate, non-retaliatory reasons regarding his work performance.

Burden of proof:

Dr. Lord has the burden of proving his case by what the law calls a "preponderance of the evidence." That means Dr. Lord must prove that, in light of all the evidence, what he claims is more likely true than not. So, if you could put the evidence favoring Dr. Lord and the evidence favoring the University of Miami on opposite sides of balancing scales, Dr. Lord needs to make the scales tip to his side. If Dr. Lord fails to meet this burden, you must find in favor of University of Miami.

To decide whether any fact has been proved by a preponderance of the evidence, you may – unless I instruct you otherwise – consider the testimony of all witnesses, regardless of who called them, and all exhibits that the court allowed, regardless of who produced them. After considering all the evidence, if you decide a claim or fact is more likely true than not, then the claim or fact has been proved by a preponderance of the evidence.

On certain issues, called "affirmative defenses," the University of Miami has the burden of proving the elements of a defense by a preponderance of the evidence. I'll instruct you on the facts the University of Miami must prove for any affirmative defense. After considering all the evidence, if you decide that the University of Miami has successfully proven that the required facts are more likely true than not, the affirmative defense is proved.

Conduct of the jury:

While serving on the jury, you may not talk with anyone about anything related to the case. You may tell people that you're a juror and give them information about when you must be in court. But you must not discuss anything about the case itself with anyone.

You shouldn't even talk about the case with each other until you begin your deliberations. You want to make sure you've heard everything – all the evidence,

5

the lawyers' closing arguments, and my instructions on the law – before you begin deliberating. You should keep an open mind until the end of the trial. Premature discussions may lead to a premature decision.

In this age of technology, I want to emphasize that in addition to not talking face-to-face with anyone about the case, you must not communicate with anyone about the case by any other means.  This includes e-mails, text messages, phone calls, and the Internet, including social-networking websites and apps such as Facebook, Instagram, Snapchat, YouTube, and Twitter.  You may not use any similar technology of social media, even if I have not specifically mentioned it here.

You must not provide any information about the case to anyone by any means whatsoever, and that includes posting information about the case, or what you are doing in the case, on any device or Internet site, including blogs, chat rooms, social websites, or any other means.

You also shouldn't Google or search online or offline for any information about the case, the parties, or the law. Don't read or listen to the news about this case, visit any places related to this case, or research any fact, issue, or law related to this case. The law forbids the jurors to talk with anyone else about the case and forbids anyone else to talk to the jurors about it. It's very important that you understand why these rules exist and why they're so important. You must base your

6

decision only on the testimony and other evidence presented in the courtroom. It is not fair to the parties if you base your decision in any way on information you acquire outside the courtroom. For example, the law often uses words and phrases in special ways, so it's important that any definitions you hear come only from me and not from any other source. Only you jurors can decide a verdict in this case. The law sees only you as fair, and only you have promised to be fair – no one else is so qualified.

<u>Taking notes</u>:

If you wish, you may take notes to help you remember what the witnesses said. If you do take notes, please don't share them with anyone until you go to the jury room to decide the case. Don't let note-taking distract you from carefully listening to and observing the witnesses. When you leave the courtroom, you should leave your notes hidden from view in the jury room.

Whether or not you take notes, you should rely on your own memory of the testimony. Your notes are there only to help your memory. They're not entitled to greater weight than your memory or impression about the testimony.

<u>Course of the trial</u>:

Let's walk through the trial. First, each side may make an opening statement, but they don't have to. Remember, an opening statement isn't evidence, and it's not supposed to be argumentative; it's just an outline of what that party intends to prove.

Next, Dr. Lord will present his witnesses and ask them questions. After Dr. Lord questions the witness, the University of Miami may ask the witness questions – this is called "cross-examining" the witness. Then the University of Miami will present its witnesses, and Dr. Lord may cross-examine them. You should base your decision on all the evidence, regardless of which party presented it.

After all the evidence is in, the parties' lawyers will present their closing arguments to summarize and interpret the evidence for you, and then I'll give you instructions on the law.

You'll then go to the jury room to deliberate.

### 1.4 Jury Questions

During this trial, you may submit questions to a witness after the lawyers have finished their own questioning. Here is how the procedure works: After each witness has testified, and the lawyers have asked all of their questions, I'll ask if any of you have questions. If you have a question, write it down and give it to the court staff.

You may submit a question for a witness only to clarify an answer or to help you understand the evidence. Our experience with juror questions indicates that jurors rarely have more than a few questions for any one witness, and there may be no questions at all for some witnesses.

If you submit a question, the court staff will give it to me and I'll share your questions with the lawyers in the case. If the rules of evidence allow your question, one of the lawyers or I will read your question to the witness. I may modify the form or phrasing of a question so that it's allowed under the evidence rules. Sometimes, I may not allow the questions to be read to the witness, either because the law does not allow it or because another witness is in a better position to answer the question. If I can't allow the witness to answer a question, you must not draw any conclusions from that fact or speculate on what the answer might have been.

Here are several important things to keep in mind about your questions for the witnesses:

· First, you must submit all questions in writing. Please don't ask any questions aloud.

· Second, the court can't re-call witnesses to the stand for additional juror questions. If you have a question for a particular witness, you must submit it when I ask.

· Finally, because you should remain neutral and open-minded throughout the trial, you should phrase your questions in a way that doesn't express an opinion about the case or a witness. You must keep an open mind until you've heard all the evidence, the closing arguments, and my final instructions on the law.

**1.5 Interim Statements**

At times during the trial, the lawyers will address you. You'll soon hear the lawyers' opening statements, and at the trial's conclusion you'll hear their closing arguments. Sometimes the lawyers may choose to make short statements to you, either to preview upcoming evidence or to summarize and highlight evidence they just presented. These statements and arguments are the lawyers' views of the evidence or of what they anticipate the evidence will be. They are not evidence themselves.

**2.1 Stipulations**

Sometimes the parties have agreed that certain facts are true. This agreement is called a stipulation. You must treat these facts as proved for this case.

## 2.2 Use of Depositions

A deposition is a witness's sworn testimony that is taken before the trial. During a deposition, the witness is under oath and swears to tell the truth, and the lawyers for each party may ask questions. A court reporter is present and records the questions and answers.

The deposition of [name of witness], taken on [date], [is about to be/has been] presented to you [by a video/by reading the transcript]. Deposition testimony is entitled to the same consideration as live testimony, and you must judge it in the same way as if the witness was testifying in court.

Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

**2.4 Interim Statements**

At the beginning of the trial, I told you that the lawyers might make short statements previewing upcoming evidence or summarizing and highlighting evidence that they have already presented before. Right now, [Mr./Ms.] [name of attorney] is going to make a short statement. Please remember that the statement you are about to hear – like all statements by the lawyers – is [Mr./Ms.] [name of attorney]'s view of the evidence or of what [he/she] anticipates the evidence will be, but isn't itself evidence.

**2.5 Judicial Notice**

The rules of evidence allow me to accept facts that no one can reasonably dispute. The law calls this "judicial notice." I've accepted [state the fact that the court has judicially noticed] as proved even though no one introduced evidence to prove it. You must accept it as true for this case.

## 2.6 Use of Interrogatories

[You'll now hear/You've heard] answers that [name of party] gave in response to written questions the other side submitted. The questions are called "interrogatories." Before the trial, [name of party] gave the answers in writing while under oath.

You must consider [name of party]'s answers to as though [name of party] gave the answers on the witness stand.

**2.7 In-Trial Instructions on News Coverage**

Reports about this trial may appear in the media. The reporters may not have heard all the testimony as you have, may be getting information from people who are not under oath and subject to cross examination, may emphasize an unimportant point, or may simply be wrong.

You must not read, listen to, or watch anything about this trial. It would violate your oath as a juror to decide this case on anything other than the evidence presented at trial and on your own common sense. You must decide this case exclusively on the evidence you receive here in court.

**3.1 Introduction**

<u>COURT'S INSTRUCTIONS TO THE JURY</u>

Members of the jury:

It's my duty to instruct you on the rules of law that you must use in deciding this case.

When I have finished you will go to the jury room and begin your discussions, sometimes called deliberations.

### 3.2.2 The Duty to Follow Instructions – Corporate Party Involved

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company.

### 3.3 Consideration of Direct and Circumstantial Evidence; Argument of Counsel; Comments by the Court

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But, anything the lawyers say is not evidence and isn't binding on you.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There's no legal difference in the weight you may give to either direct or circumstantial evidence.

### 3.4 Credibility of Witnesses

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

1. Did the witness impress you as one who was telling the truth?

2. Did the witness have any particular reason not to tell the truth?

3. Did the witness have a personal interest in the outcome of the case?

4. Did the witness seem to have a good memory?

5. Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

6. Did the witness appear to understand the questions clearly and answer them directly?

7. Did the witness's testimony differ from other testimony or other evidence?

21

### 3.5.1 Impeachment of Witnesses Because of Inconsistent Statements

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

### 3.6.2 Expert Witness – When Expert Fees Represent a Significant Portion of the Witness's Income

When scientific, technical or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter.

But that doesn't mean you must accept the witness's opinion. As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion.

When a witness is being paid for reviewing and testifying concerning the evidence, you may consider the possibility of bias and should view with caution the testimony of such witness where court testimony is given with regularity and represents a significant portion of the witness's income.

### 3.7.1 Responsibility for Proof – Plaintiff's Claim[s], Cross Claims, Counterclaims – Preponderance of the Evidence

In this case it is the responsibility of Dr. Lord to prove every essential part of his claim by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that Dr. Lord's claim is more likely true than not true.

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against Dr. Lord.

In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of Dr. Lord's claim by a preponderance of the evidence, you should find for the University of Miami as to that claim.

24

### 3.7.2 Responsibility for Proof – Affirmative Defense
###    Preponderance of the Evidence

In this case, the University of Miami asserts the affirmative defense of failure to mitigate damages. Even if Dr. Lord proves his claim by a preponderance of the evidence, the University of Miami can prevail in this case and/or reduce any damages awarded to Dr. Lord if it proves its affirmative defense by a preponderance of the evidence.

I caution you that the University of Miami does not have to disprove Dr. Lord's claim, but if the University of Miami raises an affirmative defense, the only way it can prevail on that specific defense is if it proves that defense by a preponderance of the evidence.

### 3.8.1 Duty to Deliberate When Only the Plaintiff Claims Damages

Of course, the fact that I have given you instructions concerning the issue of Dr. Lord's damages should not be interpreted in any way as an indication that I believe that Dr. Lord should, or should not, prevail in this case.

Your verdict must be unanimous – in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you're judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case.

## 3.9 Election of Foreperson Explanation of Verdict Form[s]

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

[Explain verdict]

Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign it and date it. Then you'll return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I'll respond as promptly as possible – either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted one way or the other at that time. That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.

27

**4.22 False Claims Act Retaliation**

In this case, Dr. Lord claims that the University of Miami retaliated against him because he took steps to enforce his lawful rights under the False Claims Act, which prohibits an employer from taking retaliatory action against an employee because the employee has asserted rights or made complaints under that law.

Dr. Lord claims that the University of Miami terminated his employment in retaliation for complaining about alleged Medicare fraud and/or taking steps to stop the University from violating the False Claims Act.

The University of Miami denies Dr. Lord's claim and asserts that the University of Miami terminated Dr. Lord's employment for legitimate, nonretaliatory reasons regarding his work performance.

To succeed on his claim, Dr. Lord must prove each of the following facts by a preponderance of the evidence:

First:   Dr. Lord engaged in a protected activity; and

Second: The University of Miami terminated Dr. Lord because of Dr. Lord's protected activity.

In the verdict form that I will explain in a moment, you will be asked to answer questions about these factual issues.

For the first element, Dr. Lord claims that he engaged in protected activity by raising complaints about alleged Medicare fraud and/or taking steps to stop the

University from violating the False Claims Act. That action is "protected activity" if Dr. Lord engaged in such conduct in furtherance of a False Claims Act lawsuit when such lawsuit was a "distinct possibility" or Dr. Lord attempted to stop a violation of the False Claims Act based on a good-faith, objectively-reasonable belief that violations had occurred.

Dr. Lord had a "good faith" belief if he honestly believed that the University was engaged in such activities. To establish "good faith," however, it is insufficient for Dr. Lord merely to allege that his belief in this regard was honest and bona fide; the allegations and the record must also establish that the belief, though perhaps mistaken, was objectively reasonable. Dr. Lord had a "reasonable" belief if a reasonable person would, under the circumstances, believe that the University of Miami was engaged in such activities. Dr. Lord does not have to prove that the University of Miami actually was engaged in such activities. But he must prove that he had a good-faith, reasonable belief that the University of Miami did so. A distinct, rather than a mere, possibility of a potential False Claims Act violation is required.

For the second element, if you find that Dr. Lord engaged in protected activity, you must decide whether the University of Miami terminated his employment because of Dr. Lord's protected activity. Put another way, you must decide whether

Dr. Lord's protected activity was the main reason for the University of Miami's termination decision.

To determine that the University of Miami terminated Dr. Lord because of his protected activity, you must decide that the University of Miami would not have taken the action had Dr. Lord not engaged in the protected activity but everything else had been the same.

The University of Miami claims that it did not terminate Dr. Lord's employment because Dr. Lord complained about alleged Medicare fraud and/or took steps to stop the University of Miami from violating the False Claims Act and that it took the action for legitimate, nonretaliatory reasons regarding his work performance. An employer may not take an adverse action against an employee because of the employee's protected activity. But an employer may terminate an employee for any other reason, good or bad, fair or unfair. If you believe the University of Miami's reasons for its decision, and you find that the University of Miami did not make its decision because of Dr. Lord's protected activity, you must not second guess that decision, and you must not substitute your own judgment for the University's judgment – even if you do not agree with it.

As I previously instructed you, a corporation like the University of Miami may act only through its employees. Dr. Lord and the University of Miami agree

30

that University President Donna Shalala made the decision to terminate Dr. Lord's employment from the University. Therefore, as part of your deliberations, you must decide (1) whether President Shalala knew that Dr. Lord had engaged in protected activity before she made the decision to terminate Dr. Lord's employment and (2) whether she terminated Dr. Lord's employment because of his protected activity.

As I have explained, Dr. Lord has the burden to prove that the University of Miami's decision to terminate his employment was because of Dr. Lord's protected activity. I have explained to you that evidence can be direct or circumstantial. To decide whether the University of Miami's termination decision was because of Dr. Lord's protected activity, you may consider the circumstances of the University of Miami's decision. For example, you may consider whether you believe the reason that the University of Miami gave for the decision. If you do not believe the reasons that it gave for the decision, you may consider whether the reasons were so unbelievable that they were a cover-up to hide the true retaliatory reasons for the decision.

**4.5 Damages**

If you find that Dr. Lord has proven, by a preponderance of the evidence, that the University of Miami terminated him because of his protected activity, then the False Claims Act states that Dr. Lord is entitled to all relief necessary to make him whole. Such relief shall include *2 times the amount of* back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination.

When considering the issue of Dr. Lord's back pay, you should determine what amount, if any, has been proven by Dr. Lord by a preponderance of the evidence as full, just and reasonable compensation for all of Dr. Lord's back pay, no more and no less. Back pay refers to the amount of wages Dr. Lord should have received but did not actually receive. Back pay is not allowed as a punishment and must not be imposed or increased to penalize the University of Miami. Also, back pay must not be based on speculation or guesswork.

You should consider the following elements to determine back pay, to the extent you find that Dr. Lord has proved them by a preponderance of the evidence, and no others: net lost wages and benefits from the date of termination to the date of your verdict. To determine the amount of Dr. Lord's net lost wages and benefits, you should consider evidence of the actual wages he lost and the monetary value of any

benefits he lost. Benefits include vacation, sick pay, insurance, and retirement benefits.

In addition, Dr. Lord claims entitlement to special damages resulting from his termination, including the lost value of stock and option sales and non-economic damages for emotional distress and public humiliation. When considering the issue of Dr. Lord's entitlement to special damages, you should determine what amount, if any, has been proven by Dr. Lord by a preponderance of the evidence as full, just and reasonable compensation for all of Dr. Lord's special damages, no more and no less. Special damages are not allowed as a punishment and must not be imposed or increased to penalize the University of Miami. Also, special damages must not be based on speculation or guesswork.

If you find that the University of Miami's acts were the proximate cause of special damages that Dr. Lord sustained from the premature sales of certain stocks and options, you must determine the amount of such damages.

To determine whether and how much Dr. Lord should recover for emotional distress and public humiliation, you may consider both the mental and physical aspects of injury – tangible and intangible. Dr. Lord does not have to introduce evidence of a monetary value for intangible things like emotional distress and humiliation. You will determine what amount fairly compensates him for his claim.

There is no exact standard to apply, but the award should be fair in light of the evidence.

You are instructed that any person who claims damages as a result of an alleged wrongful act on the part of another has a duty under the law to "mitigate" those damages. For purposes of this case, the duty to mitigate damages requires Dr. Lord to be reasonably diligent in seeking substantially equivalent employment to the position he held with the University of Miami. To prove that Dr. Lord failed to mitigate damages, the University of Miami must prove by a preponderance of the evidence that: (1) work comparable to the position Dr. Lord held with the University of Miami was available, and (2) Dr. Lord did not make reasonably diligent efforts to obtain it. If, however, the University of Miami shows that Dr. Lord did not make reasonable efforts to obtain any work, then the University of Miami does not have to prove that comparable work was available.

If you find that the University of Miami proved by a preponderance of the evidence that Dr. Lord failed to mitigate damages, then you should reduce the amount of Dr. Lord's damages by the amount that could have been reasonably realized if Dr. Lord had taken advantage of an opportunity for substantially equivalent employment.

**2.8 Civil *Allen* Charge**

Members of the jury:

I'm going to ask you to continue your deliberations to reach a verdict. Please consider the following comments.

This is an important case. The trial has been expensive in terms of time, effort, money, and emotional strain to both the plaintiff and the defendant. If you fail to agree on a verdict, the case remains open and may have to be tried again. A second trial would be costly to both sides, and there's no reason to believe either side can try it again better or more exhaustively than they have tried it before you.

Any future jury would be selected in the same manner and from the same source as you. There's no reason to believe that the case could ever be submitted to a jury of people more conscientious, more impartial, or more competent to decide it – or that either side could produce more or clearer evidence.

It's your duty to consult with one another and to deliberate with a view to reaching an agreement – if you can do it without violating your individual judgment. You must not give up your honest beliefs about the evidence's weight or effect solely because of other jurors' opinions or just to return a verdict. You must each decide the case for yourself – but only after you consider the evidence with your fellow jurors.

You shouldn't hesitate to reexamine your own views and change your opinion if you become convinced it's wrong. To bring your minds to a unanimous result, you must openly and frankly examine the questions submitted to you with proper regard for the opinions of others and with a willingness to reexamine your own views.

If a substantial majority of you is for a verdict for one party, each of you who holds a different position ought to consider whether your position is reasonable. It may not be reasonable since it makes so little impression on the minds of your fellow jurors – who bear the same responsibility, serve under the same oath, and have heard the same evidence.

You may conduct your deliberations as you choose, but I suggest that you now carefully reexamine and reconsider all the evidence in light of the court's instructions on the law. You may take all the time that you need.

I remind you that in your deliberations, you are to consider the court's instructions as a whole. You shouldn't single out any part of any instructions including this one, and ignore others.

You may now return to the jury room and continue your deliberations.

**Special Instruction – <u>Miami Herald</u> Articles**

During the trial, titles and/or headlines of redacted <u>Miami Herald</u> articles were admitted into evidence for the limited purpose of showing that the articles existed - - not for the truth of the information in the title and/or headline. You are instructed to consider this evidence for this limited purpose and not for any other.

You may consider the existence of these articles in determining what, if any, effect they had on Dr. Lord's emotional distress and reputational harm and his ability to mitigate damages.