UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-22500-CIV-ALTONAGA

JONATHAN LORD, M.D.,

     Plaintiff,

v.

UNIVERSITY OF MIAMI,

     Defendant.

_____/

## ORDER

**THIS CAUSE** came before the Court on Plaintiff Jonathan Lord, M.D.'s Amended Renewed Motion for Judgment as a Matter of Law and/or for New Trial [ECF No. 252] filed on November 18, 2022. Defendant University of Miami filed a Response [ECF No. 257], to which Plaintiff filed a Reply [ECF No. 258].[1] The Court has carefully considered the parties' submissions, the record, and applicable law.

## I.    BACKGROUND

The Court assumes the reader's familiarity with this case. Suffice it to say that at the conclusion of the trial on Plaintiff's False Claims Act ("FCA") retaliation claim, the jury returned a verdict in favor of Defendant. (*See generally* Jury Verdict [ECF No. 235]). The jury found: (1) Plaintiff "engaged in 'protected activity' prior to [the University President, Dr. Donna Shalala's] decision to terminate his employment[,]" (2) "all of [Plaintiff's] 'protected activity' was within the scope of his required job duties as Chief Compliance Officer for [Defendant][,]" (3) "[Dr.] Shalala knew about [Plaintiff's] 'protected activity' before she decided to terminate [Plaintiff's]

---

[1] The Court relies on the pagination generated by the Case Management/Electronic Case Files system, which appears in the header on all filings.

employment[,]" (4) but Dr. Shalala did not terminate Plaintiff's "employment with [Defendant] because of his 'protected activity'[.]"   (*Id.* 1–2 (alterations added)).   The jury therefore found Plaintiff was not "entitled to damages." (*Id.* 2).   The Court entered Final Judgment [ECF No. 236] in favor of Defendant on October 4, 2022.   (*Id.*).

In the Amended Renewed Motion, Plaintiff renews his request for judgment as a matter of law initially made under Federal Rule of Civil Procedure 50(a) during trial (*see* Pl.'s Mot. for J. as a Matter of Law at the Close of Evid. [ECF No. 229] (hereinafter "Original Motion")), in part on the grounds that no reasonable juror could find (1) Dr. Shalala did not terminate Plaintiff's employment because of his protected activity, and (2) Plaintiff is not entitled to back pay and interest on back pay.  (*See* Am. Renewed Mot. 5–15).   The Court entered an Order [ECF No. 230] denying the Original Motion on October 3, 2022.   (*See id.*).   Defendant argues the renewed arguments for judgment as a matter of law should be denied for the same reasons the Court denied Plaintiff's Original Motion during trial.  (*See generally* Resp.).   The Court agrees with Defendant.

In addition to these rehashed arguments for judgment as a matter of law, Plaintiff argues he is entitled to a new trial on the grounds that (1) the verdict is contrary to the great weight of the evidence, (2) the Court incorrectly excluded evidence of retaliation, (3) Defendant's closing argument constituted plain error, (4) the but-for causation instruction improperly advised the jury, and (5) all errors in the aggregate support granting a new trial.  (*See* Am. Renewed Mot. 15–20). According to Defendant, these arguments are "foreclosed by applicable law and/or were invited, waived or not preserved by [Plaintiff]."  (Resp. 2 (alteration added)).   Again, Defendant has the better arguments.

## II.    DISCUSSION

**A. Plaintiff is not entitled to judgment as a matter of law.**

Federal Rule of Civil Procedure 50(b) governs renewed motions for judgment as a matter of law:

> Under Rule 50, a party's motion for judgment as a matter of law can be granted at the close of evidence or, if timely renewed, after the jury has returned its verdict, as long as there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party.

*Chaney v. City of Orlando, Fla.*, 483 F.3d 1221, 1227 (11th Cir. 2007) (alteration adopted; quotation marks and citations omitted).  When evaluating a renewed motion for judgment as a matter of law, the Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Tidwell v. Carter Prod.*, 135 F.3d 1422, 1425 (11th Cir. 1998) (quotation marks and citation omitted).  "All evidence and inferences are considered in a light most favorable to the nonmoving party." *Id.* (citation omitted).

In ruling on a renewed motion brought under Rule 50(b), the Court may "(1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct entry of judgment as a matter of law." Fed. R. Civ. P. 50(b).  Rule 50(b) allows a movant to "include an alternative or joint request for a new trial under Rule 59" in any renewed motion for judgment as a matter of law.  *Id.*

*1. A reasonable jury could find Defendant did not terminate Plaintiff's employment because of his protected activity.*

Plaintiff largely repeats the arguments he made in his Original Motion, namely, that no reasonable jury could find Defendant did not terminate Plaintiff's employment because of his

protected activity.  (*See* Am. Renewed Mot. 5–15).  The Court disagrees because Plaintiff has not

shown the evidence was "so one-sided" in his favor.  *Tidwell*, 135 F.3d at 1425 (citation omitted).

The FCA permits plaintiffs to recover for retaliatory actions that are taken "because of

lawful acts done by the employee . . . ."  31 U.S.C. § 3730(h)(1) (alteration added).  The "but-for

causation standard applies to claims under the antiretaliation provision of the False Claims Act [.]"

*Nesbitt v. Candler Cnty.*, 945 F.3d 1355, 1359 (11th Cir. 2020) (alteration added).  Throughout

this proceeding, Plaintiff has taken different positions on the but-for standard he thinks the Court

should apply to his FCA retaliation claim.  In the Original Motion, Plaintiff asserted the standard

would be met if the jury found that the "protected action . . . had a determinative influence on the

outcome of the employer's decision-making process."  (*Id.* 13 (alteration added; quotation marks

and citations omitted)).  Relying on the Supreme Court's decision in *Bostock v. Clayton County,*

*Georgia*, 140 S. Ct. 1731, 1739 (2020), Plaintiff now states there can be "multiple but-for

causes[.]"  (Am. Renewed Mot. 5 (alteration added; quotation marks and citation omitted)).  Even

if Plaintiff is correct that the lower *Bostock* but-for standard applies to FCA cases,[2] he is incorrect

that no reasonable jury could find for Defendant under that standard.

According to Plaintiff, the record shows there was no legally sufficient basis for the jury

to find Defendant did not terminate him because of his protected activity, since Dr. Shalala made

the termination decision on December 21, 2012, the same day she attended a meeting about the

allegations of fraud that were the subject of Plaintiff's protected activity.  (*See id.* 5–7).  Plaintiff

states Defendant failed to "explain the 'coincidences' that occurred on December 21st."  (*Id.* 6).

As a result, the jury was required to infer that the termination and the allegations of fraud were

---

[2] It is unsettled whether the but-for standard from *Bostock* extends to Plaintiff's retaliation claim.  *Bostock*
involved a claim brought under 42 U.S.C. section 2000e–2(a)(1) ("Title VII") for retaliation based on sexual
orientation, 140 S. Ct. at 1739, whereas this is an FCA retaliation case.  That said, Plaintiff's argument fails
under either standard, so the Court need not decide how broadly *Bostock* applies.

"inextricably linked" in Dr. Shalala's mind, and the protected activity was a but-for cause of the termination.  (*Id.* 2).  For reasons discussed, the Court is unpersuaded that the evidence was so one-sided on these facts that the jury was *required* to infer Plaintiff's protected activity caused the termination.

Plaintiff further argues that Defendant failed to show the non-retaliatory reasons for the termination — including the issues surrounding layoffs and morale, the faculty petition and worsening relationship with Jackson Memorial Hospital, and the communication issues with Joe Natoli and Dr. Roger Leblanc — could have caused the termination, "logically or temporally[.]" (*Id.* 15 (alteration added)).  As discussed, Defendant presented enough evidence to support the jury's conclusion that the termination would have occurred even if Plaintiff did not engage in the protected activity.

### a. The jury was not required to infer that the termination occurred because of the protected activity.

To start, Plaintiff is incorrect that the jury was required to infer, based on the proximity of the protected activity to the termination, that his termination occurred because of his protected activity.  The Court is required to draw all reasonable inferences in favor of the non-moving party, Defendant.  *See Tidwell* 135 F.3d at 1425; *Fenner v. Gen. Motors Corp.*, 657 F.2d 647, 650–51 (5th Cir. 1981) ("[A] jury may properly reconstruct a series of events by drawing an inference upon an inference.  The inference relied upon, however, must be reasonable." (alteration added; citation omitted)).  Here, it was reasonable for the jury to decide not to infer that the protected activity caused the termination.

Notably, Plaintiff conceded in his Response in Opposition to Defendant's Motion for Final Summary Judgment [ECF No. 145] that "temporal proximity between the protected activity and the subsequent adverse employment action does not alone suffice to show causation" (*id.* 12 (citing

*Buchanan v. Delta Air Lines, Inc.*, 727 F. App'x 639, 642 (11th Cir. 2018)), and that there were "at minimum [] genuine issues of material fact" related to the inquiry (*id.* (alteration added)). While Plaintiff insists Dr. Shalala failed to "explain the coincidences" that occurred on December 21, he also acknowledges her testimony that she "was doing a lot of things at the same time, that's what college presidents do." (Am. Renewed Mot. 7 (citation and quotation marks omitted)).

Dr. Shalala's explanation for making the two decisions on the same day is not unreasonable. As President of the University of Miami, Dr. Shalala oversaw the entire university system; it is understandable that she would make multiple, unrelated decisions pertaining to Defendant's health system on the same day. Regardless, there was sufficient evidence for the jury to look past the temporal proximity and refuse to infer causation. Without even considering the merits of the non-retaliatory reasons for the termination, a reasonable jury could have credited Dr. Shalala's sworn testimony that she did not terminate Plaintiff because of his protected activity. (*See* Pl.'s Notice of Filing Trial Trs., Ex. 4, Sept. 21, 2022 Tr. [ECF No. 248-4] 104:3–7).[3] In fact, Dr. Shalala and Dean Pascal Goldschmidt had discussed their concerns about Plaintiff's performance "for some period of time" (*id.* 114:16–115:1), and "performance concerns that occur prior to the protected conduct, and which continue after the protected conduct, are strong evidence that the discipline is not causally related to the protected conduct[,]" *Barry v. SunTrust Bank*, No. 1:18-cv-3560, 2020 WL 11191305, at *13 (N.D. Ga. Jan. 31, 2020) (alteration added; citations omitted).

_____

[3] Plaintiff's only direct response to this testimony was to cast doubt on Dr. Shalala's credibility. (*See id.* 200:20–21 ("We literally have to take your word for it, right?")). But, yes, the jury was free to take Dr. Shalala's word for it. *See Ice Portal, Inc. v. VFM Leonardo, Inc.*, No. 09-Civ-60230, 2010 WL 2351463, at *5 (S.D. Fla. June 11, 2010) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." (ellipsis in original; quotation marks and citation omitted)).

**b. A reasonable jury could believe Defendant's proffered reasons for the termination.**

Dr. Shalala also testified extensively about all the non-retaliatory reasons for the termination. (*See* Resp. 5 (citations omitted)). If the termination would have occurred for these reasons regardless of the protected activity, then the protected activity was not a but-for cause. Even after *Bostock*, the but-for test still "directs us to change one thing at a time and see if the outcome changes[]" to find a but-for cause. 140 S. Ct. at 1739 (alteration added). A reasonable jury could find that, regardless of Plaintiff's protected activity, the outcome would not have changed here. *See, e.g.*, *Whatley v. Metro. Atl. Rapid Transit Auth.*, 632 F.2d 1325, 1329 (5th Cir. 1980) (holding that even though appellant engaged in protected activity that occurred in close proximity to the adverse employment action, the jury could have concluded that there was no causal connection because the evidence demonstrated that the dismissal was actually caused by "a culmination of problems growing out of appellant's manner of handling his job, his lack of cooperation within his office, his mismanagement of his staff, his refusal to comply with the terms of his job description, and his refusal to follow instructions from his supervisor" (citation omitted)).

This reasoning is consistent with *Bostock*'s but-for standard. In *Bostock*, the Supreme Court explained that "[o]ften, events have multiple but-for causes. So, for example, if a car accident occurred *both* because the defendant ran a red light *and* because the plaintiff failed to signal his turn at the intersection, we might call each a but-for cause of the collision." 140 S. Ct. at 1739 (alteration added; emphasis in original; citation omitted). In other words, if either the running of the red light or the failure to signal the turn did not occur, then the car accident would not have occurred. *See id.* But if the jury here determined that the termination still would have occurred even absent Plaintiff's protected activity, then the protected activity is not like the running

of the red light or the failure to signal a turn.  *Bostock*'s willingness to entertain the prospect of *multiple* but-for causes does not obviate Plaintiff's burden to show his protected activity was *at least one* but-for cause of the termination.

Plaintiff further contends that, even if the other proffered reasons are relevant, Defendant advanced insufficient evidence for the jury to conclude its proffered non-retaliatory reasons were compelling enough to justify the termination regardless of the protected activity.  (*See* Am. Renewed Mot. 11–15).  This argument merely recounts Plaintiff's disputed factual narrative at trial about the other reasons, and Plaintiff cites no case law suggesting the evidence supporting the proffered non-retaliatory reasons was insufficient as a matter of law.  (*See id.*).  Given the parties' competing factual narratives, Plaintiff fails to satisfy the standard for judgment as a matter of law.  *See Baker v. Welker*, No. 09-Civ-60169, 2010 WL 11520220, at *2 (S.D. Fla. Mar. 12, 2010).

The jury could have justified its decision with evidence that supported the proffered non-retaliatory reasons — such as the Faculty Petition, signed by hundreds of faculty and stating the faculty had "lost confidence" in Plaintiff (Def.'s Notice of Filing Tr. Exs., Ex. JT-9 [ECF No. 238-8] 3); or the climate survey that found morale to be very low at the School of Medicine following Plaintiff's decision to lay off a large number of employees (*see* Def.'s Notice of Filing Tr. Exs., Ex. D-253 [ECF No. 238-59] 3–4).  The jury was entitled to conclude that, even if Plaintiff did not engage in the protected activity, Dr. Shalala still would have decided to terminate him.  Plaintiff's attempt to downplay the importance of the Faculty Petition fails to persuade.  (*See* Am. Renewed Mot. 12).  As Dr. Shalala testified, she "had seen a few petitions before, but not like this."  (Sept. 21, 2022 Tr. 132:5–15, 231:19–232:18).

Further, Plaintiff does not even acknowledge the climate survey.  (*See generally* Am. Renewed Mot.; Reply).  He merely points out that Dr. Shalala "admitted the [F]aculty [P]etition

and morale were not the 'serious issues[.]'" (Am. Renewed Mot. 12 (alterations added)). But Dr. Shalala never directly testified that the Faculty Petition and decline in morale were not serious issues — she merely agreed with Plaintiff's counsel that Plaintiff's problem with communication[4] was the serious issue. (*See* Sept. 21, 2022 Tr. 104:8–11). Indeed, Dr. Shalala testified that "[t]he issue was style, morale, how people were treated, respect for the faculty, respect for the staff." (*Id.* 200:4–6 (alteration added)).[5]

In sum, the evidence was not so overwhelmingly in favor of Plaintiff that a reasonable jury could not have arrived at a verdict for Defendant on the causation issue.

> *2. A reasonable jury could find that Plaintiff is not entitled to back pay and interest on back pay.*

Plaintiff reincorporates his analysis on back pay and interest from the Original Motion. (*See* Am. Renewed Mot. 2 n.3). Since it was reasonable for the jury to conclude that Plaintiff's protected activity did not cause the termination, it was also reasonable for it to conclude that Plaintiff was not entitled to damages.

**B. Plaintiff is not entitled to a new trial.**

Under Federal Rule of Civil Procedure 59(a)(1), the Court may, on a party's motion, "grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." *Id.* (alterations added). A

---

[4] Plaintiff argues that the communication issues could not explain the termination because there is evidence Plaintiff did not "cut off" communications with Natoli. (Am. Renewed Mot. 13). There is evidence that there was, at the very least, a breakdown in communications between Plaintiff and Natoli (*see* Resp. 7–8), which the jury could have credited.

[5] Plaintiff also contends that, temporally, the low morale of the faculty could not have caused the termination because the layoffs that created the low morale occurred well before the termination, and Defendant even promoted Plaintiff after the layoffs. (*See* Am. Renewed Mot. 11–12). As Defendant points out, the low morale continued to exist in December 2012, when Plaintiff was terminated (*see* Ex. D-253 3–6); and Dr. Shalala did not receive the Faculty Petition until that same month (*see* Resp. 6 (citations omitted)).

court's grant of a new trial motion may be predicated on various grounds, including: a finding that a jury's verdict was against the great weight of the evidence, *see Rosenfield v. Wellington Leisure Prods.*, 827 F.2d 1493, 1497–98 (11th Cir. 1987); an evidentiary error, *see Peat, Inc. v. Vanguard Rsch., Inc.*, 378 F.3d 1154, 1162 (11th Cir. 2004); erroneous jury instructions, *see Stuckey v. N. Propane Gas Co.*, 874 F.2d 1563, 1571 (11th Cir. 1989) (citation omitted); misconduct of trial counsel, *see McWhorter v. City of Birmingham*, 906 F.2d 674, 676–78 (11th Cir. 1990); or an amalgamation thereof, *see Deas v. PACCAR, Inc.*, 775 F.2d 1498, 1504 (11th Cir. 1985). "The district court ordinarily should not grant a new trial unless it is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 370 (2d Cir. 1988) (citations omitted).

*1. The verdict was not against the great weight of the evidence.*

Plaintiff has not met the high burden of showing the Court should order a new trial because the verdict was against the great weight of the evidence. *See Ard v. Sw. Forest Indus.*, 849 F.2d 517, 520 (11th Cir. 1988) (citing *Watts v. Great Atl. & Pac. Tea Co., Inc.*, 842 F.2d 307, 310 (11th Cir. 1988)) ("[W]hen considering a motion for new trial, the trial judge may weigh the evidence, but it is proper to grant the motion only if the verdict is against the great, not just the greater, weight of the evidence." (alteration added)). Plaintiff argues that the jury's verdict was against the great weight of the evidence for the same reasons he argues he is entitled to judgment as a matter of law on the causation issue. (*See* Am. Renewed Mot. 15). Consistent with the Court's conclusion that Defendant presented legally sufficient evidence to the jury on causation, the Court is similarly not persuaded that the verdict was against the great weight of the evidence.

*2. The Court did not incorrectly exclude testimony of Dr. Jennifer McCafferty-Fernandez.*

Plaintiff also argues that the Court erred by excluding evidence that Defendant retaliated against Dr. McCafferty-Fernandez. (*See id.* 13–15). A new trial is warranted for an evidentiary error "where the error has caused substantial prejudice to the affected party[.]" *Peat, Inc.*, 378 F.3d at 1162 (alteration added; citations omitted). The Court considers "a number of factors, including the number of errors, the closeness of the factual disputes (i.e., the strength of the evidence on the issues affected by the error), and the prejudicial effect of the evidence at issue." *Id.* None of these factors weighs in favor of a new trial here.

First, the Undersigned is not persuaded she erred in excluding Dr. McCafferty-Fernandez's testimony. The Court continues to find there was no "relevance . . . to Dr. McCafferty[-Fernandez] meeting with the FBI and thereafter going back to the Provost office" and continues to disagree that Defendant "opened the door" to such testimony. (Pl.'s Notice of Filing Trial Trs., Ex. 7, Sept. 27, 2022 Tr. [ECF No. 248-7] 17:5–7 (alteration added)).

Evidence is relevant if it tends to make a fact more or less probable. *See* Fed. R. Evid. 401. Plaintiff admitted he wanted to proffer the retaliation testimony from Dr. McCafferty-Fernandez because it was "relevant to show that she was retaliated against similarly to the way . . . [Plaintiff] was." (Sept. 27, 2022 Tr. 10:16–21 (alterations added)). Again, the testimony is irrelevant. (*See id.* 17:5–9). Plaintiff admitted that Dr. McCafferty-Fernandez would testify she was not demoted but merely transferred laterally (*see id.* 9:6–9) and, as Defendant explained, Dr. McCafferty-Fernandez's transfer and Plaintiff's termination involved two different decision-makers (*see id.* 12:12–19). "[E]vidence of discrimination perpetrated by anyone other than [Dr. Shalala], the decision-maker, is irrelevant." *Hughes v. City of Lake City*, No. 12-Cv-158-J-32, 2015 WL 846543, at *3 (M.D. Fla. Feb. 26, 2015) (alterations added; citing *Jackson v. United Parcel Serv.,*

*Inc.*, 593 F. App'x 871, 877 (11th Cir. 2014) (finding irrelevant any evidence of "me too" complaints of discrimination and retaliation committed by a former supervisor, since they did not bear on the intent of the relevant decision-maker)).

Second, even if the Court did err in excluding Dr. McCafferty-Fernandez's testimony, Plaintiff does not meet his high burden of showing the evidence on the retaliation issue was very close or that he was so substantially prejudiced by the excluded evidence that a new trial is warranted. "[T]he inquiry is always directed to the same central question — how much of an effect did the improperly admitted or excluded evidence have on the verdict?" *Sears v. Thomas*, No. 16-Cv-14500, 2020 WL 7635925, at *2 (S.D. Fla. July 29, 2020) (alteration in original; quotation marks omitted; quoting *Peat*, 378 F.3d at 1162). There is ample evidence to support the jury's finding that Defendant did not terminate Plaintiff because of his protected activity. Therefore, it is unlikely that Dr. McCafferty-Fernandez's excluded testimony — which merely would have been that she was transferred to a different department by a different decision-maker — would have swayed the jury to reach a verdict for Plaintiff.

In short, the Court is unpersuaded that this singular and inconsequential evidentiary issue warrants a new trial. *See Ramones v. AR Res., Inc.*, No. 19-Civ-62949, 2022 WL 1062042, at *3 (S.D. Fla. Apr. 8, 2022).

### 3. Defendant's closing argument did not constitute plain error.

Plaintiff also seeks a new trial on the basis that Defendant's closing argument was improper. (*See* Am. Renewed Mot. 15–18). Although Plaintiff did not contemporaneously object to Defendant's closing argument, he asks for a new trial on this basis because "the interest of substantial justice is at stake." (*Id.* 16 (quotation marks and citation omitted)).

The Eleventh Circuit is reluctant to set aside a jury verdict based on an improper closing argument. *See Vineyard v. Cnty. of Murray, Ga.*, 990 F.2d 1207, 1214 (11th Cir. 1993) (citation omitted). Generally, "a timely objection is necessary to bring to the district court's attention errors in counsel's arguments." *Oxford Furniture Cos. v. Drexel Heritage Furnishings, Inc.*, 984 F.2d 1118, 1128 (11th Cir. 1993) (citation omitted). The requirement of a timely objection prohibits counsel from "sandbagging" the Court and the opposing party by remaining silent and then claiming error if counsel is unhappy with the jury's verdict. *Id.* (quotation marks and citation omitted).

Absent an objection, the Court reviews the closing argument for plain error but "a finding of plain error is seldom justified in reviewing argument of counsel in a civil case." *Id.* (quotation marks and citation omitted). A court may only order a new trial, where an improper argument was made without objection, if the interests of substantial justice are at stake. *See McWhorter*, 906 F.2d at 677. Plaintiff does not satisfy this stringent standard.

The fact that the jury answered several questions in favor of Plaintiff "strongly indicate[s] the jury was not inflamed, prejudiced, or improperly mislead by closing arguments." *Philip Morris USA Inc. v. Garcia*, No. 3D21-1584, 2022 WL 16954371, at *1 (Fla. 3d DCA Nov. 16, 2022) (alteration added; citation omitted). Additionally, at the beginning of the trial, the Court cautioned the jury that

> the lawyers' statements and arguments are not evidence. In their opening statements and closing arguments, the lawyers will discuss the case. Their remarks may help you follow each side's arguments and presentation of evidence, but the remarks themselves are not evidence and they should not play a role in your deliberations.

(Pl.'s Notice of Filing Trial Trs., Ex. 2, Sept. 19, 2022 Trial Tr. [ECF No. 248-2] 9:14–19). This instruction mitigates any prejudicial effect that could have resulted from issues with Defendant's

closing argument. *Cf. Aetna Cas. & Sur. Co. v. Gosdin*, 803 F.2d 1153, 1160 (11th Cir. 1986) (court found judgment could have been swayed in part because no instruction regarding the prejudicial evidence was given).

Plaintiff has three major concerns with Defendant's closing argument. He first argues the argument "mischaracterized evidence and mislead the jury about the proper considerations to determine causation" by, among other things, "barely mention[ing] Dr. Shalala's own testimony concerning her reasons for terminating Dr. Lord" and "repeatedly argu[ing] that there were '15' different incidents for which Dr. Lord could have been fired" without support for that claim. (Am. Renewed Mot. 17 (alterations added; emphasis omitted)). But Plaintiff certainly had the opportunity to refute Defendant's characterization of the evidence in his rebuttal argument. *See Fisk Elec. Co. v. Solo Constr. Corp.*, No. 07-Civ-22120, 2009 WL 10669103, at *5 (S.D. Fla. Oct. 28, 2009). Regardless, the Court is not persuaded that such characterizations of the evidence controlled or changed the jury's verdict.

Next, Plaintiff argues that it was inappropriate for Defendant to point out that Plaintiff did not call Dr. Alan Livingstone or Hillarie Bass as witnesses at trial. (*See* Am. Renewed Mot. 17). Neither of the criminal cases Plaintiff cites (*see* Am. Renewed Mot. 16) supports the conclusion that he has satisfied the high burden of showing Defendant's remark about Plaintiff's failure to call witnesses constituted plain error.

*United States v. Richard* did not involve an attempt to draw a missing witness inference in closing argument. *See* 678 F. App'x 927, 941 (11th Cir. 2017). Rather, in that case, the Eleventh Circuit analyzed whether a district court had abused its discretion in declining to give a missing witness instruction because the witness's Fifth Amendment invocation rendered him equally

14

unavailable to the government and the defense.  *See id.*  Here, there was no such Fifth Amendment invocation that rendered the witnesses unavailable to testify.

In *United States v. Chapman*, the witness that one party apparently failed to call was also unavailable to both parties, and the prosecutor tried to draw an inference from the missing witness in both cross-examination and closing argument.  *See* 435 F.2d 1245, 1247 (5th Cir. 1970).  And still, the court concluded that "impropriety with respect to a single inference should not have controlled, or changed, the jury's verdict[.]"  *Id.* at 1248 (alteration added).  As in *Chapman*, even if it was improper for Defendant to comment on Plaintiff's failure to call witnesses, the remarks likely did not control or change the outcome given the ample evidence supporting the jury's verdict and the lengthy closing arguments from both sides.  *See id.*

Finally, Plaintiff argues Defendant's counsel made prejudicial remarks about Plaintiff's "credibility and the justness or viability of his claim" that were improper under Florida Bar Rule 4-3.4(e).  (Am. Renewed Mot. 18).  Plaintiff cites no case law to support his assertion that remarks like these are so substantially prejudicial that they would warrant a new trial.  These comments were not prejudicial enough to warrant a new trial.  *See Crittendon v. Chi. & Nw. Transp. Co.*, No. 93-cv-2948, 1994 WL 259439, at *2 (7th Cir. June 10, 1994).

> *4. The but-for causation instruction did not improperly advise the jury and regardless, Plaintiff waived this argument.*

Plaintiff also argues that a new trial is warranted because the Court gave the jury "an incomplete and misleading but-for cause instruction."  (Am. Renewed Mot. 18–20).  "Motions for new trial on the basis of erroneous and prejudicial jury instructions are within the district court's discretion and are reviewed for abuse of discretion."  *Simmons v. Bradshaw*, 879 F.3d 1157, 1162 (11th Cir. 2018) (quotation marks and citations omitted).  As part of this analysis, the Court must "determine whether [the jury instructions or verdict form] misstate the law or mislead the jury."

*Id.* (alteration added; quotation marks and citations omitted).  "If the instructions [or verdict form] do not accurately reflect the law and do not correctly instruct the jury so that [courts are] left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations, then [courts must] reverse and order a new trial."  *Id.* (alterations added; quotation marks and citations omitted).

Plaintiff does not argue that the Instructions misstated the law; he merely argues that the Court did not go far enough with its causation instruction.  (*See* Am. Renewed Mot. 19–20).  He also asserts that he was prejudiced because he was under the impression that the Court was going to read a different standard until partway through his counsel's closing argument.  (*See id.* 20).  The Court gave much consideration to the causation instructions during trial, and once again concludes a new trial is not warranted on this basis.

The parties' dispute over how to instruct the jury on the but-for standard was evident from the first iteration of the parties' Proposed Jury Instructions [ECF No. 161], submitted on July 8, 2022.[6]  The Eleventh Circuit's Civil Pattern Jury Instructions contain instructions for adverse employment action claims, including specific instructions for the causation element of retaliation claims.  *See* Eleventh Circuit Civil Pattern Jury Instructions ("Pattern Instructions") (2022) 333.[7] The retaliation instructions were revised as recently as October 4, 2021.  *See* Pattern Instructions 1 ("On 4 October 2021, the Council approved the following revised instruction for the Pattern Jury

---

[6] On September 12, 2022, the parties submitted Amended Proposed Jury Instructions [ECF No. 199], but they did not modify their proposed instructions on the but-for causation standard.  (*See generally id.*).

[7] The Court relies on the page numbers from the 840-page PDF version of the Current Civil Pattern Jury Instructions (last revised in March 2022).  The PDF is available at *Pattern Jury Instructions*, United States Court of Appeals for the Eleventh Circuit, https://www.ca11.uscourts.gov/pattern-jury-instructions (last visited Jan. 19, 2023).

Instructions, Civil Cases . . . 4.22 Retaliation – Section 1981, Title VII, ADEA, ADA, and FLSA").[8]

In Defendant's proposed instructions, Defendant hardly modified the Pattern Instructions, which included language that would tell the jury it "must decide whether [Plaintiff's] protected activity was the *main reason* for the [Defendant's] decision to terminate." (Proposed Jury Instructions 31 (alterations and emphasis added)); *see also* Pattern Instructions 336. In contrast, Plaintiff's proposal significantly modified the Pattern Instructions. Plaintiff removed the "main reason" language — "you must decide whether [Defendant] took that action because of [Plaintiff's] protected activity." (Proposed Jury Instructions 39 (alterations added)). Additionally, Plaintiff proposed language emphasizing that "events often have multiple 'but-for' causes." (*Id.* 40 ("However, events often have multiple but-for causes . . . . Thus, you may find that [Defendant] terminated [Plaintiff] because of his protected activity . . . so long as you conclude that [Plaintiff's] protected activity was one but-for cause of that decision." (alterations added)). Plaintiff cited several sources for the modifications, including case law and the Fifth Circuit Pattern Jury Instructions. (*See id.* 41–42 (collecting sources)). The language of Plaintiff's proposed modifications, which included the above car accident example, was drawn from the Supreme Court's opinion in *Bostock*. *See* 140 S. Ct. at 1739.

On September 15, 2022, the Court held a Pretrial Conference [ECF No. 201], where it discussed with the parties their disagreement over the instruction on the but-for causation standard. On September 27, 2022, the parties submitted Joint Proposed Jury Instructions [ECF No. 220].

---

[8] It is not obvious that the current Pattern Instructions include instructions for FCA retaliation claims. Nonetheless, both parties referenced section 4.22 and submitted modified versions of the Pattern Instructions, so they appear to have agreed that the pattern retaliation instructions were relevant. Additionally, *Nesbitt*, 945 F.3d at 1359, confirms that the same but-for standard also applies to Title VII and FCA retaliation claims.

The Joint Proposed Instructions included the "main reason" language from Defendant's proposed instructions, drawn from the Pattern Instructions, and did not include Plaintiff's proposed paragraph emphasizing there can be multiple but-for causes and elaborating on that standard. (*See id.* 31).

On October 3, 2022, Plaintiff filed the Original Motion.  In a footnote, Plaintiff pointed out "[t]he jury instructions suggest that but-for causation requires the jury to conclude that protected activity was the '*main reason*' for the termination."  (Original Mot. 13 n.2 (emphasis added)).  Citing *Bostock*, Plaintiff "maintain[ed] that *this portion* of the instructions [was] wrong."  (*Id.* (alterations and emphasis added)).  Upon its review of the Original Motion, the Court once again considered Plaintiff's argument that this part of the Pattern Instructions misstated the but-for standard as it was laid out in *Bostock*.  In an attempt to address Plaintiff's concern, the Court proposed a special interrogatory.  (*See* Pl.'s Notice of Filing Trial Trs., Ex. 8, Oct. 3, 2022 Tr. [ECF No. 248-8] 125:5–17).  The parties subsequently agreed to reject the special interrogatory and revert to the prior instructions but to remove the sentence containing the "main reason" language Plaintiff had taken issue with.  (*Id.* 126:9–23).  Upon accepting the parties' newly proposed language, the Court asked all the parties whether the issue would appear "in a post verdict motion by either side" and the parties assured the Court they were satisfied with the agreed-upon instruction.  (*Id.* 200:15–18).  Relying in part on the parties' assurances, on October 4, 2022, the Court gave the Court's Instructions to the Jury [ECF No. 232] and did not include a special interrogatory in the Verdict Form.

Remarkably, and despite Plaintiff's assurance that he would not take issue with the agreed-upon instructions on but-for causation, Plaintiff does just that.  He now argues in his Amended Renewed Motion that the Instructions did not go far enough, and a new trial is warranted on this

basis.  (*See id.* 18–21).  The Instructions did not misstate the law, and, in any event, Plaintiff is not entitled to challenge the Instructions because if there was any error, Plaintiff invited it by assuring the Court that he was satisfied with the Instructions.

First, the Instructions did not misstate the law or mislead the jury.  *See Simmons*, 879 F.3d at 1162 (citation omitted).  The Court's initial inclination, at the September 15, 2022 Pretrial Conference, to hew closely to the language for retaliation claims from the Pattern Jury Instructions is supported by law.  *See, e.g.*, *United States v. Souffrant*, 517 F. App'x 803, 820 (11th Cir. 2013) (noting that the proposed jury instruction was based on the pattern jury instructions while explaining why the instruction was not erroneous); *Holley v. United States*, No. 4:12CR29(1), 2020 WL 4550927, at *4 (E.D. Tex. July 8, 2020), *report and recommendation adopted*, No. 4:12CR29(1), 2020 WL 4539027 (E.D. Tex. Aug. 5, 2020) ("It is well settled that a district court does not err by giving a charge that tracks this Circuit's pattern jury instructions." (citation omitted)).  And the Instructions to the Jury closely mirrored the Pattern Instructions; they merely omitted the sentence containing the "main reason" language upon the parties' agreement.  (*See generally* Court's Instructions to the Jury).

Notably, Plaintiff does not take issue with the decision to exclude the sentence containing the "main reason" language — presumably because the exclusion of the sentence was favorable to him.  Instead, Plaintiff insists the Court should have said more to avoid misleading the jury (*see* Am. Renewed Mot. 19–20), an argument he failed to raise in his Original Motion or at the October 3, 2022 Charge Conference.  Plaintiff argues the Instructions were problematic because they were "limited and pro-defendant" but does not — and indeed cannot argue — that the Instructions misstated the law.  (*Id.* 21).  Even after *Bostock*, the but-for test still "directs the court to change one thing at a time and see if the outcome changes."  140 S. Ct. at 1740.  In other words, the jury

was required to "decide that [Defendant] would not have taken the action had [Plaintiff] not engaged in the protected activity but everything else had been the same" — which is the precise language Plaintiff takes issue with.  (Am Renewed Mot. 21 (alteration added; quotation marks omitted; quoting Court's Instructions to the Jury 4)). [9]

Second, regardless of the merits of Plaintiff's argument about the Instructions, Plaintiff invited any error.  "[A] party may not challenge as error a ruling or other trial proceeding invited by that party."  *United States v. Ross*, 131 F.3d 970, 988 (11th Cir. 1997) (alteration added; citations and quotation marks omitted).  "Where invited error exists, it precludes a court from invoking the plain error rule and reversing."  *Ford ex rel. Estate of Ford v. Garcia*, 289 F.3d 1283, 1294 (11th Cir. 2002) (citation, footnote call number, and quotation marks omitted).  Plaintiff's counsel not only proposed joint jury instructions that he affirmatively requested be given at trial, he also assured the Court he would not take issue with those instructions after the verdict was rendered.  Therefore, Plaintiff "induced or invited" the Court to rely on the Instructions that he now claims are erroneous.  *Souffrant*, 517 F. App'x at 817, 820.

*5. All errors in the aggregate do not support granting a new trial.*

The Court is afforded "wide discretion" in granting a new trial "where a combination of factors, which could have caused the jury to reach a possible erroneous verdict, [lead] the court to conclude that a new trial [i]s necessary."  *Deas*, 775 F.2d at 1505 (alteration added).  Having

---

[9] Plaintiff also takes issue with the Instruction that Plaintiff had to prove the non-retaliatory reasons for the termination were "so unbelievable that they were a cover-up to hide the true retaliatory reasons for the decision."  (*Id.* 21 (quotation marks omitted; quoting Court's Instructions to the Jury 5).  Plaintiff's argument mischaracterizes the Instruction given, which merely *permitted* the jury to consider whether the non-retaliatory reasons were unbelievable.  (*See* Court's Instructions to the Jury 5 ("If you do not believe the reasons that it gave for the decision, you may consider whether the reasons were so unbelievable that they were a cover-up to hide the true retaliatory reasons for the decision.")).  This language also, again, came directly from the Pattern Instructions, and Plaintiff did not object to its inclusion in his Original Motion or at the October 3, 2022 Charge Conference.

found that all the "errors" Plaintiff raises were not errors or were unlikely to change or control

the Verdict, the Court is not convinced that any possible "cumulative effect" justifies a new trial.

### III.   <u>CONCLUSION</u>

Based on the forgoing, it is **ORDERED AND ADJUDGED** that Plaintiff's Amended

Renewed Motion for Judgment as a Matter of Law and/or for New Trial **[ECF No. 252]** is

**DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 23rd day of January, 2023.

**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:    counsel of record